# **EXHIBIT A**

IN THE FRANKLIN COUNTY, OHIO COURT OF COMMON PLEAS
CIVIL DIVISION

| | | |
|---|---|---|
| MADELINE MOE, et al., | : | |
| Plaintiffs, | : | Case No. 24CVH03-2481 |
| v. | : | JUDGE HOLBROOK |
| DAVID YOST, et al., | : | |
| Defendants. | : | |

## <u>ORDER AND ENTRY GRANTING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER</u>

This matter came before the Court on April 12, 2024, for a hearing on plaintiffs' motion for temporary restraining order. Plaintiffs and defendants appeared at the hearing through counsel.

Having considered the briefs submitted, arguments of counsel, affidavits in support of the motion, and the salient law, the Court issues the following decision.

**Background**

Sections 3109.054, 3129.01, 3129.02, 3129.03, 3129.04, 3129.05, 3129.06, 3313.5319 and 3345.562 of the Ohio Revised Code were enacted within Sub. H.B. No. 68, as the Saving Ohio Adolescents from Experimentation (SAFE) Act regarding gender transition services for minors, and the Save Women's Sports Act requiring schools, state institutions of higher education, and private colleges to designate separate single-sex teams and sports for each sex (hereinafter, the "Act"). See Sub. H. B. No. 68 at Long Title.

The entirety of the Act is as follows:

**Sec. 3109.054.** When allocating parental rights and responsibilities or parenting time, no court shall deny or limit a parent's parental rights and

responsibilities or parenting time based on the parent's decision to do any of the following:

(A) Refer to and raise the child in a manner consistent with the child's biological sex;

(B) Decline to consent to the child receiving gender transition services as defined in section 3129.01 of the Revised Code;

(C) Decline to consent to the child receiving counseling or other mental health services for the purpose of affirming the child's perception of the child's gender or sex, if the child's perception is inconsistent with the child's biological sex.

**Sec. 3129.01.** As used in this chapter:

(A) "Biological sex," "birth sex," and "sex" mean the biological indication of male and female, including sex chromosomes, naturally occurring sex hormones, gonads, and nonambiguous internal and external genitalia present at birth, without regard to an individual's psychological, chosen, or subjective experience of gender.

(B) "Cross-sex hormone" means testosterone, estrogen, or progesterone given to a minor individual in an amount greater than would normally be produced endogenously in a healthy individual of the minor individual's age and sex.

(C) "Gender reassignment surgery" means any surgery performed for the purpose of assisting an individual with gender transition that seeks to surgically alter or remove healthy physical or anatomical characteristics or features that are typical for the individual's biological sex, in order to instill or create physiological or anatomical characteristics that resemble a sex different from the individual's birth sex, including genital or non-genital gender reassignment surgery.

(D) "Gender-related condition" means any condition where an individual feels an incongruence between the individual's gender identity and biological sex. "Gender-related condition" includes gender dysphoria.

(E) "Gender transition" means the process in which an individual goes from identifying with and living as a gender that corresponds to his or her biological sex to identifying with and living as a gender different from his or her biological sex, including social, legal, or physical changes.

(F) "Gender transition services" means any medical or surgical service (including physician services, inpatient and outpatient hospital services, or prescription drugs or hormones) provided for the purpose of assisting an individual with gender transition that seeks to alter or remove physical or anatomical characteristics or features that are typical for the individual's biological sex, or to instill or create physiological or anatomical characteristics that resemble a sex different from the individual's birth sex,

including medical services that provide puberty blocking drugs, cross-sex hormones, or other mechanisms to promote the development of feminizing or masculinizing features in the opposite sex, or genital or non-genital gender reassignment surgery.

(G) "Genital gender reassignment surgery" means surgery performed for the purpose of assisting an individual with gender transition and includes both of the following:

> (1) Surgeries that sterilize, such as castration, vasectomy, hysterectomy, oophorectomy, orchiectomy, and penectomy;

> (2) Surgeries that artificially construct tissue with the appearance of genitalia that differs from the individual's biological sex, such as metoidiplasty, phalloplasty, and vaginoplasty.

(H) "Mental health professional" means all of the following:

> (1) Either of the following advanced practice registered nurses who holds a current, valid license issued under Chapter 4723. of the Revised Code that authorizes the practice of nursing as an advanced practice registered nurse:
>
>> (a) A clinical nurse specialist who is certified as a psychiatric-mental health CNS by the American nurses credentialing center;
>>
>> (b) A certified nurse practitioner who is certified as a psychiatric-mental health NP by the American nurses credentialing center.
>
> (2) A physician specializing in psychiatry;
>
> (3) A psychologist, school psychologist, or independent school psychologist licensed under Chapter 4732. of the Revised Code or under rules adopted in accordance with sections 3301.07 and 3319.22 of the Revised Code;
>
> (4) An independent social worker, social worker, licensed professional clinical counselor, licensed professional counselor, independent marriage and family therapist, or marriage and family therapist licensed under Chapter 4757. of the Revised Code.

(I) "Minor individual" means an individual under eighteen years of age.

(J) "Non-genital gender reassignment surgery" means surgery performed for the purpose of assisting an individual with gender transition such as augmentation mammoplasty, facial feminization surgery, liposuction, lipofilling, voice surgery, thyroid cartilage reduction, gluteal augmentation, pectoral implants, or other aesthetic procedures.

3

(K) "Physician" means an individual authorized under Chapter 4731. of the Revised Code to practice medicine and surgery or osteopathic medicine and surgery.

(L) "Puberty-blocking drugs" means Gonadotropin-releasing hormone analogs or other synthetic drugs used to stop luteinizing hormone and follicle stimulating hormone secretion, synthetic antiandrogen drugs used to block the androgen receptor, or any drug to delay or suppress normal puberty.

### Sec. 3129.02.

(A) A physician shall not knowingly do any of the following:

(1) Perform gender reassignment surgery on a minor individual;

(2) Prescribe a cross-sex hormone or puberty-blocking drug for a minor individual for the purpose of assisting the minor individual with gender transition;

(3) Engage in conduct that aids or abets in the practices described in division (A)(1) or (2) of this section, provided that this section may not be construed to impose liability on any speech protected by federal or state law.

(B) Notwithstanding division (A)(2) of this section, a physician may continue to prescribe a cross-sex hormone or puberty-blocking drug to a minor individual if the minor individual has been a continuous Ohio resident since the effective date of this section and the physician has done both of the following:

(1) Initiated a course of treatment for the minor individual prior to the effective date of this section that includes the prescription of a cross-sex hormone or puberty-blocking drug prohibited by division (A)(2) of this section;

(2) Determined and documented in the minor individual's medical record that terminating the minor individual's prescription for the cross-sex hormone or puberty-blocking drug would cause harm to the minor individual.

### Sec. 3129.03.

(A) Notwithstanding section 5122.04 of the Revised Code, no mental health professional shall diagnose or treat a minor individual who presents for the diagnosis or treatment of a gender-related condition without first obtaining the consent of one of the following:

(1) At least one parent of the minor individual;

(2) At least one legal custodian of the minor individual;

(3) The minor individual's guardian.

(B) No mental health professional shall diagnose or treat a minor individual who presents for the diagnosis or treatment of a gender-related condition without screening the minor individual for both of the following during the course of diagnosis and treatment:

>(1) Other comorbidities that may be influencing the minor individual's gender-related condition, including depression, anxiety, attention deficit hyperactivity disorder, autism spectrum disorder, and other mental health conditions;
>
>(2) Physical, sexual, mental, and emotional abuse and other traumas.

**Sec. 3129.04.** This chapter does not prohibit a physician from treating, including by performing surgery on or prescribing drugs or hormones for, a minor individual who meets any of the following:

>(A) Was born with a medically verifiable disorder of sex development, including an individual with external biological sex characteristics that are irresolvably ambiguous, such an as individual born with forty-six XX chromosomes with virilization, forty-six XY chromosomes with undervirilization, or having both ovarian and testicular tissue;
>
>(B) Received a diagnosis of a disorder of sexual development, in which a physician has determined through genetic or biochemical testing that the individual does not have normal sex chromosome structure, sex steroid hormone production, or sex steroid hormone action for a biological male or biological female;
>
>(C) Needs treatment for any infection, injury, disease, or disorder that has been caused or exacerbated by the performance of gender transition services, whether or not the services were performed in accordance with state or federal law.

**Sec. 3129.05.**

(A) Any violation of section 3129.02, section 3129.03, or section 3129.06 of the Revised Code shall be considered unprofessional conduct and subject to discipline by the applicable professional licensing board.

(B) Nothing in this chapter shall be construed to preempt any other private cause of action arising under the common law of this state.

(C) The attorney general may bring an action to enforce compliance with section 3129.02 or 3129.03 of the Revised Code. Nothing in this chapter shall be construed to deny, impair, or otherwise affect any right or authority of the attorney general, the state, or any agency, officer, or employee of the state, acting under any provision of the Revised Code, to institute or intervene in any proceeding.

**Sec. 3129.06.**

(A) Medical assistance provided under the medicaid program shall not include coverage for gender transition services for minor individuals.

(B) This section does not apply to any of the following:

> (1) The circumstances described in section 3129.04 of the Revised Code;
>
> (2) Mental health services provided for a gender-related condition;
>
> (3) Any services that are not gender transition services.

**Sec. 3313.5319 (recodified as R.C. 3313.5320).**

(A) Each school that participates in athletic competitions or events administered by an organization that regulates interscholastic athletic conferences or events shall designate interscholastic athletic teams based on the sex of the participants as follows:

> (1) Separate teams for participants of the female sex within female sports divisions;
>
> (2) Separate teams for participants of the male sex within male sports divisions;
>
> (3) If applicable, co-ed teams for participants of the female and male sexes within co-ed sports divisions.

(B) No school, interscholastic conference, or organization that regulates interscholastic athletics shall knowingly permit individuals of the male sex to participate on athletic teams or in athletic competitions designated only for participants of the female sex.

(C) Nothing in this section shall be construed to restrict the eligibility of any student to participate on any athletic teams or in athletic competitions that are designated as male or co-ed.

(D) No agency or political subdivision of the state and no accrediting organization or athletic association that operates or has business activities in this state shall process a complaint, begin an investigation, or take any other adverse action against a school or school district for maintaining separate single-sex interscholastic athletic teams or sports.

(E)(1) Any participant who is deprived of an athletic opportunity or suffers a direct or indirect harm as a result of a violation of this section has a private cause of action for injunctive relief, damages, and any other relief available against the school, school district, interscholastic conference, or organization that regulates interscholastic athletics.

(2) Any participant who is subject to retaliation or other adverse action by a school, school district, interscholastic conference, or organization that

6

regulates interscholastic athletics as a result of reporting a violation of this section has a private cause of action for injunctive relief, damages, and any other relief available against the entity that takes the retaliatory or other adverse action.

(3) Any school or school district that suffers any direct or indirect harm as a result of a violation of division (D) of this section has a private cause of action for injunctive relief, damages, and any other relief available against the agency, political subdivision, accrediting organization, or athletic association that violates that division.

(F) Any civil action brought as a result of a violation of this section shall be initiated within two years after the date on which the violation occurs. Persons or organizations who prevail on a claim brought pursuant to this section shall be entitled to monetary damages, including for any psychological, emotional, or physical harm suffered, reasonable attorney's fees and costs, and any other appropriate relief.

**Sec. 3345.562.**

(A) As used in this section:

> (1) "Private college" means a nonprofit institution that holds a certificate of authorization issued under section 1713.02 of the Revised Code;
>
> (2) "State institution of higher education" has the same meaning as in section 3345.011 of the Revised Code.

(B) Each state institution of higher education or private college that is a member of the national collegiate athletics association, the national association of intercollegiate athletics, or the national junior college association shall designate intercollegiate athletic teams and sports based on the sex of the participants as follows:

> (1) Separate teams for participants of the female sex within female sports divisions;
>
> (2) Separate teams for participants of the male sex within male sports divisions;
>
> (3) If applicable, co-ed teams for participants of the female and male sexes within co-ed sports divisions.

(C) No state institution or private college to which division (B) of this section applies shall knowingly allow individuals of the male sex to participate on athletic teams or in athletic competitions designated for only participants of the female sex.

(D) Nothing in this section shall be construed to restrict the eligibility of any student to participate on any athletic teams or in athletic competitions that are designated as male or co-ed.

7

(E) No agency or political subdivision of the state and no accrediting organization or athletic association that operates or has business activities in this state shall process a complaint, begin an investigation, or take any other adverse action against a state institution of higher education or private college for maintaining separate single-sex intercollegiate athletic teams or sports for participants of the female sex.

(F)(1) Any participant who is deprived of an athletic opportunity or suffers a direct or indirect harm as a result of a violation of this section has a private cause of action for injunctive relief, damages, and any other relief available against the state institution or the private college.

(2) Any participant who is subject to retaliation or other adverse action by a state institution, private college, or athletic association as a result of reporting a violation of this section has a private cause of action for injunctive relief, damages, and any other relief available against the entity that takes the retaliatory or other adverse action.

(3) Any state institution or private college that suffers any direct or indirect harm as a result of a violation of division (E) of this section has a private cause of action for injunctive relief, damages, and any other relief available against the agency, political subdivision, accrediting organization, or athletic association that violates that division.

(G) Any civil action brought as a result of a violation of this section shall be initiated within two years after the date on which the violation occurs. Persons or organizations who prevail on a claim brought pursuant to this section shall be entitled to monetary damages, including for any psychological, emotional, or physical harm suffered, reasonable attorney's fees and costs, and any other appropriate relief.

Plaintiffs, two minor individuals diagnosed with gender dysphoria and their parents, bring their complaint seeking a declaration that the Act, in its entirety, is unconstitutional. Specifically, plaintiffs allege violations of: the single-subject-rule contained in Article II, Section 15(D) of the Ohio Constitution; the preservation of the freedom to choose health care and health care coverage contained in Article I, Section 21 of the Ohio Constitution; the equal protection clause contained in Article I, Section 2 of the Ohio Constitution; and the due course of law provision contained in Article I, Section 16 of the Ohio Constitution.

**Law and Analysis**

Currently before the Court is plaintiffs' request for a temporary restraining order seeking an emergency stay of the enforcement of the Act. A temporary restraining order is a form of relief intended to prevent the applicant from suffering immediate and irreparable harm, injury or damage. Civ.R. 65(A); *Coleman v. Wilkinson,* 147 Ohio App.3d 357, 358, 2002-Ohio-2021 (10th Dist.). In determining whether injunctive relief should be granted, a trial court generally examines four factors:

> (1) whether the evidence presents a substantial likelihood that plaintiff will prevail on the merits, (2) whether denying the injunction will cause plaintiff to suffer irreparable injury, (3) whether granting the injunction will cause third parties to suffer unjustifiable harm, and (4) whether the injunction will serve the public interest.

*Cuyahoga Re-Entry Agency v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-740, 2012-Ohio-2034, ¶ 31, citing *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co., Gen. Commodities Div.*, 109 Ohio App.3d 786, 790 (10th Dist.1996).

Naturally, the parties dispute the likelihood of plaintiff's success on the merits. They also disagree about the presence of immediate and irreparable injury should a temporary restraining order not be entered. And finally, the parties differ in positions as to the harm to third parties and the public interest.

Before addressing the elements necessary for a temporary restraining order, the Court is compelled to address the issue of plaintiffs' standing. "The Ohio Constitution expressly requires standing for cases filed in common pleas courts." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St. 3d 520, 2014-Ohio-2382, ¶ 11. "Article IV, Section 4(B) provides that the courts of common pleas 'shall have such original jurisdiction over all justiciable matters.' A matter is justiciable only if the complaining party has standing to sue." Id.

9

To have standing to challenge the constitutionality of a legislative enactment, as is the case here, a litigant must have a direct interest in the legislation of such a nature that the party's rights will be adversely affected by its enforcement. *N. Canton v. Canton*, 114 Ohio St.3d 253, 2007-Ohio-4005, at P11. The litigant must generally show it has "suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the public in general, that the law in question has caused the injury, and that the relief requested will redress the injury." *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 469-470, 1999-Ohio-123. Notwithstanding the general requirement for injury, standing is a self-imposed judicial rule of restraint, and courts "are free to dispense with the requirement for injury where the public interest so demands." *Sheward*, at 470. Whether established facts confer standing to assert a claim is a question of law. *Portage Cty. Bd. of Commrs. v. Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, at P90.

Plaintiffs' complaint alleges that as a result of the Act, the SAFE provision poses an enormous threat to themselves as transgender adolescents by closing off access to critical health care in Ohio. The complaint additionally alleges the enacted bill violates the single-subject-rule and that a real and justiciable controversy exists regarding whether the entirety of the Act complies with the Ohio Constitution.

Defendants concede the complaint's allegations confer standing upon plaintiffs to challenge the Act's creation of R.C. Chapter 3129. Nonetheless, because none of the allegations in the complaint assert that plaintiffs are in immediate danger of being excluded from participation in women's sports, defendants contend plaintiffs lack standing to challenge the constitutionality of the bill's enactment of R.C. 3109.054,

10

3313.5319 (recodified as 3313.5320), and 3345.562, which pertain to the allocation of parental rights and athletics.

Plaintiffs, however, did not limit their constitutional challenge to one or more specific provisions of the bill. Rather, plaintiffs challenged the enactment of the Act in its entirety. Because they alleged injury resulting from the enactment of the legislation, they have a direct interest in the challenged legislation that is adverse to the legal interests of defendants and gives rise to an actual controversy for the courts to decide. Moreover, this Court is not able to discern the "primary" subject of the bill. Indeed, the long title would suggest that the SAFE provisions are Protecting Women's Sports provisions are coequal. Finally, to deny plaintiffs standing would insulate legislation from single-subject constitutional scrutiny without class certification or unless a coalition of plaintiffs could be assembled to cover the wide variety of subjects amassed in a single piece of legislation. Accordingly, the Court finds plaintiffs have standing to challenge the constitutionality of the Act in its entirety.

*Substantial Likelihood of Success*

Turning to the elements of a temporary restraining order, as set forth above, plaintiffs challenge the constitutionality of the Act relying on several provisions of the Ohio Constitution. Having carefully considered the affidavits, arguments of counsel, and the relevant law, the Court finds plaintiffs have sufficiently demonstrated a substantial likelihood of success on the merits on at least one of their claims.

Even providing the General Assembly with great latitude in enacting comprehensive legislation, the substance of the Act in combination with the legislative history yields this Court's conclusion that there is a substantial likelihood of success on the merits of plaintiffs' single-subject claim. The very title of the Act references two

11

subjects: Saving Ohio Adolescents from Experimentation and Saving Women's Sports. See Long Title. Beyond the title, the Act includes additions to R.C. Chapter 3109 Domestic Relations - Children, the creation of R.C. Chapter 3129 Gender Transition Services for Minors, as well as additions to R.C. Chapter 3313 Board of Education and R.C. Chapter 3345 State Universities - General Powers. The substance of these additions address occupational licensing and regulation related to health care, the allocation of parental rights, and athletics.  Finally, it is not lost upon this Court that the General Assembly was unable to pass the SAFE portion of the Act separately, and it was only upon logrolling in the Saving Women's Sports provisions that it was it was able to pass.

*Immediate and Irreparable Injury*

"Injunctive relief is warranted when a statute is unconstitutional, enforcement will infringe upon constitutional rights and cause irreparable harm, and there is no adequate remedy at law." *Magda v. Ohio Elections Comm.*, 2016-Ohio-5043, ¶ 38 (10th Dist.), quoting *United Auto Workers Local Union 1112 v. Philomena*, 121 Ohio App.3d 760, 781 (10th Dist.1998), citing *Olds v. Klotz*, 131 Ohio St. 447 (1936), paragraph two of the syllabus. A finding that a constitutional right has been threatened or impaired mandates a finding of irreparable injury as well. *Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir.2001), citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).

Beyond the legal framework addressing the threat to plaintiffs' constitutional rights cited above, there is little doubt as to the irreparable nature of the actual physical injury to plaintiffs upon enforcement of the Act. There is certainly a point where the changes to the body as a result of the progression of puberty cannot be reversed.

The question here though is the immediacy of the harm necessary to support plaintiffs' application for a temporary restraining order.  Plaintiffs argue that once the Act

12

becomes effective, their access to their Ohio healthcare providers treating their gender dysphoria terminates on April 24, 2024. Conversely, defendants contend that all alleged harms are speculative and months away at the earliest.

Having carefully considered the parties' arguments, the Court finds plaintiffs' argument more persuasive. As argued by plaintiffs, "puberty does not arrive by appointment." Reply at p.3. This reality combined with the termination of access to their Ohio providers for gender transition services effective April 24, 2024, renders the harm to plaintiffs immediate.

*Harm to Third Parties and Public Interest*

Finally, the Court turns its attention to the harm to third parties and the public interest. Plaintiffs advance the position that enjoining the enforcement of the Act imposes no harm upon third parties and that the public's interest is best served with maintaining the status quo while the constitutionality of the Act is reviewed. Unsurprisingly, defendants disagree.

This Court, again, finds plaintiffs' arguments more compelling. As stated by Governor DeWine as his justification for his veto of the Act,"[p]arents are making decisions about the most precious thing in their life, their child, and none of us should underestimate the gravity and difficulty of those decisions." Complaint at ¶4. The harm to third parties facing these difficult decisions is best served with a temporary injunction enjoining the enforcement of the Act such that they may continue to have access to their preferred Ohio healthcare provider. And, while the Court acknowledges the public's interest in the enforcement of duly enacted laws, having previously found that there is a substantial likelihood of success on the merits with respect to at least one of plaintiffs' constitutional challenges to the Act, such interest is likewise advanced with a temporary

13

order maintaining the status quo while the Court can more thoroughly review the evidence and argument following a full hearing.

**Conclusion**

For the reasons set forth herein, the Court finds plaintiffs' motion for a temporary restraining order is well-taken, and hereby **GRANTS** the same.

Upon the forgoing, the Court issues the following Temporary Restraining Order, as follows:

1. The Court enjoins defendants from enforcing the Act.
2. The Court orders that this Temporary Restraining Order shall remain in full force and effect for fourteen days or until the hearing of plaintiffs' Motion for Preliminary Injunction, whichever is sooner.
3. The Court orders all defendants to comply fully with this Temporary Restraining Order immediately upon service of this Order pursuant to Civ.R. 65(E).
4. Pursuant to Civ.R. 65(C), the Court sets the bond at $50,000.00.

**IT IS SO ORDERED.**

Franklin County Court of Common Pleas

Date: 04-16-2024

Case Title: MADELINE MOE ET AL -VS- DAVID YOST ET AL

Case Number: 24CV002481

Type: T R O (TEMPORARY RESTRAINING ORDER) ON

It Is So Ordered.

/s/ Judge Michael J. Holbrook

Electronically signed on 2024-Apr-16    page 15 of 15