**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Parker Tirrell, by her parents and next friends Sara Tirrell and Zachary Tirrell, *and*

Iris Turmelle, by her parents and next friends Amy Manzelli and Chad Turmelle,

     Plaintiffs.

     v.

Frank Edelblut, *in his official capacity as Commissioner of the New Hampshire Department of Education*;

Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, *in their official capacities as members of the New Hampshire State Board of Education*;

Pemi-Baker Regional School District; *and*

~~Lisa Ash, Bernice Sullivan, Sheila Donahue, Tony Torino, Carolyn Varin, Peter Jackson, Phil McCormack, Greg Aprilliano, Bonnie Acton, Barbara Noyes, Paul Ciotti, Sam Brickley, and Paul Pizzano, *in their official capacities as members of the Pemi-Baker Regional School Board*~~;

Pembroke School District~~; and~~

~~Andrew Camidge, Gene Gauss, Kerri Dean, and Melanie Camelo, *in their official capacities as members of the Pembroke School Board*,~~

     Defendants.

Civil Action No. 1:24-cv-00251

**FIRST AMENDED COMPLAINT**

## INTRODUCTION

Plaintiffs Parker Tirrell and Iris Turmelle are transgender teenage girls attending New Hampshire public high schools. Each knew from an early age that she was a girl. Each has been diagnosed with gender dysphoria, a health condition characterized by distress resulting from an incongruence between one's birth sex and gender identity. As part of their prescribed medical treatment for gender dysphoria, Parker and Iris live and interact with others as girls in every aspect of their lives; they are accepted as girls by their parents, family, schools, peers, teammates, and coaches. This ability to live consistently with their female gender identities is critical to their health and well-being, and social acceptance is a key component of each girl's medical course of care. Parker and Iris are also receiving puberty-blocking medication and hormone therapy to align their bodies with their female identities and to alleviate the distress of physical characteristics that conflict with their gender identity. They will not go through testosterone-driven puberty, nor will they experience physical changes caused by testosterone, including the muscular development characteristic of males.

Parker is 15 years old and she is entering tenth grade at Plymouth Regional High School. She has always played sports, including in elementary, middle, and high school as well as in town recreational leagues. Sports has been a source of joy for her and has been the primary way she makes friends and experiences a sense of belonging and connection to others. Soccer is her real passion. She played on the girls' soccer team last year in ninth grade and is excited to rejoin her team when the season officially starts again on August 30, 2024. On August 15, 2024, Parker's school informed her mother that Parker will would not be allowed to participate in practice which begins began on August 19, 2024.

Iris is 14 years old and she is entering ninth grade at Pembroke Academy. She played intramural tennis in middle school. She wants to try out for and play on the girls' tennis and track

and field teams, which are winter and spring sports. Iris hopes that participation in these sports will help her to make additional friends, establish a peer group, and cope with the stresses she experiences in life.

Without this Court's ~~immediate~~ intervention, Parker and Iris ~~will~~ would be denied the chance to participate in these vital educational opportunities solely because they are transgender girls, even though they have no physiological or biological advantage in sports. A New Hampshire statute enacted on July 19, 2024 (and effective August 19, 2024), HB 1205, singles out transgender girls in New Hampshire ~~the plaintiffs~~ by categorically barring ~~transgender girls~~them from school sports. HB 1205, on its face and as applied to the Plaintiffs, violates the~~ir~~ constitutional right to Equal Protection because it discriminates against ~~them~~ transgender girls, like the Plaintiffs, based on their sex and transgender status. HB 1205 also denies ~~them~~ transgender girls, like the Plaintiffs, equal educational opportunities in violation of Title IX of the Education Amendments of 1972, 20 U.S.C., § 1681, *et seq*., ("Title IX") which prohibits sex discrimination in public school programs and activities.

Because HB 1205 facially discriminates against transgender girls in the state of New Hampshire, such as Plaintiffs, HB 1205 is both a violation of transgender girls' constitutional right to Equal Protection guaranteed by the Fourteenth Amendment, and a denial of transgender girls' equal educational opportunities in violation of Title IX of the Education Amendments of 1972, 20 U.S.C., § 1681, *et seq*., which prohibits sex discrimination in public school programs and activities.

Plaintiffs seek declaratory and injunctive relief. Defendants are the individuals and entities charged with adopting policies and enforcing the requirements of HB 1205: the Commissioner of Education in his official capacity; the members of the State Board of Education

in their official capacities; ~~the members of the applicable local school boards in their official~~ ~~capacities,~~ and the applicable school districts.

## JURISDICTION AND VENUE

1.      This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the Fourteenth Amendment to the United States Constitution and under Title IX *of the Education Amendments of 1972, 20 U.S.C., § 1681, et seq*.

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

3.      Venue is proper in the District of New Hampshire under 28 U.S.C. §§ 1391(b)(1) and (2) because Defendants reside in this District and because the events or omissions giving rise to the claims occurred in the District.

4.      This Court is authorized to enter a declaratory judgment under 28 U.S.C. § 2201.

5.      An actual controversy exists between the parties involving substantial constitutional and statutory issues as Plaintiffs allege that HB 1205 violates the United States Constitution and federal law and infringes on Plaintiffs' rights.

## PARTIES

6.      Plaintiff Parker Tirrell ~~("Parker")~~ is a 15-year-old girl who resides in Plymouth, New Hampshire. She proceeds in this case by her next friends and parents, Sara Tirrell and Zachary Tirrell.

7.      Plaintiff Iris Turmelle ~~("Iris")~~ is a 14-year-old girl who resides in Pembroke, New Hampshire. She proceeds in this case by her next friends and parents, Amy Manzelli and Chad Turmelle.

8.      Defendant Frank Edelblut is sued in his official capacity as Commissioner of the New Hampshire Department of Education. He is responsible for the general supervision of

secondary schools and administrators. N.H. REV. STAT. ANN. ("RSA") § 21-N:2, II(a). At the

time of the events from which this Complaint arises and at all relevant times, he was a legal

resident of the State of New Hampshire, and his business address is 25 Hall Street, Concord, NH

03301.

9.      Defendant Andrew Cline is sued in his official capacity as Chair of the State

Board of Education (the "State Board"), a state agency established pursuant to RSA § 21-N:10.

At the time of the events from which this Complaint arises and at all relevant times, he was a

legal resident of the State of New Hampshire, and his business address is 25 Hall Street,

Concord, NH 03301.

10.     Defendant Kate Cassady is sued in her official capacity as a member of the State

Board. At the time of the events from which this Complaint arises and at all relevant times, she

was a legal resident of the State of New Hampshire, and her business address is 25 Hall Street,

Concord, NH 03301.

11.     Defendant Ann Lane is sued in her official capacity as a member of the State

Board. At the time of the events from which this Complaint arises and at all relevant times, she

was a legal resident of the State of New Hampshire, and her business address is 25 Hall Street,

Concord, NH 03301.

12.     Defendant Philip Nazzaro is sued in his official capacity as a member of the State

Board. At the time of the events from which this Complaint arises and at all relevant times, he

was a legal resident of the State of New Hampshire, and his business address is 25 Hall Street,

Concord, NH 03301.

13.     Defendant Rajesh Nair is sued in his official capacity as a member of the State

Board. At the time of the events from which this Complaint arises and at all relevant times, he

was a legal resident of the State of New Hampshire, and his business address is 25 Hall Street, Concord, NH 03301.

14.    Defendant James Fricchione is sued in his official capacity as a member of the State Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is 25 Hall Street, Concord, NH 03301.

15.    Defendant James Laboe is sued in his official capacity as a member of the State Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is 25 Hall Street, Concord, NH 03301.

16.    Defendant Pemi-Baker Regional School District ("PBRSD") is a municipal corporation organized under RSA Chapter 194. PBRSD's office is located at SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264. Plaintiff Parker Tirrell attends Plymouth Regional High School, which is a school in and operated by PBRSD.

17.    Defendant Lisa Ash is sued in her official capacity as Chair of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, she was a legal resident of the State of New Hampshire, and her business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

18.    Defendant Bernice Sullivan is sued in her official capacity as Vice Chair of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, she was a legal resident of the State of New Hampshire, and her business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

19. Defendant Sheila Donahue is sued in her official capacity as a member of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, she was a legal resident of the State of New Hampshire, and her business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

20. Defendant Tony Torino is sued in his official capacity as a member of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

21. Defendant Carolyn Varin is sued in her official capacity as a member of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, she was a legal resident of the State of New Hampshire, and her business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

22. Defendant Peter Jackson is sued in his official capacity as a member of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

23. Defendant Phil McCormack is sued in his official capacity as a member of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

24. Defendant Greg Aprilliano is sued in his official capacity as a member of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises

and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

25.    Defendant Bonnie Acton is sued in her official capacity as a member of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, she was a legal resident of the State of New Hampshire, and her business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

26.    Defendant Barbara Noyes is sued in her official capacity as a member of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, she was a legal resident of the State of New Hampshire, and her business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

27.    Defendant Paul Ciotti is sued in his official capacity as a member of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire and his business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

28.    Defendant Sam Brickley is sued in his official capacity as a member of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire and his business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

29.    Defendant Paul Pizzano is sued in his official capacity as a member of the Pemi-Baker Regional School Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264.

30.17.  Defendant Pembroke School District ("PSD") is a municipal corporation organized under RSA Chapter 194. PSD's office is located at School Administrative Unit 53, 267 Pembroke Street, Pembroke, NH 03275. Plaintiff Iris Turmelle attends Pembroke Academy, which is a school in and operated by the PSD.

31.    Defendant Andrew Camidge is sued in his official capacity as Chair of the Pembroke School Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is School Administrative Unit 53, 267 Pembroke Street, Pembroke, NH 03275.

32.    Defendant Gene Gauss is sued in his official capacity as a member of the Pembroke School Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is School Administrative Unit 53, 267 Pembroke Street, Pembroke, NH 03275.

33.    Defendant Kerri Dean is sued in her official capacity as a member of the Pembroke School Board. At the time of the events from which this Complaint arises and at all relevant times, she was a legal resident of the State of New Hampshire, and her business address is School Administrative Unit 53, 267 Pembroke Street, Pembroke, NH 03275.

34.    Defendant Melanie Camelo is sued in her official capacity as a member of the Pembroke School Board. At the time of the events from which this Complaint arises and at all relevant times, she was a legal resident of the State of New Hampshire, and her business address is School Administrative Unit 53, 267 Pembroke Street, Pembroke, NH 03275.

## FACTS

### I.  Transgender Adolescents and Participation in School Sports.

~~35.~~18.  In medicine, "gender identity" is the term for a person's internal, innate sense of belonging to a particular sex.[1]

~~36.~~19.  A person's gender identity has a strong biological basis, although the precise causal mechanism is not yet known.

~~37.~~20.  A person's gender identity is innate and cannot be changed by medical or psychological intervention.

~~38.~~21.  When a child is born, a healthcare provider designates the child's sex as male or female based on the child's observable anatomy. For most people, that initial designation is consistent with the person's gender identity. For a transgender person, however, that initial designation does not reflect the person's gender identity.

~~39.~~22.  A transgender girl is one whose birth sex was male but who lives and identifies as female.

~~40.~~23.  Due to the incongruence between their assigned sex and gender identity, transgender people who cannot live consistent with their gender identity experience gender dysphoria, a serious medical condition recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-5"). Gender dysphoria is highly treatable by enabling a person to live consistent with their gender identity, often through medical

---

[1] The New Hampshire Civil Rights Act similarly defines "gender identity" as "a person's gender-related identity, appearance, or behavior, whether or not that gender-related identity, appearance, or behavior is different from that traditionally associated with the persons' physiology or assigned sex at birth." RSA § 354-A:2, XIV-e.

management. If left untreated, however, it can result in severe anxiety, depression, substance abuse, self-harm, suicidality, and other attendant mental health issues.

41.24.  When transgender children and adolescents are provided with appropriate treatment, they will thrive and grow into healthy adults like any other child and adolescent.

42.25.  The goal of medical treatment for transgender individuals is to allow them to live consistently with their gender identity. Living consistently with one's gender identity is critical to the health of any person, including a transgender person.

43.26.  The prevailing standards of care for the treatment of gender dysphoria are developed by the World Professional Association for Transgender Health ("WPATH"), an international multidisciplinary professional association that promotes scientifically based care, and the Endocrine Society, the organization of professionals in the field of adult and pediatric endocrinology.

44.27.  Undergoing treatment to alleviate gender dysphoria is commonly referred to as transition. The transition process can include a combination of the following three components: (i) social transitioning, including adopting a name, pronouns, appearance, and clothing, all consistent with the person's gender identity; (ii) puberty-blocking medication and hormone therapy; and, for adults, (iii) surgeries to alter the appearance and functioning of primary and secondary sex characteristics. Surgery is rarely indicated for transgender minors.

45.28.  Before puberty, there are no significant differences in athletic performance between boys and girls arising from any biological or physiological bases.

46.29.  After puberty, the biological driver of average group differences between boys and girls is testosterone. Both boys and girls produce testosterone. After puberty, however, boys, on average, produce higher levels of testosterone than girls.

47.30.  At the onset of puberty, adolescents diagnosed with gender dysphoria may be prescribed puberty-blocking medication to prevent the distress of developing physical characteristics that conflict with the adolescent's gender identity. Transgender girls who receive puberty-blocking medication do not go through male puberty and will experience no progression of physical changes caused by testosterone, including male muscular development, facial and body hair, an Adam's apple, or masculinized facial features.

48.31.  Thereafter, the treating provider may prescribe hormones to induce the puberty associated with the adolescent's gender identity. This treatment is referred to as hormone therapy. The result of this treatment is that a transgender girl, for example, will have the same levels of circulating hormones as other girls.

49.32.  The fact that a girl is transgender, in itself, does not indicate that she has any sports performance advantage over other girls. Being transgender is not an accurate proxy for athletic performance or ability.

## II.  New Hampshire's Total Exclusion of Transgender Girls from Participation in Middle and High School Sports.

50.33.  Prior to the enactment of HB 1205, a transgender student's eligibility to participate in school sports was governed by policies developed by the New Hampshire Interscholastic Athletic Association (the "NHIAA").

51.34.  Founded in 1947 and incorporated in 1951, NHIAA is a voluntary association of New Hampshire's school districts. NHIAA's mission, according to its website, is to "establish the state athletic programs as an integral part of the entire school curriculum," and ensure that "athletics . . . makes a great contribution to the development of New Hampshire youth." *History of NHIAA*, N.H. INTERSCHOLASTIC ATHLETIC ASS'N, https://www.nhiaa.org/about-nhiaa/history (last visited Aug. 13Oct. 30, 2024, 9:45 AM3:48 PM).

12

52.35.  NHIAA acts and adopts policies through a Council, whose rotating members include school administrators, principals, athletic directors, coaches, state school board association members, and state Department of Education personnel. N.H. INTERSCHOLASTIC ATHLETIC ASS'N CONST. art. VI, § 2 (2024),

https://www.nhiaa.org/ckfinder/userfiles/files/2HB%2024-25%20Constitution.pdf (last visited Aug. 14, 2:26Oct. 30, 3:52 PM).

53.36.  NHIAA also has a number of subject matter-specific standing committees. These standing committees must be chaired by a principal, assistant principal, athletic director, or coach employed by a member school, and all voting members of these committees are employees of member schools. NHIAA BYLAWS, art. I, § 2 (2024)

https://www.nhiaa.org/ckfinder/userfiles/files/3HB%2024-25%20%20I%20Policy.pdf (last visited Aug. 14, 2:26Oct. 30, 3:53 PM).

54.37.  NHIAA's standing committees make recommendations to the Council regarding the adoption of policies in their respective subject matter areas.

55.38.  In 2015, the Eligibility Committee recommended, and the NHIAA adopted and incorporated into its bylaws, a "Policy Statement and School Recommendation Regarding Transgender Participation." *See* NHIAA BYLAWS, art. II, § 21 (2024) ("the "NHIAA Policy") (last visited July 29, 2024),[2] attached as Exhibit A.

---

[2] Since July 29, 2024, this quoted language has been removed from Article II on Eligibility, § 21 ("Policy Statement and School Recommendation Regarding Transgender Participation") on the NHIAA website. On August 16, 2024, tThe statement now adds that it is "[i]n compliance with current New Hampshire anti-discrimination laws and federal Title IX guidance." NHIAA BYLAWS, art. II, § 21 (2024), https://www.nhiaa.org/ckfinder/userfiles/files/4HB%2024-25%20%20II%20Eligibility.pdf (last visited Oct. 30, 4:09 PM).

56.39.  Consistent with its educational mission to foster the development of New Hampshire's youth, the NHIAA Policy emphasizes its commitment "to providing transgender student-athletes with equal opportunities to participate in NHIAA athletic programs." *Id.*

57.40.  The NHIAA Policy states that "it would be fundamentally unjust and contrary to applicable State and Federal Law to preclude a student from participation on a gender specific sports team that is consistent with the public gender identity of that student for all other purposes." *Id.*

58.41.  The NHIAA Policy, therefore, charges each school district with determining "a student's eligibility to participate in a NHIAA gender specific sports team based on the gender identification of that student in current school records and daily life activities in the school and community at the time that sports eligibility is determined for a particular season."

59.42.  The NHIAA Policy also addresses "concerns that a student might claim a particular gender identity for the purpose of gaining a perceived advantage in athletic competition" by (1) not permitting students to "try out for gender specific sports teams that are different from their publicly identified gender identity"; (2) not permitting students to "try out simultaneously for NHIAA sports teams of both genders"; and (3) expecting that, "as a general matter, after the issue of gender identity has been explicitly addressed by the student and the school district, the determination shall remain consistent for the remainder of the student's high school sports eligibility."

60.43.  HB 1205 was enacted on July 19, 2024. It becomes became effective August 19, 2024.

61.44.  HB 1205 supplants the NHIAA Policy and, instead, requires that each interscholastic sport activity or club athletic team in grades 5–12 sponsored by a public school,

14

or a private school whose students or teams compete against a public school, be designated as a boys', girls', or coed team based on the student's "biological sex." RSA § 193:41, I–II(a).

62.45.  HB 1205 mandates that a student's "sex" shall be determined by "the student's biological sex on the student's official birth certificate . . . [i]ssued at or near the time of the student's birth . . . or certificate issued upon adoption." *Id.* § 193:41, III.

63.46.  HB 1205 mandates that each student who wishes to participate on a girls' team produce a birth certificate but imposes no requirements on students who wish to participate on a boys' team. If the birth certificate is deemed to be different from the student's original birth certificate, that student must produce "other evidence" to support her eligibility to participate on the girls' team, and her family must pay the cost of producing that evidence. HB 1205 does not specify who determines whether a birth certificate is original, what criteria are used to make the determination, or what "other evidence" may be satisfactory to establish a student's eligibility. *Id.* § 193:41, IV.

64.47.  HB 1205 mandates that "[a]thletic teams or sports designated for females, women, or girls shall not be open to students of the male sex." *Id.* § 193:41, II(b).

65.48.  HB 1205 also forbids New Hampshire school districts and other entities from meeting their obligations under 20 U.S.C. § 1681 *et seq.* ("Title IX") (prohibiting sex discrimination in educational programs and activities and permitting reasonable regulations to maintain separate boys' and girls' sports teams) by providing that "[a] government entity, any licensing or accrediting organization, or an athletic association or organization shall not entertain a complaint, open an investigation, or take any other adverse action against a school for maintaining separate interscholastic sport activities or club athletic teams for students of the female sex," as defined in the statute. *Id.* § 193:41, VII.

15

66.49.  In addition to regulating schools and interscholastic athletic associations directly, HB 1205 further creates a private cause of action for any student to sue a school that "knowingly violat[es]" the statute if that student believes they have been "deprived of an athletic opportunity or suffers any direct or indirect harm as a result" because of a violation of HB 1205. *Id.* § 194:42, I.

67.50.  HB 1205 overrides the long-standing judgment and policy of New Hampshire educational and sports personnel by categorically banning any girl who is transgender from participating in girls' sports based on transgender status alone.

### III.    Plaintiffs' Medical Treatment and Participation in Sports.

#### A.    Parker Tirrell.

68.51.  Parker Tirrell is a transgender girl, which means that she is a girl who was assigned male at birth.

69.52.  Parker is 15 years old and is entering her sophomore year at Plymouth Regional High School in September 2024.

70.53.  Plymouth Regional High School is a part of the Pemi-Baker Regional School District, a district that is governed by the Pemi-Baker School Board.

71.54.  This is a recent picture of Parker:

16



72.55.  Parker knew from an early age that she was a girl. Beginning at age two, she dressed like a girl at home, including dresses and nightgowns, painted her nails, and chose the kinds of toys to play with that many other girls choose.

73.56.  While Parker was able to find support at home to live as a girl, she found it challenging to do so more publicly because she feared ostracism and rejection from the outside world. Over time, it because increasingly difficult for Parker to suppress who she was.

74.57.  During the summer between her seventh- and eighth-grade years (age 13), Parker's primary care physician referred her to a clinic specializing in gender issues and the diagnosis and treatment of gender dysphoria in adolescence.

75.58.  Parker has been diagnosed with gender dysphoria.

76.59.  Parker began her eighth-grade year at Plymouth Elementary School as a girl. Parker's mother spoke to the principal and other school personnel, who were supportive of her gender identity. Parker lived fully and authentically as a girl from that time on, including using female pronouns and dressing like other girls at school and elsewhere. She used school facilities and participated in gender-separated school activities as a girl.

77.60.  As part of her treatment for gender dysphoria, Parker has been receiving puberty-blocking medication since May of 2023. Parker began hormone therapy in December 2023. As a result, Parker has not and will not go through male puberty. She has not experienced the physiological changes, including muscle development, that increased testosterone levels would cause in a pubescent boy. Instead, the hormones she has received have caused her to develop physiological changes associated with puberty in females.

78.61.  Parker's parents, family, friends, teachers, teammates, and coaches at school have supported and continue to support her throughout her transition.

79.62.  Parker has always played sports, including in elementary, middle, and high school as well as in town recreational leagues. Sports has always been a source of joy—in fact, exhilaration—for Parker and has been the primary way that she makes friends and experiences a sense of belonging and connection to others.

80.63.  In eighth grade (2022–2023), Parker played on the girls' soccer and track teams at Plymouth Elementary School.

81.64.  Although Parker has participated in a variety of sports, including track and basketball, soccer is her real passion.

82.65.  In ninth grade (2023–2024) Parker played on the girls' soccer team at Plymouth Regional High School. Although the team experienced a challenging season without winning a

single game, Parker loved playing and continued to learn important lessons through her sport, including the ability to work hard to improve and to accept the difficulty of losing while developing resilience and confidence.

83.66.  As Parker enters tenth grade this year, she is excited to rejoin her teammates on the girls' soccer team for the ~~upcoming~~ current season that ~~begins~~ began on August 30, 2024.

84.67.  Parker's health and well-being depend on being able to follow her prescribed treatment, which includes living as a girl in all aspects of her life.

85.68.  Playing on a boys' team is not an option for Parker. Parker is a girl. It would be painful and humiliating for Parker to be forced to play on a boys' team. It would also undermine her treatment for gender dysphoria.

86.69.  If Parker cannot play girls' sports, she won't play sports at all.

87.70.  HB 1205 thus denies Parker the opportunity to participate in school sports entirely, solely because she is transgender. It deprives her of the numerous social, educational, physical, and emotional benefits that playing on the girls' soccer team provides her.

88.71.  If the provisions of HB 1205 are not enjoined as to Parker, it will cause Parker to suffer immediate and irreparable psychological, emotional, developmental, and educational harm that will negatively affect her educational and social experience.

**B.      Iris Turmelle.**

89.72.  Iris Turmelle is a 14-year-old transgender girl who is entering her freshman year at Pembroke Academy, a public high school in New Hampshire.

90.73.  Pembroke Academy is a part of the Pembroke School District, a district that is governed by the Pembroke School Board.

91.74.  This is a recent picture of Iris:



~~92.~~75.  As a toddler and young child, Iris expressed that she is a girl. She would ask Santa
Claus to make her into a girl for Christmas. When her mother jokingly referred to her as "sir" in
"a playful British accent," Iris responded, "No, it's 'madam.'" Iris loved dresses and resisted
wearing boy-style clothes.

~~93.~~76.  Iris has lived her life as a girl since spring of first grade. Her teachers understood
Iris's identity and supported her.

~~94.~~77.  In the summer of 2017, after Iris's first-grade year, Iris's parents took her to an
endocrinologist, who diagnosed her with gender dysphoria.

~~95.~~78.  Iris's parents subsequently took her to a clinic specializing in the diagnosis and
treatment of gender dysphoria in children and adolescents. The gender clinic confirmed Iris's
diagnosis of gender dysphoria.

96.79.  As part of her treatment for gender dysphoria, Iris has been receiving puberty-blocking medication since July 2021, following her fifth-grade year at the age of 11. She started hormone therapy in May 2023 at the end of her seventh-grade year at the age of 13 ½. As a result, Iris has not and will not go through male puberty. She has not experienced the physiological changes, including muscle development, that increased testosterone levels would cause in a pubescent boy. Instead, the hormones she has received have caused her to develop many of the physiological changes associated with puberty in females.

97.80.  Iris's parents, family, friends, teachers, teammates, and coaches at school have supported and continue to support her throughout her transition.

98.81.  Iris has tried a variety of sports in the past. She participated in community youth soccer as a young child. She also took up Tae Kwon Do for a time but dropped it after a short while. More recently, she participated in the intramural tennis club in seventh grade. She immensely enjoyed tennis, but it was not offered in her eighth-grade year. Iris also tried out for the softball team in middle school but did not make the cut.

99.82.  As Iris enters ninth grade, she is excited to play on the tennis and track and field teams at her new high school. Because Pembroke Academy takes students from several area "feeder" middle schools, Iris hopes that participation in these sports will help her to make additional friends, establish a peer group, and cope with the stresses she experiences in life. She also wants to become more physically active for her health.

100.83.    Iris's health and well-being depend on being able to follow her prescribed treatment, which includes living as a girl in all aspects of her life.

101.84.　　　Playing on a boys' team is not an option for Iris. Iris is a girl. It would be painful and humiliating for Iris to be forced to play on a boys' team. It would also undermine her treatment for gender dysphoria.

102.85.　　　If Iris cannot play girls' sports, she won't play sports at all.

103.86.　　　HB 1205 thus denies Iris the opportunity to participate in school sports entirely, solely because she is transgender. It deprives her of the numerous social, educational, physical, and emotional benefits that playing on the girls' tennis and track and field teams would provide her.

104.87.　　　If the provisions of HB 1205 are not enjoined as to Iris, it will cause Iris to suffer immediate and irreparable psychological, emotional, developmental, and educational harm that will negatively affect her educational and social experience.

## CLAIMS FOR RELIEF

### COUNT I

#### (FOURTEENTH AMENDMENT – EQUAL PROTECTION)

(By Parker Tirrell against Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; and Pemi-Baker Regional School District; and Lisa Ash, Bernice Sullivan, Sheila Donahue, Tony Torino, Carolyn Varin, Peter Jackson, Phil McCormack, Greg Aprilliano, Bonnie Acton, Barbara Noyes, Paul Ciotti, Sam Brickley, and Paul Pizzano, in their official capacities as members of the Pemi-Baker Regional School Board)

105.88.　　　Plaintiff Parker Tirrell incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

106.89.　　　Plaintiff Parker Tirrell brings this Count against Defendants Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; the members of the New Hampshire State Board of Education in their official

capacities; and Pemi-Baker Regional School District~~; and the members of the Pemi-Baker Regional School Board in their official capacities~~.

90.    The Equal Protection Clause of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

~~107.~~91.    Defendants are all governmental actors acting under color of state law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment.

~~108.~~92.    HB 1205 singles out and categorically bars Plaintiff Parker Tirrell from playing and competing on girls' teams because she is a transgender girl and thereby discriminates against her on the basis of sex and transgender status, both facially and as applied, in violation of the Equal Protection Clause of the Fourteenth Amendment.

~~109.~~93.    Under the Equal Protection Clause, classifications based on sex and transgender status are subject to heightened scrutiny and are presumptively unconstitutional absent a showing by the government that the discrimination has an "exceedingly persuasive" rationale and is substantially related to an important state interest.

~~110.~~94.    HB 1205 fails heightened scrutiny as to Plaintiff Parker Tirrell because it is not substantially related to any important state interest. Plaintiff Parker Tirrell, who identifies and lives as a girl and has not and will not undergo male puberty, is similarly situated to other girls with respect to her participation in sports teams at school. HB 1205 as it applies to Plaintiff Parker Tirrell cannot survive rational basis review either, because it lacks any rational basis, rests on stereotypes and misconceptions, and undermines rather than advances any alleged purpose.

## **COUNT II**

(VIOLATION OF TITLE IX, 20 U.S.C. § 1681 *et seq.*)

(By Parker Tirrell against Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; and Pemi-Baker Regional School District; and Lisa Ash, Bernice Sullivan, Sheila Donahue, Tony Torino, Carolyn Varin, Peter Jackson, Phil McCormack, Greg Aprilliano, Bonnie Acton, Barbara Noyes, Paul Ciotti, Sam Brickley, and Paul Pizzano, in their official capacities as members of the Pemi-Baker Regional School Board).

111.95.      Plaintiff Parker Tirrell incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

112.96.      Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

113.97.      Plaintiff Parker Tirrell brings this Count against Defendants Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; the members of the New Hampshire State Board of Education in their official capacities; and Pemi-Baker Regional School District; and the members of the Pemi-Baker Regional School Board in their official capacities.

114.98.      Under Title IX, discrimination "on the basis of sex" encompasses discrimination against individuals because they are transgender.

115.99.      Title IX forbids sex discrimination in athletic programs.

116.100.      Plymouth Regional High School and Pemi-Baker Regional School District receive federal funding and are subject to the provisions of Title IX.

~~117.~~101.    By barring Plaintiff Parker Tirrell from playing on girls' sports teams because she is transgender, Defendants exclude her from, deny her the benefits of, and subject her to discrimination in educational programs and activities "on the basis of sex," in violation of her rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

## COUNT III

### (FOURTEENTH AMENDMENT – EQUAL PROTECTION)

(By Iris Turmelle against Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; and Pembroke School District~~; and Andrew Camidge, Gene Gauss, Kerri Dean, and Melanie Camelo, in their official capacities as members of the Pembroke School Board~~).

~~118.~~102.    Plaintiff Iris Turmelle incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

~~119.~~103.    Plaintiff Iris Turmelle brings this Count against Defendants Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; the members of the New Hampshire State Board of Education in their official capacities; and Pembroke School District~~; and the members of the Pembroke School Board in their official capacities~~.

104.    The Equal Protection Clause of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

~~120.~~105.    Defendants are all governmental actors acting under color of state law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment.

~~121.~~106.    HB 1205 singles out and categorically bars Plaintiff Iris Turmelle from playing and competing on girls' teams because she is a transgender girl and thereby

discriminates against her on the basis of sex (including her transgender status), both facially and as applied, in violation of the Equal Protection Clause of the Fourteenth Amendment.

122.107.    Under the Equal Protection Clause, classifications based on sex are subject to heightened scrutiny and are presumptively unconstitutional absent a showing by the government that the discrimination has an "exceedingly persuasive" rationale and is substantially related to an important state interest.

123.108.    HB 1205 fails heightened scrutiny as to Plaintiff Iris Turmelle because it is not substantially related to any important state interest. Plaintiff Iris Turmelle, who identifies and lives as a girl and has not and will not undergo male puberty, is similarly situated to other girls with respect to her participation in sports teams at school. HB 1205 as it applies to Plaintiff Iris Turmelle cannot survive rational basis review either because it lacks any rational basis, rests on stereotypes and misconceptions, and undermines rather than advances any alleged purpose.

## COUNT IV

### (VIOLATION OF TITLE IX, 20 U.S.C. § 1681 *et seq.*)

(By Iris Turmelle against Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; and Pembroke School District; and Andrew Camidge, Gene Gauss, Kerri Dean, and Melanie Camelo, in their official capacities as members of the Pembroke School Board).

124.109.    Plaintiff Iris Turmelle incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

125.110.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

126.111.      Plaintiff Iris Turmelle brings this Count against Defendants Frank

Edelblut, in his official capacity as Commissioner of the New Hampshire Department of

Education; the members of the New Hampshire State Board of Education in their official

capacities; and Pembroke School District; and the members of the Pembroke School Board in

their official capacities.

127.112.      Under Title IX, discrimination "on the basis of sex" encompasses

discrimination against individuals because they are transgender.

128.113.      Title IX forbids sex discrimination in athletic programs.

129.114.      Pembroke Academy and Pembroke School District receive federal funding

and are subject to the provisions of Title IX.

130.115.      By barring Plaintiff Iris Turmelle from playing on girls' sports teams

because she is transgender, Defendants exclude her from, deny her the benefits of, and subject

her to discrimination in educational programs and activities "on the basis of sex," in violation of

her rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant the following relief:

I.      A declaration by this Court that:

    a.   HB 1205 violates the Equal Protection Clause of the Fourteenth

        Amendment of the United States Constitution facially and as applied to

        Plaintiffs;

    b.   HB 1205 violates Title IX, 20 U.S.C. § 1681 *et seq.* facially and as applied

        to Plaintiffs; and

    c.   Defendants may not enforce HB 1205;

II.      Entry of a preliminary and permanent injunction enjoining:

a.  Defendant Pemi-Baker Regional School District and its employees, agents, appointees, or successors from enforcing or threatening to enforce HB 1205 as to Plaintiff Parker Tirrell, and requiring Defendant Pemi-Baker Regional School District and its employees, agents, appointees, or successors to permit Plaintiff Parker Tirrell to try out for and play on the school sports teams designated for girls on the same terms and conditions as other girls;

b.  Defendant Pembroke School District and its employees, agents, appointees, or successors from enforcing or threatening to enforce HB 1205 as to Plaintiff Iris Turmelle, and requiring Defendant Pembroke School District and its employees, agents, appointees, or successors to permit Plaintiff Iris Turmelle to try out for and play on the school sports teams designated for girls on the same terms and conditions as other girls; and

a.c. Defendants Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; and their employees, agents, appointees, or successors from enforcing or threatening to enforce HB 1205 as to Plaintiffs and all transgender girls in the State of New Hampshire, and requiring said Defendants and their employees, agents, appointees, or successors to permit Plaintiffs and all transgender girls in the State of New

Hampshire to try out for and play on the school sports teams designated for girls on the same terms and conditions as other girls.

1.     Issue a declaratory judgment that the enforcement by Defendants of HB 1205 violates Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and Title IX, 20 U.S.C. § 1681 *et seq.*

2.     Issue a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendants Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; Pemi-Baker Regional School District; and Lisa Ash, Bernice Sullivan, Sheila Donahue, Tony Torino, Carolyn Varin, Peter Jackson, Phil McCormack, Greg Aprilliano, Bonnie Acton, Barbara Noyes, Paul Ciotti, Sam Brickley, and Paul Pizzano, in their official capacities as members of the Pemi-Baker Regional School Board; and their employees, agents, appointees, or successors from enforcing or threatening to enforce HB 1205 as to Plaintiff Parker Tirrell, and requiring said Defendants and their employees, agents, appointees, or successors to permit Plaintiff Parker Tirrell to try out for and play on the school sports teams designated for girls on the same terms and conditions as other girls.

3.     Issue a preliminary and permanent injunction enjoining Defendants Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; Pembroke School District; and Andrew Camidge, Gene Gauss, Kerri Dean,

and Melanie Camelo, in their official capacities as members of the Pembroke School Board; and

their employees, agents, appointees, or successors from enforcing or threatening to enforce HB

1205 as to Plaintiff Iris Turmelle, and requiring said Defendants and their employees, agents,

appointees, or successors to permit Plaintiff Iris Turmelle to try out for and play on the school

sports teams designated for girls.

4.    Waive the requirement for the posting of a bond as security for entry of temporary

or preliminary injunctive relief.

5.III.    Award Plaintiffs their nominal damages, as well as their costs, expenses, and

reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

6.IV.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

PARKER TIRRELL, by her parents and
next friends SARA TIRRELL and
ZACHARY TIRRELL,

and

IRIS TURMELLE, by her parents and next
friends AMY MANZELLI and CHAD
TURMELLE,

By and through their attorneys,

/s/ Kevin J. DeJong
Kevin J. DeJong (NH Bar No. 17633)
kdejong@goodwinlaw.com
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
(617) 570-1156

Louis L. Lobel* (MA Bar No. 693292)
llobel@goodwinlaw.com
Elaine H. Blais* (MA Bar No. 656142)
eblais@goodwinlaw.com

/s/ Chris Erchull
Chris Erchull (NH Bar No. 266733)
cerchull@glad.org
Bennett H. Klein* (MA Bar No. 550702)
bklein@glad.org
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350

Gilles Bissonnette (NH Bar No. 265393)
gilles@aclu-nh.org

GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210

Samira Seraji* (CA Bar No. 338979)
sseraji@goodwinlaw.com
GOODWIN PROCTER LLP
601 S. Figueroa Street
Suite 4100
Los Angeles, CA 90017

Ben See* (NY Bar No. 6019202)
bsee@goodwinlaw.com
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018

~~Emmett Weiss* (MA Bar No. 713784)~~
~~eweiss@goodwinlaw.com~~
~~GOODWIN PROCTER LLP~~
~~1900 N Street, N.W.~~
~~Washington, DC 20036~~

\*~~Applications for admission~~Admitted *pro hac vice* ~~to follow~~.

~~August 16~~October 31, 2024

Henry Klementowicz (NH Bar No. 21177)
henry@aclu-nh.org
AMERICAN CIVIL LIBERTIES UNION OF
NEW HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH 03301
(603) 224-5591

31