**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 3-4-2025**

```
                    UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF NEW HAMPSHIRE


    * * * * * * * * * * * * * * * * * * *
                                        *
                                        *
    PARKER TIRRELL AND IRIS TURMELLE    *
                                        *   24-cv-251-LM-TSM
                    v.                  *   November 21, 2024
                                        *   10:41 a.m.
    FRANK EDELBLUT, ET AL               *
                                        *
    * * * * * * * * * * * * * * * * * * *
```

<u>TRANSCRIPT OF FTR-RECORDED PRETRIAL CONFERENCE</u>
<u>BEFORE THE HONORABLE TALESHA SAINT-MARC</u>


<u>APPEARANCES</u>:

<u>For the Plaintiffs</u>:              Chris Erchull, Esq.
                                 GLBTQ Legal Advocates & Defenders

                                 Henry Klementowicz, Esq.
                                 ACLU of New Hampshire


<u>For the Defendants</u>:

 (State defendants)              Michael P. DeGrandis, Esq.
                                 Brandon Chase, Esq.
                                 NH Attorney General's Office


 (Pembroke School District)      Michael Eaton, Esq.
                                 Wadleigh, Starr & Peters, PLLC


 (Pemi-Baker Regional            Diane M. Gorrow, Esq.
  School District)               Soule, Leslie, Kidder, Sayward
                                 & Loughman

```
 1                    P R O C E E D I N G S
 2             THE CLERK:  This Court is now in session and has
 3   before it for consideration a pretrial conference in the
 4   matter of Tirrell, et al. versus Edelblut, et al., civil
 5   number 24-cv-251-LM.
 6             If counsel could please identify themselves for the
 7   record, starting with counsel for the plaintiffs.
 8             MR. ERCHULL:  Chris Erchull for the plaintiffs.
 9             THE COURT:  Good morning.
10             MR. KLEMENTOWICZ:  Good morning.
11             Henry Klementowicz from the ACLU of New Hampshire.
12             THE COURT:  Good morning.
13             MR. DEGRANDIS:  Good morning.
14             Michael DeGrandis with the Attorney General's
15   Office for the state defendants.
16             THE COURT:  Good morning.
17             MR. CHASE:  Brandon Chase with the Attorney
18   General's Office for the state defendants.
19             THE COURT:  Good morning.
20             MR. CHASE:  Good morning.
21             MR. EATON:  Michael Eaton for the Pembroke School
22   District.
23             THE COURT:  Good morning.
24             MS. GORROW:  Diane Gorrow for the Pemi-Baker
25   Regional School District.
```

```
 1                    THE COURT:  Good morning.
 2                    I appreciate you all accommodating us being in a
 3     smaller courtroom today.  We're a full house today, and so I
 4     appreciate your being willing to sit back there without a
 5     table.
 6                    All right.  So we're here for a preliminary
 7     pretrial conference.
 8                    I did review the parties' proposals, and it's clear
 9     that you all are not agreeing on a timeline for this case.  I
10     would like to hear a little more about the breakdown and, you
11     know, see if we can reach some kind of resolution.
12                    And what it seems to me is that the plaintiffs are
13     looking for some way to get this case or get a good portion of
14     this case to happen before the school year starts again, and
15     there's some resistance on the state and local school
16     districts -- or maybe not the school districts because you all
17     are saying not my fight, right?
18                    MS. GORROW:  Right.
19                    THE COURT:  All right.  So let's hear from
20     plaintiffs first.
21                    MR. ERCHULL:  Thank you, your Honor.
22                    The plaintiffs are proposing an expedited schedule.
23     As you acknowledged, it's because we would like to see a trial
24     happen or a judgment happen before the start of the next
25     school year.  That is because we are hearing from school
```

1    districts, including the school district defendants in this

2    case, that school districts and school boards are looking for

3    final resolution as soon as possible, and we feel -- we feel

4    like it's doable to get this case done before the start of the

5    next school year, although we acknowledge that's an expedited

6    timeline.

7                Previously the plaintiffs represented to this Court

8    that we were prepared to move expeditiously in this case.

9    That has not changed.  It remains true.

10                And the state defendants have represented that they

11    intend to present expert evidence, and so on that basis we

12    don't believe it's likely that this case will be resolved on

13    summary judgment.  So our schedule contemplates the

14    possibility of even foregoing summary judgment motions

15    altogether if that -- if that ends up being appropriate based

16    on, you know, what we learn through discovery.

17                To the extent that the state defendants are moving

18    to stay discovery, our position is that they have not met

19    their burden.

20                There's case law on this point.  As Judge

21    McCafferty explained in a case in 2021, the defendants carry a

22    burden if they wish to stay discovery during the pendency of a

23    motion to dismiss.

24                Would you like the case cite for that?

25                THE COURT:  Sure.  Thank you.

1          MR. ERCHULL:  Yeah, it's <u>Drewniak versus U.S.</u>

2     <u>Customs</u>, and it was published 563 F.Supp. 3d 1.  And so, you

3     know, in that the Court discusses the burden that defendants

4     bear if they wish to stay discovery during the pendency of a

5     motion to dismiss.

6          There's case law that says that it could make sense

7     for a Court to look under the hood of the merits of a motion

8     to dismiss to conclude if it's likely to obviate the need for

9     discovery on any particular issue.

10          And very recently, in fact, Judge McCafferty

11     decided a motion in another case, 23-cv-523.  It's <u>Bernier</u>

12     <u>versus Turbocam</u>.  May 2, 2024, is Judge McCafferty's order

13     denying a motion to stay discovery in another matter because

14     the defendants were unable to meet their burden to show that

15     staying discovery was appropriate.

16          In the amended complaint that the plaintiffs filed

17     there is nothing new that would warrant staying discovery.  Of

18     course the defendants have every right to file a motion to

19     dismiss the first amended complaint.  However, it is the

20     plaintiffs' position that any arguments that could have been

21     raised in response to the original complaint have been waived

22     because they were not argued, you know, at the time.

23          The state defendants make a point that the

24     complaint was amended after pleadings had closed, but it's our

25     position that it's not at all unusual to amend a complaint

1    even after discovery has been initiated.  And in fact, you

2    know, we did it within our Rule 15 timeline to file an amended

3    complaint.  And, in addition, it's perfectly common in

4    discovery plans, including the discovery plan proposed by the

5    state defendants, to contemplate amended pleadings.

6              There are no new facts alleged in the first amended

7    complaint.  There are no new legal claims.  The only material

8    change goes to the scope of relief, and the scope of relief is

9    not grounds for dismissal on a 12(b)(6) motion.

10             More importantly, there is nothing about the change

11   in scope of relief that affects the scope of discovery.

12             So the state's view of discovery changes -- I mean,

13   we accept that that's what they represent due to the facial

14   claim but they have not shown how it goes to their purported

15   motion to dismiss or how that warrants a stay, and so we don't

16   think that a stay of discovery is warranted in this case.

17             And, you know, a review of Judge McCafferty's order

18   on the motion for preliminary injunction will show that

19   there's not really any legal basis under which a motion to

20   dismiss is likely to prevail.

21             THE COURT:  All right.  Thank you.

22             MR. ERCHULL:  That's all.  Thank you, your Honor.

23             THE COURT:  All right.  Attorney DeGrandis.

24             MR. DEGRANDIS:  Good morning, your Honor.

25             I just have three main points to make to give the

 1    Court some context for our position on the matter.

 2              First, is that it's very early in this particular

 3    case process and the procedural posture of this case to enter

 4    a scheduling order in the first place, and I would like to

 5    address that.

 6              I would also like to address the plaintiffs'

 7    proposal which we believe to be unrealistic.

 8              I would also like to point out just certain

 9    features of the state defendants' proposal that makes it a

10    much more realistic and doable schedule than what the

11    plaintiffs are proposing here.

12              As far as the early nature of this case, there's a

13    lot of uncertainty surrounding this case.  We don't know the

14    scope of discovery.  We don't know the scope of the burdens of

15    trial either with the addition of this facial claim.  The

16    facial claim is much more than what the plaintiffs present it

17    to be.  It is more than just a change to the scope of a

18    remedy.  I mean, this is a fundamental change to the whole

19    nature of the case.

20              They are now arguing -- unlike their original

21    complaint which was only an as-applied challenge, now they're

22    saying that HB 1205 under no set of circumstances can lawfully

23    prohibit a biological boy from playing girls' sports.  That is

24    a mammoth difference.

25              And the First Circuit has told us that facial

1    challenges are more complex, they are more probative, because

2    they are making a sweeping challenge to every application

3    possible.

4            That's very different from what was going on in the

5    first complaint.  It's very different from what is going on in

6    the first amended complaint here as it relates to the

7    as-applied challenge where we have two plaintiffs with very

8    specific, very unique circumstances to support that claim.

9            Now that has to be extrapolated.  Those facts --

10   those alleged facts have to be extrapolated to the entire

11   population.  So that leaves a lot of open questions regarding

12   what is the scope of discovery and what will the burdens of

13   trial be in that respect.

14           So we don't know even how many experts.  I think

15   this probably will be an expert-heavy case, but only probably.

16   We don't really know the end result of our responsive pleading

17   and how the Court views that responsive pleading.  This would

18   require a different defense strategy.

19           We need a realistic schedule.  So if the Court is

20   inclined to enter a scheduling order today, we would ask the

21   Court to please consider this dynamic of the uncertainty and

22   build, you know, extra time in to consider that.

23           With respect to the second point I wanted to make

24   regarding context, the plaintiffs' proposal is profoundly

25   unrealistic, and I'll just point to two examples of that.

1          First, when you look at the expert report exchange,

2    the plaintiffs proposed simultaneous exchange of expert

3    reports.  That's crazy.  Courts only allow that in rare

4    circumstances where there wouldn't be prejudice to the

5    defendants.

6          Here the state defendants don't know what experts

7    are going to opine upon on the plaintiffs' side in the first

8    place.  It's standard to have 90 days for a defendant to

9    address that, and I think that's really important.  Their

10   schedule is unrealistic in that respect and fundamentally

11   unfair.

12         The second point I would make is that the

13   plaintiffs' discovery plan hasn't seriously contemplated the

14   dynamics of this case.

15         And I'll just point out -- you'll see it in a

16   number of different elements within their proposed plan, but

17   I'll just point out four sections on pages 2 and 3; theory of

18   liability, theory of defense, injunctive relief, and questions

19   of law.  In none of those do the plaintiffs even raise their

20   own facial challenge.  They don't bring those up at all.  The

21   facial challenge is a different claim, and that is one of the

22   questions of law that the Court is going to have to ask,

23   whether it be in a motion to dismiss, motion for summary

24   judgment, or on the merits at a trial.  Either way that's an

25   important dynamic to consider, and the plaintiffs I don't

1    think considered that in their requests here.

2         When we look -- and I won't go through -- in

3    advocating for the state defendants' schedule, I won't go

4    through it line by line, but I would like to point out some of

5    its features that make it more realistic and I think fairer

6    for all of the parties.

7         First and foremost, with respect to the expedited

8    schedule.  Under local rule 40.1 an expedited schedule

9    requires the consent of the parties.  Well, we don't consent

10   to that.  We don't think that that's fair to the state

11   defendants, and it would be prejudicial to our ability to

12   defend the validity of the statute.

13        The trial dates are seven months apart.  That is a

14   big difference between where the defendants are and where the

15   plaintiffs are.

16        But in this particular instance the plaintiffs have

17   all of the relief they were looking for.  Again, there are two

18   plaintiffs.  Parker and Iris have successfully secured a

19   preliminary injunction.  They may play sports as they wanted.

20        The urgency -- I should say the exigency is no

21   longer on the side of the plaintiffs.  The urgency is actually

22   on the side of the state defendants because we are not able to

23   enforce the law as to those two plaintiffs.

24        We want to try this case to get this case to a

25   final resolution as quickly as possible, but we don't want to

1    do that in such a fast, hasty manner that it prejudices our

2    ability to defend the statute.  So we do require some time.

3            Again, not knowing the scope of discovery and the

4    scope of demands on trial is why we build in this extra time.

5    We don't know when our responsive pleading will be considered

6    by the Court.  It could be we have resolution in January or

7    even as late as February, and that really informs most of the

8    difference in how we're -- that and of course the expert

9    disclosures is really the source of most of the difference

10   between the schedules proposed by the plaintiffs and by the

11   defendants.

12           Just a couple of other things here about our

13   proposal.  I just wanted to clarify that, you know, we ask --

14   in the motions to dismiss section we state only upon the

15   Court's invitation.  Of course that's not to prejudice any of

16   the defendants' ability to move to dismiss the first amended

17   complaint.  That would be after those are decided.  If the

18   plaintiff later chooses to amend their complaint, that's

19   really what that's in reference to.

20           As far as the expert reports are concerned, as I

21   mentioned before, not to belabor the point, but we would ask

22   for 90 days to do that.  Again, we don't know -- it's possible

23   we could do it faster certainly, 75 days, maybe even 60 days,

24   but not knowing how many experts we're going to need, at this

25   time we think 90 days is a reasonable time span.  And if the

1    Court were to disagree with that and ask the defendants to

2    file their expert reports in a shorter time period, we would

3    ask the Court then to perhaps build in some time so that the

4    defendants could also file expert rebuttal reports.  That may

5    sort of cushion the blow and enable us to adapt to a slightly

6    shorter timeline.

7              As far as the issue of staying discovery, I haven't

8    read the case that Attorney Erchull referenced here today,

9    cited here today, but my understanding for all of those cases

10   where a defendant has to demonstrate the need, a particular

11   need to stay discovery and that typically discovery is not

12   stayed during the pendency of a motion to dismiss, that's my

13   point about this being very early in the stages of litigation

14   for even a scheduling order.

15             There is no pending motion to dismiss.  We have not

16   filed our responsive pleading yet.  So that dynamic I don't

17   think really enters into the picture here because it's so

18   early in the process.

19             The last point I would like to make is with respect

20   to the trial.  We have proposed a ten day trial.  Plaintiffs

21   have proposed a three day trial.  We don't think three days is

22   realistic.  Again, we have to build in perhaps a day or two

23   because of the uncertainty, but also not knowing -- we will

24   have a jury, this will be a jury trial, and that will all take

25   time.

1              With the facial challenge, there could be fact

2       witnesses in addition to expert witnesses.  Again, we just

3       don't know that much at this time, and so that's why we think

4       that it would be best to enter into a scheduling order, our

5       proposed timeline.

6              And one other point.  This is something we should

7       raise.  We may file a motion for summary judgment.  It is

8       entirely possible that there won't be an opportunity, but we

9       do want to reserve the right to do that.  I think we do need

10      to, you know, make sure that we've got the 120 days prior to

11      trial to do such things.

12             The law is evolving, it is changing, and that could

13      take out, it could support, or it could be negative toward the

14      state defendants' defense.  It could be one or the other.  We

15      don't know that at this point.  I think the parties do need to

16      have that leeway for motions for summary judgment.

17             THE COURT:  At the preliminary injunction hearing

18      did the parties present expert testimony?

19             MR. DEGRANDIS:  We did not.  At the preliminary

20      injunction hearing we accepted the allegations on their face

21      as true for the limited purpose of that hearing.

22             THE COURT:  All right.  And so does the state have

23      any experts already starting to be lined up?  I mean, it's not

24      like you don't have any experts yet, right?

25             MR. DEGRANDIS:  We have not engaged any experts.

1    We are starting to reach out to them now.

2            THE COURT:  Okay.  All right.

3            Thank you.

4            MR. DEGRANDIS:  Thank you.

5            MR. ERCHULL:  Thank you, your Honor.

6            I just want to address a couple of points very

7    quickly.

8            First, I want to make the point that the reason

9    that there's no answer to the first amended complaint from the

10   state defendants or no responsive pleading is because they

11   asked for more time to do so, and the other defendants have in

12   fact submitted responsive pleadings.

13           And as your Honor just mentioned, we submitted an

14   expert affidavit alongside our motion for preliminary

15   injunction and temporary restraining order, which is available

16   to the state defendants, when we initially filed the complaint

17   back in August.  So they've had, you know, ample time with the

18   information about what experts we plan to present, and I would

19   have of course been forthcoming about any questions about

20   whether there was an intention to, you know, bring in more

21   experts.

22           THE COURT:  Do you agree, though, that now with the

23   facial challenge that it makes the case a little bit more

24   complex?

25           MR. ERCHULL:  I don't agree --

1           THE COURT:  Even your expert may offer some

2    different information or you may have different experts?

3           MR. ERCHULL:  No, no.

4           I'll try to address for you why I think that the

5    facial claim is the same, right?

6           I mean, our claim from the outset is that HB 1205

7    is both unconstitutional and violates Title IX, right?

8           And the reason that we have proffered in our

9    initial complaint and in our initial pleadings, including the

10   motion for preliminary injunction, was because it classifies

11   the law -- HB 1205, the sports ban, classifies based on

12   transgender status, and the facts that underlie our complaint

13   show why the state can't meet its burden to justify this

14   classification based on transgender status.

15           If you read Judge McCafferty's order on the motion

16   for preliminary injunction, it's very clear that based on the

17   facts that we presented and based on what the state presented

18   in opposition, that they were unable to meet a burden to show,

19   at least in terms of likelihood of success, that they could

20   overcome their legal obligation to show that the interests,

21   the state interests justify the classification based on

22   transgender status.

23           So the fact that it's a facial challenge versus an

24   as-applied challenge does not change that calculus at all, and

25   our expert affidavit says everything it needs to to support

1    the facial claim just as it does the as-applied claim.

2         THE COURT:  Okay.  And with regard to the trial

3    length, I mean three days, just explain that to me.  That

4    seems like a really ambitious trial.

5         MR. ERCHULL:  Yeah.  Sorry.  Thank you, your Honor,

6    for that question.

7         I just want to clarify that I'm happy to negotiate

8    about number of days of trial and how the discovery scheduling

9    plays out exactly.  And, again, the tight timeline was really

10   all in an effort to try to get to final judgment before

11   September if at all possible.

12        The three day trial in my view -- you know, we have

13   witnesses to -- fact witnesses to put on, you know, with our

14   plaintiffs and potentially information about their medical

15   history that's been presented in the case, and then we have an

16   expert.

17        In my estimation it would make sense for the

18   defendants to have one expert, or if they want to have two

19   experts, but I don't see those elements, those, you know, fact

20   elements coming to more than two days of trial, and then of

21   course openings and closings.  I don't see it taking more than

22   three days, but I'm happy to contemplate more days for a trial

23   that's more complicated.

24        THE COURT:  And then with regard to the schedule of

25   trying to get a trial before the next school year starts, it

1   seems that the urgency is not as great anymore with the

2   preliminary injunction in place.  I certainly understand that

3   other school districts might be wanting some direction, but

4   other school districts aren't in this case.

5           So the districts and the plaintiffs that are in

6   this case are protected to be able to play next year assuming

7   that the preliminary injunction is still in place.

8           MR. ERCHULL:  Yes.  We acknowledge that the two

9   individual named plaintiffs are in fact -- and this is not a

10  class action, right?  The two individual main plaintiffs are

11  eligible to continue playing as long as they meet other

12  eligibility criteria for, you know, as long as the litigation

13  proceeds if the injunction isn't removed.

14          And we also are aware that, you know, for their

15  sake finality of this litigation is a benefit to them, and

16  we're also aware that the school district defendants have

17  represented that not even just for -- you know, it's not even

18  just the school district defendants who are named.  Yes,

19  they're subject to the preliminary injunction but only with

20  respect to those two individual plaintiffs, and they want

21  clarity -- which they've represented to the Court already,

22  they want clarity beyond just these two specific plaintiffs,

23  and we understand that, and as we represented to the Court

24  from the beginning, we are prepared to move expeditiously

25  toward that end.

1          THE COURT:  Is there any evidence, though, that

2   those two school districts have other students who would be

3   impacted by this?

4          MR. ERCHULL:  I would defer to them, but no, I

5   don't have any evidence of that.

6          THE COURT:  All right.

7          So you just heard from the state defendants that

8   they don't have any experts lined up.  So I'm looking at your

9   expert disclosure deadline of next month which sounds like

10  it's not possible.

11         MR. ERCHULL:  Yeah.  I'm more than willing to be

12  flexible about that, but again with the aim of hopefully

13  reaching resolution of the matter prior to September.

14         THE COURT:  All right.

15         Anything else, counsel?

16         MR. DEGRANDIS:  Just a couple of very quick points.

17         As far as Attorney Erchull bringing up the reason

18  why we haven't filed a responsive pleading is because they

19  gave us time to extend that, I appreciate it.  Thank you.

20  That is very important.  There are a lot of moving parts, and

21  there's a lot to consider in this case.

22         The only other point I wanted to raise here was I

23  believe the expert declaration to which Attorney Erchull

24  refers, Dr. Shumer's, it was simply a declaration.  It was

25  conclusory.  He explained his position and why he believes

1   that his position, his understanding, his expertise supported

2   the motion for a preliminary injunction.  It did not provide

3   data.  It did not provide detail.  And, please, someone

4   correct me if I'm wrong, but he also hadn't even interviewed

5   either one of the individual plaintiffs.  That was very

6   preliminary.  It was in support of the preliminary injunction.

7   It did not provide us with any information -- any additional

8   information regarding what an expert would opine to with

9   respect to the factual allegations made specifically.

10              THE COURT:  Okay.  Thank you.

11              All right.  So I can give you my preliminary

12  thoughts on this.

13              I think that a schedule that tries to get this case

14  tried by the beginning of the school year next year is just

15  too ambitious for this case, but I also think that it doesn't

16  make sense given the preliminary injunction order that

17  discovery be stayed pending resolution of any responsive

18  pleading that the state defendants might file.

19              So I could do two things.  I can revise the

20  schedule myself and find some time that is in between the

21  seven month difference that you all have or I can give you

22  guys another opportunity to chat amongst yourselves to see if

23  you can get a resolution in between that seven month trial

24  difference.

25              But what I would say in terms of some guidance is

1    that, you know, with regard -- it sounds like this is going to

2    be an expert-heavy case, and so having experts disclosed on

3    the same date doesn't really make sense in this type of case.

4    So I would have some kind of expert disclosure whether you

5    build it in to have rebuttal report deadlines for both

6    parties, however you want to build it in, but I think having

7    expert disclosures on the same date just probably doesn't make

8    sense in this case.

9              So, like I said, I'm happy to take the direction of

10   the parties.  I can issue an order that gives you a schedule

11   or you can take another crack at it and get something back to

12   me within ten days of a new proposal.

13             MR. DEGRANDIS:  I'm happy -- I think it's a

14   career-limiting move to ask the Court to do my work for me.

15   So I am happy to work with plaintiff's counsel, and hopefully

16   we can come up with something.  I think that was good

17   direction, and we can work something out.

18             THE COURT:  Yes.  If you can.  So let's just set a

19   deadline for ten days, and if you can't work something out,

20   just let my docket clerk know and we'll just get together for

21   a Zoom for whatever else you can't work out, and then I can

22   make the decisions.  All right?

23             MR. DEGRANDIS:  Thank you.

24             THE COURT:  Does that make sense everybody?

25             MR. ERCHULL:  Yes.  Thank you, your Honor.

1          MR. KLEMENTOWICZ:  Thank you, your Honor.

2          THE COURT:  Thank you all.  Court is adjourned.

3          (Conclusion of hearing at 11:06 a.m.)

1                        C E R T I F I C A T E

2

3

4        I, Susan M. Bateman, do hereby certify that the

5   foregoing transcript is a true and accurate transcription of

6   the within proceedings to the best of my ability and belief.

7

8

9   Submitted: 12-4-24        /s/   Susan M. Bateman
                              SUSAN M. BATEMAN, RPR, CRR
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25