IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PARKER TIRRELL and IRIS TURMELLE,<br><br>*Plaintiffs*,<br><br>v.<br><br>FRANK EDELBLUT, in his official capacity as Commission of the New Hampshire Department of Education, *et al.*,<br><br>*Defendants*. | Case No. 1:24-cv-00251-LM-TSM |

**DEFENDANTS FRANK EDELBLUT, ANDREW CLINE, KATE CASSADY, ANN LANE, PHILIP NAZZARO, RAJESH NAIR, JAMES FRICCHIONE, AND JAMES LABOE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**INTRODUCTION**

House Bill 1205, codified as RSA 193:41 and 193:42, is an act of the New Hampshire General Court that protects fairness, integrity, and safety, in middle and high school female athletic competition ("RSA 193:41–42" or the "Act").[1] Legislators observed that biological girls often experience physical harm, distress, embarrassment, and loss of opportunity in jurisdictions that permit transgender girls to compete with cisgender girls in athletics.[2] One Senator explained that "[i]n New Hampshire and across the nation, a growing number of biological males are joining middle and high school girls and college women's sports teams. This defeats the purpose of Title IX, which has expanded opportunities for women's sports across the nation over the past

---

[1] *See* 46 H. Rec. 11, at 16 (Mar. 15, 2024) (statement in support of HB 1205).
[2] *See* Sen. HB 1205 Debate at 1:31:48–32:04 (May 16, 2024) (Sen. Timothy Lang, Sr.), available at https://www.youtube.com/watch?v=8ai8PSQakzM (last visited Dec. 5, 2024) ("[F]orcing girls to compete against biological males is both unfair and unsafe, and it forces biological girls uncomfortable with sharing the field or a locker room with a biological man to give up playing sports altogether."); 46 H. Rec. 11, at 16 (statement in support of HB 1205) ("[G]irls have been injured. In Massachusetts this year, three girls were injured in a basketball game causing the team to forfeit, and a West Virginia girl was injured in volleyball and was still suffering a year later.").

fifty years."[3]  Supporters of HB 1205 concluded that the Act is necessary to protect New Hampshire girls' safety and to ensure that they will not face fewer or less meaningful athletic opportunities than those available to boys.[4]

The Plaintiffs, two high school transgender girls, assert that RSA 193:41–42 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Title IX of the Education Amendments of 1972, on the Act's face and as applied to Plaintiffs.[5] The "State Defendants" include New Hampshire Department of Education Commissioner Edelblut and the Chair and six members of the Board of Education, in their official capacities.[6] When the time comes to litigate the merits of this lawsuit, State Defendants will defend RSA 193:41–42 as a lawful exercise of the General Court's police power and demonstrate that the Act is consistent with the Equal Protection Clause and Title IX.  But as a threshold matter, the First Amended Complaint has at least two fundamental defects that require the Court's immediate attention.

The first defect implicates this Court's subject-matter jurisdiction.  To proceed against the Commissioner as a defendant, Plaintiffs must establish both a causal nexus linking their alleged injuries to the Commissioner's actions, and a likelihood that an injunction would redress the harm of which they complain.[7]  Plaintiffs have not established either requirement to confer this Court's jurisdiction.  The Commissioner is the chief administrative officer of the Department

---

[3] *See* Sen. HB 1205 Debate at 1:16:08–16:25 (Sen. Ruth Ward), available at https://www.youtube.com/watch?v=8ai8PSQakzM (last visited Dec. 5, 2024).
[4] *See* Sen. HB 1205 Debate at 1:30:30–30:35 (Sen. Daniel E. Innis) (citing Caitlyn Jenner) *and* 1:31:08-1:31:13 ("[The Act] is common sense, it is about safety, and it's about fairness to all athletes."), available at https://www.youtube.com/watch?v=8ai8PSQakzM (last visited Dec. 5, 2024).
[5] ECF No. 78 at 3.
[6] ECF No. 78, ¶¶ 8-15.
[7] *Equal Means Equal v. Ferriero*, 3 F.4th 24, 27-28 (1st Cir. 2021) (quoting *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)) (internal quotations and additional citations omitted).

of Education.[8] Neither his enabling statute nor RSA 193:41–42 affords him the authority to enforce or regulate any provision of the Act.[9]

The second defect is the First Amended Complaint's failure to state a claim upon which this Court may grant relief. Where the original Complaint challenged the Act only as applied to Plaintiffs and their specific circumstances, the First Amended Complaint contends that, in addition to its as-applied objections to the Act, RSA 193:41–42 is unconstitutional and unlawful in all its applications, without exception.[10] This facial challenge places a heavy burden on Plaintiffs because they must "establish that no set of circumstances exists under which the Act would be valid."[11] Yet, by Plaintiffs' own admission, the First Amended Complaint does not offer *any* factual allegations to support their facial challenge.[12] Moreover, Plaintiffs' assertion that they would suffer physically and emotionally if they were forced to play sports with boys, is an acknowledgement that there is *at least* one valid application of the Act.[13] Therefore, Plaintiffs have not satisfied their burden to support their facial challenge with sufficient plausible facts.[14]

Accordingly, State Defendants respectfully request that the Court dismiss the Commissioner from this case for lack of subject-matter jurisdiction, and dismiss the First Amended Complaint's facial challenges for failure to state a claim upon which this Court may grant relief.

---

[8] RSA 21-G:9.
[9] *See generally* RSA 21-N:4; RSA 135-F:5; *and compare* RSA 193:42, I–III.
[10] *See* ECF No. 77-2 at 3; ECF No. 78 at 3.
[11] *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (internal quotations and citation omitted).
[12] *See* Pre-Trial Conf. Hr'g Tr. 6:6-7 (Nov. 21, 2024).
[13] *See* ECF No. 78, ¶¶ 67-70, 83-86.
[14] *See Medeiros v. Town of Rindge*, 671 F. Supp. 3d 96, 99 (D.N.H. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## STANDARD OF REVIEW

Federal courts presume that causes of action lie outside their limited Article III adjudicative authority, so plaintiffs have the burden to establish subject-matter jurisdiction by a preponderance of the evidence. *See Spencer v. Doran*, 560 F. Supp. 3d 648, 651 (D.N.H. 2021) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A defendant may challenge the court's subject-matter jurisdiction under Rule 12(b)(1) in one of two ways." *Concord Hosp., Inc. v. N.H. Dep't of Health & Human Servs.*, No. 23-cv-486-LM, 2024 U.S. Dist. LEXIS 139576, at *2-3 (D.N.H. Aug. 5, 2024). First, a defendant may make a factual challenge to the accuracy of a plaintiff's jurisdictional allegations. *See id.* at *3. In factual challenges, a plaintiff's jurisdictional "allegations 'are entitled to no presumptive weight,' and 'the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties.'" *Id.* (quoting *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001)). A "court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction." *Valentin*, 254 F.3d at 363.

Second, a defendant may make a jurisdictional facial challenge to the sufficiency of a plaintiff's jurisdictional allegations. *See Concord Hosp., Inc.*, 2024 U.S. Dist. LEXIS 139576, at *3. In jurisdictional facial challenges, a court must accept a complaint's allegations as true under the same standard of review as a Rule 12(b)(6) motion to dismiss. *Id.*

A Rule 12(b)(6) motion to dismiss for failure to state a claim examines whether a complaint contains sufficient factual allegations, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (internal quotations omitted)). Legal conclusions may only provide the framework of a complaint—all legal conclusions contained therein must be supported by plausible factual allegations. *Medeiros v. Town of Rindge*, 671 F. Supp. 3d 96

(D.N.H. 2023) (quoting *Iqbal*, 556 U.S. at 679) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 23 (1st Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted). A court "need not credit a plaintiff's '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

## RELEVANT FACTUAL BACKGROUND

The First Amended Complaint alleges that Plaintiff Parker Tirrell and Plaintiff Iris Turmelle both suffer from gender dysphoria. ECF No. 78, ¶¶ 51, 58, 72, 77. Specifically, the First Amended Complaint alleges that Parker is a 15-year old transgender girl who was diagnosed with gender dysphoria approximately two years ago. *Id.* ¶¶ 51-52, 58. Parker purports to have continuously received puberty-blocking medication for the last year-and-a-half, and female hormone therapy for the last year. *Id.* ¶ 60. Parker is a student at Plymouth Regional High School, where Parker plays on the girls' soccer team. *Id.* ¶¶ 53, 65.

The First Amended Complaint also alleges that Iris is a 14-year old transgender girl who was diagnosed with gender dysphoria approximately seven years ago. *Id.* ¶¶ 72, 77. Iris purports to have continuously received puberty-blocking medication for the last three-and-a-half years, and female hormone therapy for the last one-and-a-half years. *Id.* ¶ 79. Iris is a student at Pembroke Academy and hopes to play on tennis and track and field teams. *Id.* ¶¶ 73, 82.

The First Amended Complaint asserts these allegations to support its conclusion that, because Plaintiffs have "had access to medical care to treat their gender dysphoria at a sufficiently young age, neither has experienced any of the physical changes associated with testosterone-driven puberty." *See* ECF No. 7-1 at 18. Plaintiffs allege that since they have not

5

experienced male puberty, they do not have a physiological or biological advantage over cisgender girls in sports. ECF No. 78 at 3; ECF No. 62 at 10. Plaintiffs offer no additional facts to support their facial challenge to the Act's lawfulness, beyond those alleged regarding Parker and Iris's specific medical conditions and treatment. Pre-Trial Conf. Hr'g Tr. 6:6-7 (Nov. 21, 2024) (describing the First Amended Complaint as having "no new facts alleged").

## ARGUMENT

Commissioner Edelblut should be dismissed from this case because the First Amended Complaint is jurisdictionally defective. The Court lacks subject-matter jurisdiction over the Commissioner because he neither regulates nor enforces RSA 193:41–42. Separate and apart from this jurisdictional flaw, the First Amended Complaint's facial challenge should be dismissed because Plaintiffs have not plausibly alleged that RSA 193:41–42 is unconstitutional or unlawful in all its applications.

### I.     Plaintiffs Lack Standing to Assert Claims Against the Commissioner

Article III of the United States Constitution empowers federal courts to adjudicate only actual cases and controversies. *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 102 (1st Cir. 2014). To satisfy this jurisdictional requirement, a plaintiff "must establish each part of a familiar triad: injury, causation, and redressability." *Equal Means Equal v. Ferriero*, 3 F.4th 24, 27-28 (1st Cir. 2021) (quoting *Katz v. Pershing, LLC*, 672 F.3d 64, 71 (1st Cir. 2012)) (internal quotations and citations omitted). Here, the Commissioner is not a proper defendant because he has neither caused Plaintiffs' alleged injuries nor could he in the future.

#### A.     The Alleged Injuries of Which Plaintiffs Complain Are Not Caused by or Fairly Traceable to the Commissioner, Nor Would a Favorable Decision Redress Plaintiffs' Alleged Injuries

Plaintiffs' alleged injury is that RSA 193:41–42 prohibits their participating in high school girls' athletics. ECF No. 78, ¶¶ 70, 86, 92, 106. The remedy they seek is a permanent

injunction to prohibit State Defendants' enforcement of the Act. *Id.* at 23-24. But to proceed against the Commissioner as one of the "State Defendants," Plaintiffs must establish both a causal nexus linking their injuries to the Commissioner's actions, and a likelihood that an injunction would redress the harm of which they complain. *Equal Means Equal*, 3 F.4th at 27-28 (quoting *Katz*, 672 F.3d at 71) (internal quotations and additional citations omitted). Plaintiffs have established neither requirement for constitutional standing, as to Commissioner Edelblut.

Causation requires more than an attenuated relationship between a defendant and a plaintiff. *See Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020) (citing *Katz*, 672 F.3d at 71). Indeed, independent third party actions sever the causal link between injury and a defendant's acts. *See id.* (citing *Allen v. Wright*, 468 U.S. 737, 757-59 (1984)). And even where a statute generally authorizes "state agency heads to institute policies and prosecute civil actions[,]" such authorization "is not sufficient to confer standing to sue them." *R.I. Ass'n of Coastal Taxpayers v. Neronha*, No. 23-278, 2023 U.S. Dist. LEXIS 166197, *5 (D.R.I. Sep. 19, 2023) (citing *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1300 (11th Cir. 2019)) (internal citations omitted).

The law is well-settled. For example, in *Shell Oil Co. v. Noel*, the First Circuit dismissed the Rhode Island Governor and Attorney General from a lawsuit challenging the constitutionality of a state law. *Shell Oil Co. v. Noel*, 608 F.2d 208, 210 (1st Cir. 1979). The court explained that a state officer is a proper defendant only where he or she has a "sufficiently intimate" connection with the enforcement of the statute in question. *Id.* at 211 (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). In other words, a state officer need not be named in the statute to confer jurisdiction, but he or she must have substantive enforcement obligations pursuant to it. *See id.*

7

The Commissioner is the chief administrative officer of the Department of Education. RSA 21-G:9. He manages departmental operations and administration by issuing final decisions in matters presented by hearing officers, representing the Department on various boards and committees, managing federal grants, and proposing and managing budgets. *See generally* RSA 21-N:4; RSA 135-F:5. Plaintiffs are correct to characterize the Commissioner's role as one of "general supervision." ECF No. 78, ¶ 8 (citing RSA 21-N:2, II(a)). As an administrator, however, the Commissioner cannot promulgate rules or regulations without express statutory authority, and RSA 193:41 does not confer any rulemaking authority upon him. *Compare* RSA 21-G:9, I (restricting the commissioner's authority to adopting rules regarding departmental administration and efficiency) *with* RSA 193:41, V.

Moreover, RSA 193:42 does not confer upon the Commissioner any enforcement authority, as the Act confines enforcement to private causes of action. RSA 193:42, I–III. The harm of which Parker complains was the result of the ***school's*** notice that Parker may not participate in girls' soccer practice—it was not the act of the Commissioner. ECF No. 7-1 at 3 ("[O]n August 15, 2024, Parker's school informed her mother that Parker will not be allowed to participate in practice, which begins on August 19, 2024."). Indeed, were it not for this Court's preliminary injunction, Parker would have already been excluded from playing girls' soccer by Plymouth Regional High School—a third party action wholly independent of the Commissioner. Plaintiffs cannot sweep up the Commissioner into the broad generalization that State Defendants "are the individuals and entities charged with adopting policies and enforcing the requirements of HB 1205[.]" *See* ECF No. 78 at 3. That generalization is legally and factually incorrect.

So, Plaintiffs have not plausibly alleged a fairly traceable causal nexus between the Commissioner and Plaintiffs' alleged injury, nor can they plausibly argue that enjoining the

8

Commissioner from acting pursuant to a statute that grants him no authority to act, could redress Plaintiffs' alleged present or future injuries. Accordingly, the Court should dismiss the Commissioner from this case.

> **B.    Even if the Commissioner's Lack of Enforcement Authority Is Not a Dispositive Bar to Plaintiffs' Claims Against Him, Though It Certainly Is, the Eleventh Amendment Bars the Commissioner as a Party in This Case**

As explained in Section I.A. above, without a substantive statutory duty to enforce RSA 193:41–42, the Court may not exercise subject-matter jurisdiction over the Commissioner. *See Ex parte Young*, 209 U.S. at 154 ("[A] suit against individuals for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of that Amendment."). Nevertheless, it is important to emphasize that enforcement authority is not the only reason that the Court may not exercise its Article III jurisdiction over the Commissioner in this lawsuit. The Eleventh Amendment to the United States Constitution also prohibits it.

Under the Eleventh Amendment, states are sovereign entities that are immune from lawsuits in federal courts. *See Alden v. Maine*, 527 U.S. 706, 712-13 (1999). Intrinsic to the Eleventh Amendment's grant of state sovereign immunity is the principle that traceability—a function of causation—is fundamental to Article III subject-matter jurisdiction. *See Dantzler, Inc.*, 958 F.3d at 47; *see also Reed v. Goertz*, 598 U.S. 230, 255 n.7 (Thomas, J., dissenting) (suggesting that causation's "connection" requirement articulated in *Ex parte Young* may be a function of Article III jurisdiction, rather than an exception to Eleventh Amendment sovereign immunity).

Plaintiffs' claims against state actors in their official capacities are, in essence, claims against the governmental office charged with applying the statute. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("It is ***not*** a suit against the official personally, for the real party in interest

9

is the entity.") (emphasis in original)). "It is well established in [Supreme Court] precedent that a suit against an arm or instrumentality of the State is treated as one against the State itself." *Lewis v. Clarke*, 581 U.S. 155, 166 (2017). Plaintiffs cannot proceed against the Commissioner because, as explained in Section I.A. above, they have not plausibly alleged the Commissioner's "sufficiently intimate" connection with RSA 193:41–42. Consequently, they are not seeking prospective relief with respect to the Commissioner that would operate to "conform [his] future conduct to the requirements of federal law," *Rosie D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002) (citation and quotation mark omitted), because the statutes they challenge grant the Commissioner no enforcement authority. Such a showing is a prerequisite to both Article III jurisdiction and to overcoming Eleventh Amendment sovereign immunity. Accordingly, the Court should dismiss the Commissioner from this case.

**II.     Plaintiffs Have Failed to State a Claim Upon Which the Court May Grant Relief for RSA 193:41–42's Alleged Facial Violation of the Equal Protection Clause and Title IX**

The First Amended Complaint offers no factual allegations to support its claim that there is no set of circumstances in which the Act could be valid under the Equal Protection Clause or Title IX. Moreover, its Plaintiff-specific allegations are not sufficient for the Court to infer the factual basis for the First Amended Complaint's facial challenges. Thus, Plaintiffs' facial claims must fail due to the inadequacy of their pleading.

**A.     Plaintiffs Have Not Plausibly Alleged That RSA 193:41–42 Violates the Equal Protection Clause of the Fourteenth Amendment in All of the Act's Applications**

The Equal Protection Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It "requires that 'all persons similarly situated be … treated alike.'" *Rocket Learning, Inc. v. Rivera-Sánchez*, 715 F.3d 1, 10 (1st Cir. 2013) (quoting *City of Cleburn v. Cleburne Living Ctr.*, 473 U.S. 432,

439 (1985)). An equal protection claim requires a plaintiff to show that he or she was (1) treated differently than others similarly situated, and (2) that the alleged difference was based on an impermissible consideration such as race, or intentional discrimination on other grounds. *See Alston*, 988 F.3d at 574-75.

To assert a facial constitutional challenge to a state law, a plaintiff must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (internal quotations and citation omitted). Even were the Court to apply a more relaxed standard, "a facial challenge must fail where the statute has a plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (internal quotations and citation omitted). Regardless, "[h]owsoever worded, this standard imposes a very heavy burden on a party who mounts a facial challenge to a state statute." *McCullen v. Coakley*, 571 F.3d 167, 174 (1st Cir. 2009). The Supreme Court disfavors facial challenges because they often rest on speculation, run contrary to the principle that courts should not anticipate questions of constitutional law or interpret the Constitution broader than is required by the facts of a specific case, and they can short circuit the democratic process. *See Wash. State Grange*, 552 U.S. at 450-51. The Court should dismiss Plaintiffs' facial claims because they threaten these important judicial principles and because Plaintiffs have not plausibly alleged that no set of circumstances exists under which the Act could be valid, or that the Act lacks ***any*** plainly legitimate sweep.

      **1.**     **Plaintiffs Fail to Allege Facts to Support Their Facial Claim That RSA 193:41–42 Is Unconstitutional**

Plaintiffs' facial challenge to RSA 193:41–42 is a short and plain statement of the theory upon which Plaintiffs assert that they are entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). As such, it is a claim that must be supported with sufficiently plausible factual allegations. *See Iqbal*, 556

11

U.S. at 678.  Plaintiffs have not done so.

The First Amended Complaint alleges that Plaintiffs are uniquely situated because each has been diagnosed with gender dysphoria, each has been continuously taking puberty-blocking medication for more than one year,[15] and each has been continuously receiving female hormone treatment.[16]  *See* ECF No. 78, ¶¶ 51-52, 58, 60, 72, 77, 79.  To explain the significance of these medical dynamics, Plaintiffs offer the expert declaration of Daniel Shumer, M.D.[17]  ECF No. 7-6.  Dr. Shumer opines that because Parker and Iris are "on puberty-blocking medication and ha[ve] started hormone therapy, [they] will not go through male puberty and ha[ve] no biological or physiological differences from other girls that would impact [their] performance in school sports[.]"  ECF No. 78, ¶¶ 36, 38.  Accordingly, Plaintiffs emphasize that the "really important facts and they're all on the record," are that Parker and Iris's medically-aided transitions have ensured their physical parity with biological girls in athletic performance.  Prelim. Inj. Hr'g Tr. 10:22-11:3 (Aug. 27, 2024).  Plaintiffs conclude that RSA 193:41–42's categorical ban on transgender girls is unconstitutional as applied to them, because the Act does not take Plaintiffs' specific transitions into consideration.  *See* Prelim. Inj. Hr'g Tr. 13:24-14:1 (Aug. 27, 2024).

The First Amended Complaint adds a facial challenge to Plaintiffs' earlier as-applied challenge, but it does not allege ***any*** additional facts to address the broader facial claims, standing pat on Parker and Iris's unique circumstances.  *See* Pre-Trial Conf. Hr'g Tr. 6:6-7; *compare* Compl. *with* First Amended Compl. (amending the **Facts** section by: (a) updating internet "last visited" citations in ¶¶ 51-53 (now 34-36); (b) adding an NHIAA internet citation

---

[15] Parker has been taking puberty-blocking medication since age 13½, and Iris has been taking medication since age 10½.  ECF No. 78, ¶¶ 60, 79.

[16] Parker has been receiving female hormone treatment since age 14½, and Iris has been receiving treatment since age 13½.  ECF No. 78, ¶¶ 60, 79.

[17] State Defendants have not had the opportunity to test Dr. Shumer's expert qualifications, his methodologies, his data, or his opinions' reliability or admissibility in this case.  State Defendants expressly reserve the right to challenge Dr. Shumer on these or any other good faith bases at the appropriate time.

to ¶ 55 (now 38) n.2; and (c) by updating verb tenses in ¶¶ 60 (now 43) and 83 (now 66)) (amending the **Counts** section by: (a) adding the allegation that all defendants are governmental actors acting under the color of state law in ¶¶ 107 and 120 (now 91 and 105); and (b) by adding "both facially and as applied" in ¶¶ 108 and 121 (now 92 and 106)) (amending the **Prayer for Relief** section by: (1) reorganizing its structure; and (2) adding only that Plaintiffs are pursuing facial challenges in addition to their original as-applied challenges to the constitutionality and lawfulness of the Act)). The First Amended Complaint does not offer any reason whatsoever to support the contention that the Act cannot be constitutionally or lawfully applied to all transgender girls, even those who do not share Parker and Iris's unique transition circumstances. Accordingly, the facial claims should be dismissed.

### 2. Plaintiff-Specific Allegations Are Not Sufficient for the Court to Infer a Claim Upon Which It May Grant Relief

To maintain a claim that a state law is facially unconstitutional, a plaintiff cannot exclusively rely upon plaintiff-specific allegations, at least when those allegations do not independently support an inference that a statute lacks any plainly legitimate sweep. *See Local 8027 v. Edelblut*, 651 F. Supp. 3d 444, 454 (D.N.H. 2023) (describing allegations supporting a facial challenge as independent of a statute's application to a plaintiff's particular circumstances and allegations supporting an as-applied challenge as dependent upon plaintiff-specific facts) (citing *United States v. Playboy*, 529 U.S. 803, 834 n.3 (2000) (Scalia, J., dissenting)). For the Court to draw a reasonable inference that RSA 193:41–42 cannot be constitutionally administered as to *any* transgender girl *or* cisgender boy in *any* circumstance, Plaintiffs must plausibly allege sufficient facts to support the inference. *See Garayalde-Rijos*, 747 F.3d at 23. They have not done so.

13

As a threshold matter, Plaintiffs do not dispute that the Act has a plainly legitimate sweep insofar as it can be validly applied to cisgender males. And Plaintiffs unequivocally accept the notion that there are valid reasons to prohibit cisgender boys from playing in girls' sports—they assert that playing on boys' teams is not a viable option for either of them. *See* ECF No. 78, ¶¶ 67-70, 83-86. Plaintiffs' claim that they would suffer physically and emotionally if they were forced to play sports with boys. *See id.* ¶¶ 67-70, 83-86. This is an acknowledgement that there is **at least** one valid application of the Act—to prevent biological boys from playing with Plaintiffs on Plaintiffs' girls' sports teams. For this reason alone, Plaintiffs are not entitled to a facial remedy that invalidates the Act in its entirety. *Rahimi*, 144 S. Ct. at 1898 (internal quotations and citation omitted).

But the facial claims must also be dismissed to the extent they seek declaratory or injunctive relief beyond Plaintiffs' own circumstances. They contend that RSA 193:41–42 is facially invalid insofar as the Act discriminates against all transgender girls. ECF No. 78 at 3. This claim "is 'facial' in that it is not limited to the plaintiffs' particular case, but challenges the application of the law more broadly to all" transgender girls. *Doe v. Reed*, 561 U.S. 186, 194 (2010). To prevail on such a challenge, Plaintiffs must "satisfy [the] standards for a facial challenge to the full extent of that reach." *Id.* (citation omitted).

Plaintiffs do not appear to dispute that the factual underpinnings of their equal protection claim depend on circumstances that do not extend to all transgender girls. For instance, they emphasize that because Parker and Iris "have transitioned with medication[,]" they will not experience "testosterone-driven puberty[,]" so they do not have "any biological or physiological difference[s] from other girls that would impact their performance in sports." Prelim. Inj. Hr'g Tr. 10:21-11:3. *Ergo*, transgender girls who have **not** transitioned with medication **will**

14

experience testosterone-driven puberty which *will* create biological and physiological differences with cisgender girls that *will* impact athletic performance. These Plaintiff-specific factual allegations do not lend themselves to an inference that all transgender girls are similarly situated as to the validity of the Act's application to them.

Thus, Plaintiffs have not alleged facts that, when assumed true for the purposes of a motion to dismiss, support an inference that RSA 193:41–42 cannot be lawfully applied to transgender girls, generally. Plaintiffs' as-applied claims are not premised on the fact that Parker and Iris are transgender girls. Rather, Plaintiffs specifically allege that they (1) have been diagnosed with gender dysphoria and (2) have been under the care of medical professionals for more than a year. ECF No. 78, ¶¶ 36, 38. These two allegations were critical to their requests for injunctive relief. Prelim. Inj. Hr'g Tr. 10:21-11:3 (describing these allegations as "really important facts and they're all on the record"). Plaintiffs do not allege, however, that all transgender girls have gender dysphoria or that they all have been receiving puberty-blocking medication or estrogen therapy for at least one year. Nor could they credibly allege so. *See, e.g.*, Endocrine Treatment of Gender-Dysphoric/Gender-Incongruent Persons: An Endocrine Society Clinical Practice Guideline, at 3875 (Sept. 2017).[18] Likewise, Plaintiffs do not and cannot allege that all people with gender dysphoria can be or should be medically transitioned. *See* Shumer Dep. 36:3-21 (M.D. Ala. Apr. 2, 2024).[19] The First Amended Complaint is devoid of any other well-pleaded allegations of fact that would support an inference that the Act cannot constitutionally or lawfully be applied to transgender girls, generally. Thus, even when viewed through this narrower prism, Plaintiffs have failed to state a viable facial claim.

---

[18] Available at https://www.endocrine.org/clinical-practice-guidelines/gender-dysphoria-gender-incongruence.

[19] Available at https://www.alabamaag.gov/wp-content/uploads/2024/10/SJ.DX39-Shumer-Depo-Tr.-REDACTED-557-39.pdf.

B.  **Plaintiffs Have Not Plausibly Alleged That RSA 193:41–42 Violates Title IX of the Education Amendments of 1972 in All of the Act's Applications**

While Plaintiffs purport to bring a facial claim under Title IX, what they are really asserting is a conflict preemption claim. *See* ECF No. 78 at 23. The First Amended Complaint's federal conflict preemption claim requires Plaintiffs to allege that Congress intended to prohibit state law from making compliance with both state and federal law impossible, or that the Act interposes an obstacle to Congress' discernable statutory objectives. *See Grant's Dairy-Maine, LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res.*, 232 F.3d 8, 15 (1st Cir. 2000). Plaintiffs must also allege that "no set of circumstances exists under which the Act would be valid" in light of federal preemption. *See Pharm. Research & Mfrs. of Am. v. Concannon*, 249 F.3d 66, 77 (1st Cir. 2001).

As articulated in Section II.A. above, Plaintiffs have not plausibly alleged that the Act lacks any plainly legitimate sweep, and their own allegations cut against a reasonable inference that it cannot be lawfully applied in any circumstance. Thus, Plaintiffs have not made the requisite allegations to support their preemption claim, and in any event, any facial claim under Title IX fails for the same reasons that Plaintiffs' facial equal protection claim fails.

C.  **State Defendants Reserve Their Right to Defend RSA 193:41–42 as Applied to Plaintiffs, at the Merits Stage of This Lawsuit**

State Defendants will defend Plaintiffs' as-applied challenge to RSA 193:41–42 in the merits stage of this case. On September 10, 2024, the Court issued a preliminary injunction enjoining application of RSA 193:41–42 as it may apply to Parker and Iris. ECF No. 70 at 47. State Defendants expressly reserve their right to defend the Act as it may apply to Parker and Iris at the appropriate time in the course of this litigation. *Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1, 15 (1st Cir. 2009) (internal citation omitted). That State Defendants are not moving to dismiss Plaintiffs' as-applied claims here, is not a waiver of their as-applied defenses.

16

## CONCLUSION

For all these reasons, this Court should dismiss Commissioner Edelblut from this case, and dismiss the First Amended Complaint's facial constitutional and statutory challenges to RSA 193:41–42.

Respectfully submitted,

DEFENDANTS FRANK EDELBLUT, ANDREW CLINE, KATE CASSADY, ANN LANE, PHILIP NAZZARO, RAJESH NAIR, JAMES FRICCHIONE, and JAMES LABOE

By their attorneys,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date: December 6, 2024

/s/ Michael P. DeGrandis
Michael P. DeGrandis, N.H. Bar No. 277332
Assistant Attorney General
Brandon F. Chase, N.H. Bar No. 270844
Assistant Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-3650
michael.p.degrandis@doj.nh.gov
brandon.f.chase@doj.nh.gov

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all parties of record through the Court's e-filing system.

/s/ Michael P. DeGrandis
Michael P. DeGrandis