UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Parker Tirrell and Iris Turmelle, *Plaintiffs*, v. Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education, *et al.*, *Defendants*. | Civil Action No. 1:24-cv-00251-LM-TSM |

**PLAINTIFFS PARKER TIRRELL AND IRIS TURMELLE'S OPPOSITION TO DEFENDANTS FRANK EDELBLUT, ANDREW CLINE, KATE CASSADY, ANN LANE, RAJESH NAIR, JAMES FRICCHIONE, AND JAMES LABOE'S PARTIAL MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**I.    INTRODUCTION AND BACKGROUND**

Plaintiffs Parker Tirrell and Iris Turmelle brought this action seeking relief from a New Hampshire law that excludes transgender girls from participation in school sports solely because they are transgender. RSA 193:41–42 (the "Sports Ban"). The State Defendants have moved to dismiss two aspects of Plaintiffs' First Amended Complaint, ECF No. 78, by asserting: (1) that Defendant Frank Edelblut, the Commissioner of the New Hampshire Department of Education, is not a proper defendant in this case; and (2) that Plaintiffs have not sufficiently pleaded that the sports ban is facially invalid.[1] Neither contention has merit.

---

[1] Plaintiffs filed their First Amended Complaint on November 8, 2024, as of right under Rule 15(c). First Am. Compl., ECF No. 78. The First Amended Complaint raises the same claims as the original Complaint, ECF No. 4, namely that the New Hampshire Sports Ban, HB 1205, violates the Equal Protection Clause of the Fourteenth Amendment and Title IX. The First Amended Complaint requests broader relief than the original Complaint in the form of a declaration that the Sports Ban is *facially* invalid, in addition to invalid as applied to Plaintiffs. The First Amended Complaint adds no additional facts beyond what was alleged in the original Complaint. This Court

1

First, to establish standing with respect to Commissioner Edelblut, Plaintiffs need only allege that he has "some connection with the enforcement of the act" and that the connection is "sufficiently intimate." *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908)). Commissioner Edelblut's statutory authority and his responsibilities as the chief administrator for the Department of Education easily clear this minimal threshold. *See infra* Argument, Part I.A (discussing Commissioner Edelblut's authority and relationship to Department of Education). The First Amended Complaint alleges that Commissioner Edelblut has "some connection" with prospective enforcement of the Sports Ban, and the protection of Eleventh Amendment immunity is not available to him.

Second, Plaintiffs easily state a claim that the Sports Ban is facially invalid based on the statute's facial classification. As this Court acknowledged, the Sports Ban facially discriminates on the basis of transgender status in violation of the Fourteenth Amendment and Title IX. Order Granting Mot. for Prelim. Inj., ECF No. 70. The Sports Ban prohibits transgender girls from playing on girls' sports teams solely because they are transgender. No exceptions, no other factors, and no individualized inquiry are contemplated in the text of the law. The allegations that Plaintiffs are transgender, and that they have been denied the opportunity to participate in school sports because they are transgender, are sufficient to state a claim for relief. The State Defendants misconstrue Plaintiffs' burden to show that the Sports Ban is facially invalid, claiming that the First Amended Complaint must conclusively allege that there is never a case in which a

---

ordered preliminary relief in this matter on September 10, 2024, enjoining all defendants from enforcing the Sports Ban against Plaintiffs. Order Granting Mot. for Prelim. Inj., ECF No. 70. All defendants answered the original Complaint without raising any challenge under Rule 12(b). ECF Nos. 72, 73, 74. The School District Defendants have answered the First Amended Complaint. *See* Pemi-Baker Def.'s Answer to First Am. Compl., ECF No. 81; Pembroke Def.'s Answer to First Am. Compl., ECF No. 85.

transgender student can lawfully be excluded from school sports. *See* Defs.' Br. 15, ECF No. 88-1. ("The First Amended Complaint is devoid of any other well-pleaded allegations of fact that would support an inference that the Act cannot constitutionally or lawfully be applied to transgender girls, generally."). At the pleading stage, Plaintiffs' burden is simply to allege that the Sports Ban discriminates based on transgender status and cannot survive heightened scrutiny. *See infra* Argument, Part II.

## II.  STANDARD OF REVIEW

Standing is a "prerequisite to a federal court's subject matter jurisdiction." *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 46 (1st Cir. 2020) (quoting *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016)). The defendants challenge the sufficiency of Plaintiffs' allegations as to standing with respect to Commissioner Edelblut, a challenge which is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. *Freeman v. City of Keene*, 561 F. Supp. 3d 22, 25 (D.N.H. 2021) (citing *Sevigny v. United States*, Civ. No. 13-cv-401-PB, 2014 U.S. Dist. LEXIS 98600, at *7 (D.N.H. July 21, 2014)).

A defendant moving to dismiss a complaint pursuant to Rule 12(b)(6) has the burden of demonstrating that the complaint lacks "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the [plaintiff]'s favor." *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011) (citing *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) (en banc)). Once a plaintiff has put forth "well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679. To succeed on a motion to dismiss, the defendant must show that the plaintiff's assertions fall short of establishing at least one "element necessary to sustain recovery under some actionable legal theory." *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005) (internal citation omitted).

**III. ARGUMENT**

    **A. Commissioner Edelblut is a proper defendant because he has some connection with enforcement of the Sports Ban.**

To establish standing, Plaintiffs must show "(1) an injury in fact which is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) that the injury is 'fairly traceable to the challenged action,' and (3) that it is 'likely . . . that the injury will be redressed by a favorable decision.'" *Dantzler*, 958 F.3d at 47 (quoting *Massachusetts v. U.S. Dep't of Health & Human Servs.*, 923 F.3d 209, 221–22 (1st Cir. 2019)). In their Motion to Dismiss, the State Defendants do not dispute that Plaintiffs are injured by the Sports Ban. *See* Defs.' Br., ECF No. 88-1. They argue only that Commissioner Edelblut has not caused and cannot cause their injuries, and that the Eleventh Amendment bars Plaintiffs' suit against him.[2] This Court should reject both arguments.

    **1. Plaintiffs have standing to sue Commissioner Edelblut, who not only has enforcement authority over the Sports Ban, but also has already exercised that authority.**

Commissioner Edelblut's role in the Department of Education, based on the relevant statutes and regulations, as well as his actions in practice, show that he is an appropriate defendant in this case because he plays a role in enforcing the Sports Ban. The *Ex parte Young* doctrine

---

[2] The State Defendants do not raise the same arguments with respect to the members of the State Board of Education, who are also named as defendants in this lawsuit.

4

allows suits "for declaratory or injunctive relief against state officers in their official capacities." *Reed v. Goertz*, 598 U.S. 230, 234 (2023) (citing *Ex parte Young*, 209 U.S. 123, 159–61 (1908)). Where a plaintiff asks the court to declare a state statute unconstitutional or seeks to enjoin the enforcement of the unconstitutional statute, a state official who "has some connection with the enforcement of the act" is an appropriate defendant. *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) (citing *Ex parte Young*, 209 U.S. at 157). As the State Defendants acknowledge in their brief, it is not necessary that the Sports Ban name the state official as its enforcer. Defs.' Br. 7, ECF No. 88-1. So long as the officer has some connection with enforcing the statute, it is immaterial whether that enforcement authority is expressly created by statute or arises more generally out of the officer's duties. *Ex parte Young*, 209 U.S. at 157. The State Defendants ignore the allegations in the First Amended Complaint supporting Commissioner Edelblut's connection with enforcement of the Sports Ban.

Commissioner Edelblut's connection to the Sports Ban is "sufficiently intimate" to establish Plaintiffs' standing to name him as a defendant[3] for four reasons: (1) the Sports Ban expressly directs the New Hampshire Board of Education to adopt an enforcement policy, requiring implementation by the Department of Education to effectuate its directives; (2) Commissioner Edelblut is statutorily tasked with administering Board policies; (3) historically, the Commissioner of the Department of Education has exercised broad authority over state education law and policy; and (4) the plain text of the Sports Ban prohibits Commissioner Edelblut from

---

[3] State Defendants mistakenly rely on *Shell Oil* to argue that Plaintiffs must show "substantive enforcement obligations" to show a "sufficiently intimate" connection, but their reliance is misplaced because that case dealt with a statute that provided "a purely private cause of action in its regulation of the economic relationships between (private) parties" in which the state played no enforcement role at all. 608 F.2d at 211. There, injunctive and declaratory relief were unavailable because "the threat of state action [was] imaginary, speculative, or chimerical." *Id*. at 213.

meeting his obligation to address claims of discrimination against transgender students based on exclusion from school sports.

First, the Sports Ban requires the New Hampshire State Board of Education to "adopt and enforce policies to ensure compliance" with the Sports Ban. RSA 193:41, V. The Board of Education carries out its duties in coordination with the Department of Education through its Commissioner, who manages the Department's day-to-day operations. For example, RSA 21-N:11, I, states that the Board "make[s] recommendations to the commissioner of education with regard to … programs and activities." RSA 21-N:11, II adds that the Board "[a]dvise[s] the commissioner of education with regard to department goals." In other words, the Board of Education and Commissioner Edelblut act in concert with one another to implement Department objectives. Thus, if the Board is enforcing the Sports Ban through policies and compliance under RSA 193:41, V, so too must Commissioner Edelblut, who works closely with the board to enforce its policies.

Second, and more specifically, Commissioner Edelblut has enforcement authority over the Sports Ban because he is tasked with administering and enforcing the standards and policies adopted by the State Board, including standards for approving public elementary and secondary schools. RSA 21-N:6, V; *see also* N.H. Code Admin. R. Ed 306.28(a). This approval process includes approval of public schools' co-curricular athletic programs. N.H. Code Admin. R. Ed 306.26(e); N.H. Code Admin. R. Ed 306.27(b)(6). The Commissioner and his Department have the authority, through the process outlined in N.H. Code Admin. R. Ed 306.28(g)–(r), to take action up to and including designating as "unapproved" any primary or secondary school that does not comply with the requirements of administrative rules governing the school's academic programs. The Sports Ban mandates that the State Board adopt an enforcement policy, RSA 193:41, V, and,

when that policy has been adopted, it will fall to Commissioner Edelblut to execute, RSA 21-N:6, V.

Third, the Department has historically and continuously interpreted the Commissioner's general supervisory authority over state education law and policy very broadly. The Sports Ban amended Title XV of New Hampshire's statutes—a section titled "Education." Consistent with RSA 21-N:1 & :2, the Department has historically undertaken enforcement authority over education laws, including through the issuance of technical advisories concerning the scope of such laws—even when such laws lack any specific enforcement mechanism.[4] *See generally Papasan v. Allain*, 478 U.S. 265, 282 n.14 (1986) (holding that secretary of state responsible for "general supervision" of the administration of public school land funds by local school officials was proper defendant in suit challenging disparity in school land funds); *Futernick v. Sumpter Twp.*, 78 F.3d 1051, 1055 n.5 (6th Cir. 1996) (rejecting as "ridiculous" defendants' argument that "only the officer with immediate control over the challenged act or omission is amenable to § 1983").

Fourth, the Sports Ban's text affirms Commissioner Edelblut's enforcement role by stating that any "government entity"—which includes the DOE and its Commissioner—"shall not entertain a complaint, open an investigation, or take any other adverse action against a school for maintaining separate interscholastic sport activities or club athletic teams for students of the female sex." RSA 193:41, VII. Accordingly, Commissioner Edelblut is a proper party because he is subject to this provision that purports to ban him from complying with any obligations he has in

---

[4] *See, e.g.*, N.H. Dep't of Educ., Technical Advisory on Objectionable Material Policy (Sept. 6, 2023)(https://www.education.nh.gov/sites/g/files/ehbemt326/files/inline-documents/sonh/technical-advisory-rsa-186-objectionable-material.pdf) (advising school districts on compliance requirements for RSA 186:11, IX-c, which includes no express enforcement role for the Commissioner).

evaluating whether—consistent with this Court's preliminary injunction order—a school district has violated Title IX if it engages in discrimination against transgender, female athletes. *See* RSA 21-N:5, I(i) (stating that one of the duties of the deputy commissioner, who is supervised by the commissioner, is "[a]ssuring compliance with all federal and state equal opportunity and access requirements . . .").

In fact, Commissioner Edelblut has already held himself out as "willing and able to take affirmative action to enforce the statute" and "play[ing] a role in enforcing" it. *See Bowling v. Pence*, 39 F. Supp. 3d 1025, 1029 (S.D. Ind. 2014). On August 20, 2024, immediately following this court's issuance of a temporary restraining order, Commissioner Edelblut sent a guidance letter to New Hampshire school leaders informing them of the TRO but instructing them that the Sports Ban "is still applicable to all other students in New Hampshire school districts." Ex. A., Letter from Comm'r Frank Edelblut to N.H. School Leaders (Aug. 20, 2024).[5] By sending this letter to New Hampshire school districts, Commissioner Edelblut effectively instructed schools to violate the constitutional and statutory rights of transgender girls seeking to play on girls' sports teams, and this fact alone should put an end to the inquiry.[6] *See Bowling*, 39 F. Supp. 3d at 1029

---

[5] Counsel for Pembroke School District explained to this Court: "[A]nd then we have a Department of Education who oversees school districts, school employees, and all that sort of thing, and, you know, essentially an instruction in that letter to continue applying the law despite the TRO that this Court issued." Prelim. Inj. Hr'g Tr. 67:6–12, ECF No. 68. This letter was not cited in the First Amended Complaint but it appears in the record in this case. *See* Ex. A to Pembroke Def.'s Resp. to Pls.' Mot. for Prelim. Inj., ECF No. 56-1. On a Rule 12(b)(6) motion to dismiss, this Court may consider documents outside the complaint under circumstances such as these where the veracity of the document has not been disputed. *See Town of Barnstable v. O'Connor*, 786 F.3d 130, 141 n.12 (1st Cir. 2015).

[6] The Department of Education also published on its website a list of bills from the 2023–24 legislative session. Department of Education Legislative Update 2023–2024 Session, available at https://www.education.nh.gov/sites/g/files/ehbemt326/files/inline-documents/sonh/legislativesummary_2.pdf. In addition to listing bills, this guidance document identifies the types of schools to which they apply, notes their effective date, and explains

("[T]he governor has shown that he is willing and able to take affirmative action to enforce the statute as shown in his July 7 Memorandum [to all executive branch agencies] . . . .").

### 2. The Eleventh Amendment does not immunize Commissioner Edelblut.

State Defendants extend their argument that Plaintiffs' lack standing to sue Commissioner Edelblut by arguing that the Eleventh Amendment immunizes him from Plaintiffs' claims. The *Ex parte Young* doctrine provides an exception to Eleventh Amendment sovereign immunity, allowing federal courts to grant prospective injunctive relief against state officials to prevent a violation of federal law.[7] *Rosie D. ex rel. John D. v. Swift*, 310 F.3d 230, 234 (1st Cir. 2002). A request that a state official be restrained from taking an enforcement action that contravenes federal law "clearly satisfies [this] straightforward inquiry." *Town of Barnstable v. O'Connor*, 786 F.3d 130, 139 (1st Cir. 2015) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 646 (2002) (internal quotation marks omitted)).

In the First Amended Complaint, Plaintiffs ask this court to enter prospective injunctive relief, asking the Court to order Commissioner Edelblut to refrain from taking enforcement action

---

schools' compliance obligations. The Department's guidance includes such a summary of the Sports Ban. *Id*. at 29.

[7] As to Plaintiffs' Title IX claim, Commissioner Edelblut has waived any Eleventh Amendment immunity where the DOE has applied for and accepted federal funds. A state may waive its immunity, and Congress may condition the receipt of federal funds on a state's relinquishment of certain immunities. *See Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 128 (1st Cir. 2003). Here, 42 U.S.C. § 2000d–7(a)(1)—enacted in 1986 as the Civil Rights Remedies Equalization Act— validly conditioned Title IX funding on the DOE's waiver of Eleventh Amendment immunity. *Id.* at 127–28; *see also Gruver v. La. Bd. of Supervisors for the La. State Univ. Agric. & Mech. College*, 959 F.3d 178, 181 (5th Cir. 2020) ("We are not alone. Every circuit to consider the question—and all but one regional circuit has—agrees that section 2000d-7 validly conditions federal funds on a recipient's waiver of its Eleventh Amendment immunity."). Thus, in exchange for receiving federal funds, the Commissioner's DOE subjected itself to Title IX suits like this with respect to its enforcement of the Sports Ban. *See* N.H. Dep't of Educ. Grants and Funding (available at https://www.education.nh.gov/educators/grants-and-funding) ("The New Hampshire Department of Education is the designated pass-through entity for federal education funds flowing to schools in the Granite State.") (last accessed January 6, 2025).

that violates federal law. First Am. Compl. 23-24, ECF No. 78. Moreover, as outlined above, Commissioner Edelblut has statutory authority to enforce the Sports Ban and has already taken such enforcement action by instructing the public schools of New Hampshire under his purview to implement a statute that violates the constitutional and statutory rights of transgender students.

Because Commissioner Edelblut has a role in prospective enforcement of the Sports Ban and the *Ex parte Young* exception to sovereign immunity applies, Plaintiffs have standing to sue Commissioner Edelblut.

> **B.  Plaintiffs' facial challenge is valid because the Sports Ban classifies and excludes transgender girls from sports based solely on their transgender status.**[8]
>
> > **1.  The Sports Ban violates the Equal Protection clause of the Fourteenth Amendment in all its applications.**

Plaintiffs have alleged that the Sports Ban facially and purposefully discriminates against them based on transgender status. As this Court explained in its order granting Plaintiffs' motion for preliminary injunction, "[t]his issue 'is not even a close call.' . . . HB 1205, on its face, discriminates against transgender girls." Order Granting Mot. for Prelim. Inj. 16, ECF No. 70 (quoting *A.M. v. Indianapolis Publ. Sch.*, 617 F. Supp. 3d 950, 965 (S.D. Ind. 2022)). In addition,

---

[8] Plaintiffs dispute that a motion to dismiss for failure to state a claim under Rule 12(b)(6) is an appropriate vehicle to challenge whether the relief requested is proper. *See United States v. Sunsetter Prods. LP*, 2024 U.S. Dist. LEXIS 45084, at *15 ("'[T]he sufficiency of a pleading [for purposes of a 12(b)(6) motion] is tested by the Rule 8(a)(2) statement of the claim for relief,' not the demand for relief sought under Rule 8(a)(3)." [alterations in original]) (quoting *De La Madrid-Perez v. Rosado-Rodriguez*, 22-cv-1438, 2023 U.S. Dist. LEXIS 212411, at *4 (D.P.R. Nov. 28, 2023); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1255 (4th ed. Oct. 2022 update) ("the demand for judgment is not considered part of the claim for that purpose, as numerous cases have held")). Here, the facial aspect of Plaintiffs' claims goes to the scope of relief and not the sufficiency of the allegations and are not properly before the Court on a Rule 12(b) motion. Because the basis for the claim for facial relief requested in the First Amended Complaint is sufficiently pleaded in the First Amended Complaint, Plaintiffs respond to the State Defendants arguments.

it is equally plain that the discrimination is purposeful. *Id*. at 19 ("[T]he legislative history of HB 1205 confirms what is apparent on its face: the Act intentionally targets transgender girls and subjects them to different treatment solely because they are transgender."). The allegations in the First Amended Complaint support the claim that the Sports Ban facially discriminates against transgender girls, a sex-based classification,[9] in violation of the Equal Protection Clause.

The State Defendants incorrectly argue that Plaintiffs must allege additional facts to show that the Sports Ban is constitutionally valid under "no set of circumstances" and lacks a "plainly legitimate sweep." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). They ask this Court to shift their burden (to show that the Sports Ban is substantially related to an important government interest) to Plaintiffs (to show that the government can never justify excluding any transgender girl—or non-transgender boy—from a girls' sports team). Their argument conflicts with Supreme Court precedent, which has never allowed a facially discriminatory statute to stand just because some other hypothetical government action affecting some members of the impacted class *could* withstand constitutional scrutiny. *See United States v. Virginia*, 518 U.S. 515, 542 (1996) (whether "most women would not choose" a method of adversative military training is not relevant to whether the government can "constitutionally deny to women who have the will and capacity, the training and attendant opportunities" afforded by military school). Further, the State Defendants have pointed to no case law that suggests a special

---

[9] The State Defendants do not concede that a classification based on transgender status is necessarily a sex-based classification, or a sex-stereotyping classification, subject to heightened scrutiny. That issue is not before this Court on this motion, and the issue was previously addressed in the Order on Plaintiffs' motion for preliminary injunction. Order Granting Mot. for Prelim. Inj. 30, ECF No. 70 ("HB 1205's discrimination against transgender girls constitutes discrimination based on sex under *Bostock*'s analysis and because it classifies students based on sex stereotypes.").

pleading standard required to state a claim for facial relief that would put the burden on Plaintiffs at this stage of the proceedings.

The First Amended Complaint alleges that Plaintiffs are transgender, First Am. Compl. ¶¶ 51, 72, ECF No. 78, and that the Sports Ban would exclude them from school sports *because they are transgender*. First Am. Compl. ¶¶ 33-50, ECF No. 78. *See* Order Granting Mot. for Prelim. Inj. 17, ECF No. 70 ("[T]he plain text of the Act targets transgender girls even though it does not use the word 'transgender.'"). The burden is exclusively on the defendants, after the pleadings stage of the proceedings, to demonstrate an exceedingly persuasive justification for the classification that can survive heightened scrutiny.[10] Even if no facts had been alleged specific to Plaintiffs' circumstances (beyond their transgender status and consequent exclusion from school sports), the Sports Ban would be subject to heightened scrutiny because the law discriminates against Plaintiffs based on sex.

The State Defendants cite to "unique" facts alleged in the First Amended Complaint pertaining to Plaintiffs and their medical history, arguing that no facts in the First Amended Complaint support facial relief. This is an inaccurate representation of the allegations, which include: "The fact that a girl is transgender, in itself, does not indicate that she has any sports performance advantage over any other girls. Being transgender is not an accurate proxy for athletic performance or ability." First Am. Compl. ¶ 32, ECF No. 78. *See* Compl. ¶ 49, ECF No. 4. Nothing alleged in the First Amended Complaint suggests that Plaintiffs are "unique" or that other transgender students are not entitled to equal protection of the laws. Furthermore, it is irrelevant that a hypothetical New Hampshire statute that does not categorically exclude students based on

---

[10] It is impossible for the State Defendants to prevail on a motion to dismiss because they have presented no evidence at this stage of the proceedings that the Sports Ban is substantially related to an important state interest.

transgender status could result in the exclusion of some transgender students from school sports without violating Fourteenth Amendment.

As this Court explained in *Saucedo v. Gardner*, the "no set of circumstances" and "plainly legitimate sweep" standards "may obscure the relevant inquiry" because "they could be taken to suggest that a court's task is to 'conjure up' hypothetical situations 'in which application of the statute might be valid.'" 335 F. Supp. 3d 202, 213 (D.N.H. 2018) (quoting *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 917 (10th Cir. 2016)). In practice, "the Supreme Court 'has often considered facial challenges simply by applying the relevant constitutional test to the challenged statute, without trying to dream up whether or not there exists some hypothetical situation in which application of the statute might be valid." *Id*. at 213–14 (quoting *Bruni v. City of Pittsburgh*, 824 F.3d 353, 363 (3d Cir. 2016)). Indeed, the Supreme Court has held that "the distinction between facial and as-applied challenges is not so well defined as that it has some automatic effect or that it must always control the pleadings." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). As such, asserting a facial challenge does not require a heightened pleading standard compared to an as-applied challenge. *See, e.g.*, *Doe v. Miami-Dade Cnty.*, 974 F.3d 1333, 1338 (11th Cir. 2020) (citing *Citizens United* and noting that "a plaintiff asserting a facial challenge does not need to amend her complaint to bring an as-applied challenge").

For example, *Saucedo* involved a challenge to a statutory requirement that local election moderators compare the signatures on absentee ballots to the signatures on the accompanying affidavits, and to reject ballots with dissimilar signatures. 335 F. Supp. 3d at 206. Plaintiffs alleged three facial constitutional violations: procedural due process, the fundamental right to vote, and the right to uniform treatment of votes. *Id*. at 213. After noting disagreement between the parties

about the correct standard to apply to facial challenges,[11] this Court explained that the correct approach to addressing facial constitutional claims is to apply the relevant constitutional test. *Id*. The Court should take the same approach here and simply evaluate the Sports Ban under heightened scrutiny.

The Court must review the Sports Ban *as enacted* to determine if it can survive heightened scrutiny. It is not the role of the judiciary to rewrite the statute to account for specific unconstitutional applications. *See Heckler v. Mathews*, 465 U.S. 728, 741–42 (1984) ("Although this Court will often strain to construe legislation so as to save it against constitutional attack, it must not and will not carry this to the point of perverting the purpose of a statute or judicially writing it.") (quoting *Aptheker v. Secretary of State*, 378 U.S. 500, 515 (1964) (brackets, ellipses, quotation marks omitted)). It would be impossible for this Court to imagine all the circumstances in which the Constitution would permit the exclusion of a transgender student from school sports. The Sports Ban is an absolute bar, consistent with the intent of the Legislature. Its constitutional infirmity lies in its categorical exclusion of all transgender girls from girls' sports teams, without consideration of any factors other than its impermissible sex-based classification.

Finally, the State Defendants argue that non-transgender boys fall under the scope of the statute and that the statute cannot be facially unconstitutional because Plaintiffs do not challenge its application to non-transgender students.[12] This argument fails for two reasons. First, under the

---

[11] The New Hampshire defendants in *Saucedo*, which included Secretary of State William Gardner, raised similar arguments, claiming that, "[i]f the most the evidence demonstrates is an unconstitutional application of the statute during the 2016 General Election, then Plaintiffs have failed to mount a successful facial challenge." *Saucedo v. Gardner*, 335 F. Supp. 3d 202 (D.N.H. 2018) (1:17-cv-00183), ECF 54, at 16. This Court rejected their arguments.

[12] Plaintiffs have not challenged sex-separated sports generally, nor have they challenged any direct sex classifications in the statute other than the classification based on transgender status. *See* Order Granting Mot. for Prelim. Inj. 30, ECF No. 70 ("Although the parties do not devote argument

New Hampshire Interscholastic Athletics Association's bylaws, non-transgender boys will be (and have been) excluded from girls' sports teams even if the Sports Ban were struck down as unconstitutional. *See* N.H. Interscholastic Athletic Assoc., Inc., By-Laws of NHIAA, By-Law Article I, Policy, Sec. 4, F (https://www.nhiaa.org/ckfinder/userfiles/files/3HB%2024-25%20%20I%20Policy.pdf). Second, the Sports Ban classifies students based on transgender status, both purposefully and on its face. *See* Order Granting Mot. for Prelim. Inj. 19, ECF No. 70 ("[T]he Act intentionally targets transgender girls and subjects them to different treatment solely because they are transgender."). It is immaterial that the broad sweep of the law also excludes non-transgender boys from girls' sports teams.[13] Even if the Sports Ban intentionally targeted non-transgender boys in addition to transgender girls, that intention would not cure the statute's facial classification of transgender girls. *See Hunter v. Underwood*, 471 U.S. 222, 232 (1985) (holding that a secondary discriminatory purpose of a state constitutional provision, to disenfranchise a subset of racial majority group, "would not render nugatory" the provision's primary purpose, to discriminate against members of racial minority group).

The Sports Ban is facially unconstitutional because it unjustifiably excludes all transgender girls from girls' sports teams. The facts alleged in the First Amended Complaint, including those

---

to the issue, the court notes that HB 1205 contains an additional classification triggering heightened scrutiny.").

[13] The Supreme Court has long rejected the notion that equal application insulates a statute from Equal Protection review. *See McLaughlin v. Florida*, 379 U.S. 184, 191 (1964) ("Judicial inquiry under the Equal Protection Clause . . . does not end with a showing of equal application among the members of the class defined by the legislation. The courts must reach and determine the question whether the classifications drawn in a statute are reasonable in light of its purpose—in this case whether there is an arbitrary or invidious discrimination between those classes covered by Florida's cohabitation law and those excluded."); *see also Fowler v. Stitt*, 104 F.4th 770, 792 (10th Cir. 2024) ("[E]qual application does not guarantee constitutionality under the Fourteenth Amendment."). The fact that the Sports Ban's sweep also includes non-transgender boys who hypothetically may wish to participate on girls' teams cannot change the fact that the statute facially and purposefully discriminates against students based on transgender status.

regarding Plaintiffs' circumstances, make it abundantly clear that the prohibition on participation is not substantially related to furthering any legitimate state interest. The State Defendants fail to explain how the statute can survive heightened scrutiny on an as applied or a facial challenge.

### 2. The Sport's Ban categorically excludes transgender girls from girls' sports teams in violation of Title IX.

The State Defendants argue that a facial challenge under Title IX requires that Plaintiffs show that the Sports Ban is preempted by Title IX. Defs.' Br. 16, ECF No. 88-1. *See Pharm. Research & Mfrs. of Am. v. Concannon*, 249 F.3d 66 (1st Cir. 2001); *Grant's Diary-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res.*, 232 F.3d 8 (1st Cir. 2000). The First Amended Complaint easily alleges conflict preemption because it is impossible to comply with Title IX while simultaneously enforcing the Sports Ban. *See Good v. Altria Group, Inc.*, 501 F.3d 29, 47 (1st Cir. 2007) ("[S]tate law is . . . pre-empted to the extent it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible . . . .") (quoting *California v. ARC Am. Corp.*, 490 U.S. 93, 100–01 (1989)).

In *PLIVA, Inc. v. Mensing*, pharmaceutical manufacturers defended against state tort law regarding label requirements, claiming that federal law prevented them from complying with state law. 564 U.S. 604, 617 (2011). The Supreme Court had no difficulty seeing that state law was preempted by federal law:

> The Court finds impossibility here. If the Manufacturers had independently changed their labels to satisfy their state-law duty to attach a safer label to their generic metoclopramide, they would have violated the federal requirements that generic drug labels be the same as the corresponding brand-name drug labels. Thus, it was impossible for them to comply with both state and federal law.

*Id*. at 605–06.

Similarly, the Sports Ban is preempted by federal law. The Sports Ban requires New Hampshire public schools to exclude transgender girls from an essential educational opportunity,

school sports programs, solely based on transgender status. Title IX forbids any publicly funded educational program from depriving a student of an educational opportunity on the basis of sex, which includes discrimination based on transgender status. Order Granting Mot. for Prelim. Inj. 43, ECF No. 70. Whenever a student is turned away from a sports program solely because she is transgender, her rights are violated under Title IX. It is therefore impossible to enforce the Sports Ban against a student without violating that student's Title IX rights. The Sports Ban facially violates federal law because it is in direct conflict with Title IX.

## IV.   CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request that this Court deny State Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

PARKER TIRRELL, by her parents and next friends SARA TIRRELL and ZACHARY TIRRELL,

and

IRIS TURMELLE, by her parents and next friends AMY MANZELLI and CHAD TURMELLE,

By and through their attorneys,

| | |
|---|---|
| Kevin J. DeJong (NH Bar No. 17633)<br>kdejong@goodwinlaw.com | */s/ Chris Erchull*<br>Chris Erchull (NH Bar No. 266733)<br>cerchull@glad.org |
| Louis L. Lobel* (MA Bar No. 693292)<br>llobel@goodwinlaw.com<br>Elaine H. Blais* (MA Bar No. 656142)<br>eblais@goodwinlaw.com<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA 02210 | Bennett H. Klein* (MA Bar No. 550702)<br>bklein@glad.org<br>Jennifer L. Levi* (MA Bar No. 562298)<br>jlevi@glad.org<br>GLBTQ LEGAL ADVOCATES & DEFENDERS<br>18 Tremont Street, Suite 950<br>Boston, MA 02108<br>(617) 426-1350 |
| Samira Seraji* (CA Bar No. 338979)<br>sseraji@goodwinlaw.com<br>GOODWIN PROCTER LLP<br>601 S. Figueroa Street<br>Suite 4100<br>Los Angeles, CA 90017 | Gilles Bissonnette (NH Bar No. 265393)<br>gilles@aclu-nh.org<br>Henry Klementowicz (NH Bar No. 21177)<br>henry@aclu-nh.org<br>AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE FOUNDATION<br>18 Low Avenue<br>Concord, NH 03301<br>(603) 224-5591 |
| Ben See* (NY Bar No. 6019202)<br>bsee@goodwinlaw.com<br>GOODWIN PROCTER LLP<br>620 Eighth Avenue<br>New York, NY 10018 | |

*Admitted *pro hac vice*.

January 10, 2025

## CERTIFICATE OF SERVICE

      I hereby certify that, on this date, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all those registered with the ECF system.

Date: January 10, 2025               */s/ Chris Erchull*
                                                    Chris Erchull