IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PARKER TIRRELL and IRIS TURMELLE,<br><br>　*Plaintiffs*,<br><br>v.<br><br>FRANK EDELBLUT, in his official capacity as Commissioner of the New Hampshire Department of Education, *et al.*,<br><br>　*Defendants*. | Case No. 1:24-cv-00251-LM-TSM |

### STATE DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO THE PARTIAL MOTION TO DISMISS

### INTRODUCTION

Plaintiffs' Opposition does not cure either of the First Amended Complaint's defects. First, Plaintiffs lack standing to sue Commissioner Edelblut. The Act at issue in this case (House Bill 1205, codified as RSA 193:41 and 193:42), is unambiguous—a private right of action is the Act's only enforcement mechanism contemplated in the statutory text.[1] So, the Commissioner does not have a "sufficiently intimate" connection with the enforcement of the Act.[2] Moreover, the Commissioner does not have derivative enforcement authority because New Hampshire law does not authorize the Commissioner or the State Board of Education the power to regulate the Act or school sports more generally.[3] Second, Plaintiffs have not satisfied their burden to plausibly allege that the Act facially violates constitutional or statutory rights.[4] A facial challenge is "the most difficult challenge to mount successfully, because it requires a defendant

---

[1] RSA 193:42.
[2] *See Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979).
[3] RSA 193:41, V; RSA 21-N:4 (Duties of Comm'r); RSA 21-N:9 (Rulemaking); RSA 21-G:9, II(b) (Powers & Duties of Commissioners); RSA 186:11, X (Duties of State Bd. of Educ.); RSA 186:8 (Div. of Learner Support).
[4] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

to establish that no set of circumstances exists under which the Act would be valid."[5]  Yet, Plaintiffs have made no attempt to allege that the Act lacks a plainly legitimate sweep.[6]

Accordingly, the Court should dismiss the Commissioner as a defendant, and dismiss the facial challenges for failure to state claims upon which the Court may grant relief.

## ARGUMENT

### I. Commissioner Edelblut Is Not a Proper Defendant Because He Has No Connection to RSA 193:41–42's Enforcement

#### A. The Commissioner Does Not Have Textual or Derivative Enforcement Authority Over the Act

Plaintiffs acknowledge that RSA 193:41–42 does not name the Commissioner "as its enforcer."[7]  *See* ECF No. 91 at 5 (citing ECF No. 88-1 at 7).  Plaintiffs also acknowledge that the Commissioner has no rulemaking or policymaking authority under the Act.  *See id.* at 6 ("[The Act] requires the New Hampshire State Board of Education to 'adopt and enforce policies to ensure compliance' with the Sports Ban.") (quoting RSA 193:41, V).  So, Plaintiffs attempt to impute enforcement authority to the Commissioner through the Board.  This argument fails for at least three reasons.

First, on its face, the Act's only enforcement mechanism is a private right of action. RSA 193:42.  The Board may implement policies to ensure public school compliance, but the Commissioner does not have any role under the plain language of the statute in administering RSA 193:41–42, much less enforcing its provisions.  *See generally* RSA 193:41–42.  "Where, as

---

[5] *See United States v. Rahimi*, 602 U.S. 680, 693 (2024) (internal quotations and citations omitted).
[6] *See Cook v. Gates*, 528 F.3d 42, 48, 56 (1st Cir. 2008).
[7] Plaintiffs also acknowledge that the Act expressly ***prohibits*** the Commissioner from taking any "adverse action against a school for maintaining separate interscholastic sport activities or club athletic teams for students of the female sex." ECF No. 91 at 7-8 (quoting RSA 193:41, VII) (internal quotations omitted).  Plaintiffs claim that this prohibition on the Commissioner's purported enforcement authority interferes with the Commissioner's duties under RSA 21-N:5, I(i).  *Id.*  But that statute relates to the deputy commissioner, not the Commissioner, and (more importantly) Plaintiffs cannot explain how Chapter 21's duty to assure compliance with equal opportunity requires enforcement of Chapter 193.  Taking the Plaintiffs' allegations in the light most favorable to them, even if the statutes conflict—one chapter does not create an enforcement duty in the other chapter.

here, that language is clear and unambiguous, the inquiry is at an end." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 8 (1st Cir. 2007). Plaintiffs cannot impute enforcement authority where the statute is clear that the Commissioner does not have enforcement authority.

Second, the Act allows the Board to establish compliance policy, but the Act does not empower the Board to make substantive rules or prosecute, defend, or adjudicate a student's claim that he or she has been aggrieved by a school's failure to comply with the Act. RSA 193:41, V. But even if Board policies were construed as Act enforcement, Plaintiffs' argument still fails. The Board has not issued any such policies, so even if Plaintiffs' enforcement theory were plausible, there is nothing for the Commissioner to enforce. Plaintiffs' standing claim is based solely on the risk of a future injury which may or may not occur. Even where courts find standing for probabilistic harm, ***imminence*** of harm is essential to establish a causal relationship between a plaintiff, a defendant, and the alleged injury-in-fact. *See Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014). Absent imminent harm, standing becomes "too speculative for Article III purposes." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013)).

Third, Plaintiffs' alternative argument for standing is remarkably attenuated and demonstrably incorrect. For the first time in their Opposition, Plaintiffs theorize that: (1) since the Board has authority to promulgate rules establishing standards for public school approval, and (2) because the Commissioner provides administrative support to the Board's approval system, and (3) since the Act permits the Board to adopt a compliance policy, therefore (4) "it will fall to Commissioner Edelblut to execute[ RSA 193:41, V.]" *See* ECF No. 91 at 6-7. Even if this chain were not so attenuated, its premise is fatally flawed.

It is important to note that the Act does not modify school approval standards and it does not authorize the Board to engage in rulemaking. RSA 193:41. So it is significant, though

3

unsurprising, that the Department's new rules do not relate to the Act.[8] The Opposition's Code of Administrative Rules citations are stale—those rules have not been in effect since December 2024. The new rules do not implement compliance or enforcement related to the Act, and they do not alter public school approval standards regarding who may or may not participate in girls' middle or high school sports.[9] Moreover, the new rules do not delegate the Board's school approval enforcement authority to the Commissioner. But even were it otherwise, the Commissioner's enforcement authority would be unrelated to Plaintiffs' allegations of harm.

The Act's only enforcement mechanism is a private right of action. RSA 193:42. Plaintiffs' claim that the Commissioner has derivative enforcement authority is attenuated, speculative, and lacks statutory and regulatory textual support. Accordingly, Plaintiffs cannot plausibly allege that the Commissioner has a "sufficiently intimate" connection with the Act's enforcement, so the Commissioner should be dismissed from this case.

B. **The *Ex parte Young* Doctrine Does Not Apply in This Case**

In *Ex parte Young*, the United States Supreme Court established a doctrinal exception to state sovereign immunity. *Doe v. Shibinette*, 16 F.4th 894, 903 (1st Cir. 2021) (citing *Ex parte Young*, 209 U.S. at 159-60). The exception requires a plaintiff to plausibly allege that a defendant state official has imminent power to enforce an allegedly unlawful state statute. *See Ex parte Young*, 209 U.S. at 155-56. Plaintiffs have not established that the Commissioner has imminent enforcement power, so he is immune from suit and *Ex parte Young* does not apply.

---

[8] The new rules are attached as Exhibits A and B. The Board approved the first half of Part Ed 306 on August 14, 2024 (nearly one month after HB 1205 was enacted) and the second half on September 16, 2024 (nearly one month after HB 1205 went into effect). Dept' of Educ., *Min. Standards for Pub. Sch. Approval, Ed 306* (available at https://www.education.nh.gov/who-we-are/deputy-commissioner/office-governance/administrative-rules/minimum-standards) (last visited Feb. 7, 2025).

[9] In fact, school sports lie outside the bounds of the Board's and Commissioner's jurisdiction. RSA 21-N:4 (Duties of Comm'r); 21-N:9 (Rulemaking); RSA 21-G:9, II(b) (Powers & Duties of Comm'rs); 186:11, X (Duties of State Bd. of Educ.); 186:8 (Div. of Learner Support).

Plaintiffs' theory that *Ex parte Young* subjects the Commissioner to the Court's jurisdiction fails for at least four reasons. First, they assert that the Act "expressly directs the New Hampshire Board of Education to adopt an enforcement policy[.]" ECF No. 91 at 5. To be clear, the Act allows the Board to adopt a compliance policy, not an enforcement policy. RSA 193:41, V. This important distinction notwithstanding, the purported policymaking authority runs to the Board, not the Commissioner. *Id.* Since no such policy exists, the Commissioner's alleged enforcement authority is speculative, at best. *Supra* Sec. 1.A.

Second, Plaintiffs argue that the Department has broadly interpreted the Commissioner's authority to enforce education laws even where "laws lack any specific enforcement mechanism." *See* ECF No. 91 at 7. Plaintiffs cite a Department Technical Advisory to support this proposition. *Id.* The Technical Advisory, however, is not what Plaintiffs purport it to be. It is a policy statement articulating the Department's understanding of how a new law applies to schools. Dep't of Educ., *Technical Advisory* (Sept. 6, 2023) (Exhibit C). As such, the Technical Advisory does not "enforce" anything. *Id.* And even if the Board had done so in the past, the conclusion that the Commissioner will likewise enforce the Act is wildly speculative.

Third, Plaintiffs assert that the Act prohibits government entities from investigating or taking adverse action against schools that maintain sports teams designated by sex. ECF No. 91 at 7. They allege that the Commissioner is a proper defendant because the Act creates conflicting statutory obligations. *Id.* This argument has no merit because even if it were true, conflicting statutory duties do not confer standing—only sufficiently intimate connections to statutory enforcement can confer standing. *See Shell Oil*, 608 F.2d at 211 (citing *Ex parte Young*, 209 U.S. at 157).

Fourth, Plaintiffs assert that the Commissioner has already played a role in enforcing the Act through his August 20, 2024 letter to school leaders. ECF No. 91 at 8. On the contrary, the letter merely states facts and it does not threaten enforcement of any kind. ECF No. 91-1 at 2. Plaintiffs do not cite any authority to support the notion that statements of fact evince a sufficiently intimate connection to statutory enforcement. Moreover, Kearsarge Regional School Board's decision not to comply with the Act—a decision made nine days *after* the Commissioner's letter—belies the notion that the Commissioner's letter carried the weight of persuasive authority, much less the weight of enforcement authority.[10]

## II. Plaintiffs Have Not Supported Their New Claims that RSA 193:41–42 Facially Violates the Equal Protection Clause or Title IX with Plausible Factual Allegations

### A. The First Amended Complaint's Facial Challenge Is a New Claim

Plaintiffs' facial challenge does not simply expand the scope of relief, it states an entirely new claim. *Contra* ECF No. 91 at 10 n.8. A facial challenge is a claim that a statute is unconstitutional in all its applications. *See Rahimi*, 602 U.S. at 693. On the other hand, an as-applied challenge is a claim that a statute infringes upon a plaintiff's constitutional freedoms, in his or her circumstance. *See Seling v. Young*, 531 U.S. 250, 271 (2001). The distinction is important, though it does not have an automatic effect that controls the pleadings in every case. *See Citizens United v. FEC*, 558 U.S. 310, 331 (2010). The controlling question is whether the "claim and the relief that would follow . . . reach beyond the particular circumstances of these plaintiffs." *Showtime Entm't, LLC v. Town of Mendon*, 769 F.3d 61, 70 (1st Cir. 2014) (quoting *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010)). Where, as here, a facial challenge goes

---

[10] Kearsarge initially voted to comply with the Act, but nine days after receiving the Commissioner's letter, it voted to ignore the Act. Kearsarge Reg. Sch. Bd. Approved Minutes at 3 (Aug. 29, 2024) (Exhibit D). It should be clear that only a private action against Kearsarge can compel its compliance. RSA 193:42. "On a motion to dismiss, [a court] may consider documents which are of undisputed authenticity, official public records, central to the plaintiff's claim, or sufficiently referred to in the complaint." *Pitta v. Medeiros*, 90 F.4th 11, 14 n.2 (1st Cir. 2024). The Kearsarge School Board minutes are official public records of undisputed authenticity.

beyond facts specific to a plaintiff and expands relief beyond that required to remedy that of which Plaintiffs complain, Plaintiffs "must therefore satisfy our [First Circuit] standards for a facial challenge to the extent of that reach." *See id.*

### B. Plaintiffs Have Not Plausibly Alleged that RSA 193:41–42 Violates the Equal Protection Clause in Every Circumstance to Which the Act Applies

The United States Supreme Court and First Circuit have been clear—where a statute is constitutional in some of its applications, a facial challenge must fail. *See Rahimi*, 602 U.S. at 693.[11] So, at a minimum, Plaintiffs must plausibly allege that the Act lacks a plainly legitimate sweep. *See Cook*, 528 F.3d at 48, 56. This is not, as Plaintiffs assert, "a heightened pleading standard." *Contra* ECF No. 91 at 13. It is simply *Iqbal* notice pleading that recognizes the disfavored nature of facial constitutional challenges to state law. *See Cook*, 528 F.3d at 48, 56; *see also Wash. State Grange*, 552 U.S. at 450-51.

Plaintiffs have not met their burden because, in their own words, the "First Amended Complaint adds ***no additional facts*** beyond what was alleged in the original Complaint."[12] ECF No. 91 at 1 n.1 (emphasis added). Plaintiffs assert that additional facts are unnecessary because the Court held that "HB 1205, on its face, discriminates against transgender girls." *See* ECF No. 91 at 10-11 (quoting ECF No. 70 at 16). The Court's order, however, addressed only

---

[11] *See also United States v. Salerno*, 481 U.S. 739, 745 (1987); *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008); *McCullen v. Coakley*, 571 F.3d 167, 174 (1st Cir. 2009); *Hightower v. City of Boston*, 693 F.3d 61, 77-78 (1st Cir. 2012); *Libertarian Party of N.H. v. Gardner*, 843 F.3d 20, 24 (1st Cir. 2016). *Accord Saucedo v. Gardner*, 335 F. Supp. 3d 202, 213 (D.N.H. 2018) (citing the standards set forth in *Salerno* vis-à-vis *Libertarian Party* and *Hightower*'s "plainly legitimate sweep" formulation).

[12] At the preliminary injunction hearing, Plaintiffs expressed their view that the original Complaint stated a facial claim:
> THE COURT: So you're making both a facial and as-applied challenge?
> MR. ERCHULL: I am, your Honor.

Prelim. Inj. H'rg Tr. 16:21-23 (Aug. 27, 2025). In its Order, the Court explained that Plaintiffs were incorrect—their Complaint did not assert a facial challenge to the Act: "In both the complaint and their motion for a preliminary injunction, plaintiffs have asked only that the court enjoin HB 1205 as applied to them." ECF No. 70 at 47. So, as the original Complaint did not state a facial challenge to the Act, so too the Amended Complaint does not state a facial challenge.

Plaintiffs' as-applied claims. *See* ECF No. 70 at 47. Whether the Act has legitimate applications beyond Parker or Iris was not before the Court.

Moreover, Plaintiffs acknowledge that the Act has at least one valid application:

> The fact that the Sports Ban's sweep also includes non-transgender boys who hypothetically may wish to participate on girls' teams cannot change the fact that the statute facially and purposefully discriminates against students based on transgender status.

*See* ECF No. 91 at 15 n.13. So, Plaintiffs concede that the Act has at least one plainly legitimate sweep.[13] They must acknowledge this point because a "facial attack tests a law's constitutionality ***based on its text alone*** and does not consider the facts or circumstances of a particular case." *Maravelias v. Justices of the N.H. Sup. Ct.*, No. 19-cv-487, 2020 U.S. Dist. LEXIS 145462, *11 (D.N.H. Aug. 13, 2020) (internal quotations and citations omitted). The Act's text alone establishes its application to non-transgender boys—its plainly legitimate sweep is not "hypothetical" as Plaintiffs' claim.[14] *See id.* Perhaps more importantly, Plaintiffs assert that Parker and Iris's equal protection comparators are girls, ***not*** non-transgender boys. *See* ECF No. 78, ¶¶ 68 & 84. Whatever Plaintiffs' statement might contribute to their as-applied challenge, it does not support their facial one. Plaintiffs have not plausibly alleged facts that the Act does not have any valid application.

---

[13] Plaintiffs argue that because NHIAA (a ***private*** organization without lawful authority to regulate or enforce state law) bans non-transgender boys from playing on girls' teams, the Court should disregard the constitutional application of the Act to non-transgender boys. *See* ECF No. 91 at 14-15. NHIAA's views on who should or should not play on girls' sports teams is wholly irrelevant to Plaintiffs' claims and the Partial Motion to Dismiss.

[14] For the reasons stated above, the Act's application to non-transgender boys is not hypothetical, but that is beside the point. Plaintiffs' argument that "hypothetical" application of the Act is "irrelevant" here, misconstrues the nature of the Rule 12(b)(6) motion before the Court. *Contra* ECF No. 91 at 12-13. Perhaps a hypothetically constitutional application of a law does not sufficiently satisfy the required scrutiny to which the law will be judged on the merits. *See id.* at 13 (citing *Saucedo*, 335 F. Supp. 3d at 213). But that is not the issue before the Court, so Plaintiffs' reliance on *Saucedo* is misplaced. In *Saucedo*, the Court considered a motion for summary judgment. *Saucedo*, 335 F. Supp. 3d at 206. The *Saucedo* Court did not examine hypothetical applications because it resolved the facial challenge "by applying the relevant constitutional test to the challenged statute." *Id.* at 214 (internal quotations and citations omitted). Constitutional tests relate to the merits stage and not the pleadings stage where plaintiffs have the burden to state claims upon which a court may grant relief. *See id.* (citing *Wash. State Grange*, 552 U.S. at 449-50).

### C. Plaintiffs' As-Applied Factual Allegations Are Limited to the Specifics of Their Circumstances, so They Do Not State a Facial Claim

Plaintiffs assert that their as-applied claims' allegations may be imputed to all others governed by the Act. *See* ECF No. 91 at 12. To be sure, Plaintiffs make conclusory allegations regarding the nature of transgenderism, such as asserting that "[b]eing transgender is not an accurate proxy for athletic performance or ability." *Id.* (quoting ECF No. 78, ¶ 32). But that Parker and Iris are transgender girls is merely a "general rule" premise of Plaintiffs' as-applied claims. That they have been diagnosed with gender dysphoria and that each has been receiving treatment for more than a year is their "specific instance" premise. ECF No. 78, ¶¶ 58, 60, 77, 79. Plaintiffs conclude from their general and specific premises that they "will not go through male puberty[.]" *Id.* ¶¶ 60, 79. The logical sequence is interdependent and inseverable.[15] It is the vehicle by which Plaintiffs attempt to support their as-applied claim that they do not have:

> any biological or physiological difference from any other girls that would impact their performance in sports. These are all really important facts and they're all on the record, and none of these facts are contested here.

H'rg Tr. 10:24–11:3.[16]

The Court agreed with Plaintiffs' argument and determined that "[t]estosterone is what drives the divergence in average athletic skill between boys and girls after puberty." ECF No. 70 at 34. The Court ruled that the Act prohibits all transgender girls from girls' sports, "regardless of whether they have started puberty and regardless of whether they have undergone treatment to block male puberty or induce female puberty." *Id.* at 34-35. But the Court's holding was

---

[15] State Defendants will challenge the validity of this logic on the merits of Plaintiffs' as-applied claims. The validity of Plaintiffs' arguments are not at issue, however, in this Partial Motion to Dismiss.

[16] To be clear, State Defendants contest all material facts alleged by Plaintiffs in this case. The "here" to which Plaintiffs refer in the block quote above refers to the preliminary injunction hearing in August. At that time and for the limited purpose of Plaintiffs' Motion for a Preliminary Injunction, State Defendants merely accepted Plaintiffs' factual allegations as true without conceding the relevance or accuracy of any factual allegation. State Defendants will challenge the validity of all Plaintiffs' allegations during the merits stage of this case.

specific to Plaintiffs' general and specific premises:

> Neither Parker nor Iris have undergone male puberty. Neither of them will undergo male puberty. Both have received hormone therapy to induce female puberty, and both have developed physiological changes associated with female puberty. It is uncontested that there is no medical justification to preclude Parker and Iris from playing girls' sports. As such, HB 1205 is unconstitutional as applied to Parker and Iris because barring them from playing girls' sports does nothing to enhance fairness or safety in girls' sports.

ECF No. 70 at 35-36. These allegations cannot be imputed to **all** transgender girls. Where, as here, a facial claim reaches beyond the "precise circumstances" of Plaintiffs, Plaintiffs must support their claims with sufficient factual allegations demonstrating that the Act does not have a plainly legitimate sweep as to others. See *Showtime Entm't*, 769 F.3d at 70.

### D. Plaintiffs Have Not Plausibly Alleged that RSA 193:41–42 Violates Title IX in Every Circumstance to Which the Act Applies

The First Amended Complaint makes just one reference to the Act's facial invalidity as it relates to Title IX, and it does so in the Prayer for Relief, without supporting facts. ECF No. 78 at 23. Nevertheless, Plaintiffs assert that the Amended Complaint "easily alleges conflict preemption[.]" ECF No. 91 at 16. Plaintiffs are incorrect because their Opposition merely aggregates the Amended Complaint's legal conclusions regarding the Act's alleged tension with Title IX. *Id.* at 16-17. It does not plausibly allege a conflict preemption claim broader than that applied to Plaintiffs. See *PhRMA v. Concannon*, 249 F.3d 66, 77 (1st Cir. 2001).

To proceed on a facial conflict preemption theory, Plaintiffs must allege that "no set of circumstances exists under which the Act would be valid." *See id.* (quoting *Salerno*, 481 U.S. at 745) (internal quotations omitted). As discussed above, Plaintiffs have not plausibly alleged that the Act is invalid in all circumstances or that their as-applied allegations may be imputed to others who do not share their medical status or treatment regimen. *Supra* Sec. II.A.-C. Absent factual allegations to make out a facial claim, the "existence of a hypothetical or potential

conflict is insufficient to warrant the preemption of the state statute." *See Pharm. Research*, 249 F.3d at 77 (quoting *Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982)).

## CONCLUSION

For the foregoing reasons and as articulated in State Defendants' Memorandum of Law, the Court should dismiss Commissioner Edelblut from this case and dismiss the First Amended Complaint's facial constitutional and statutory challenges to RSA 193:41–42.

Respectfully submitted,

DEFENDANTS FRANK EDELBLUT, ANDREW CLINE, KATE CASSADY, ANN LANE, PHILIP NAZZARO, RAJESH NAIR, JAMES FRICCHIONE, and JAMES LABOE

By their attorney,

JOHN M. FORMELLA
ATTORNEY GENERAL

Date:  February 7, 2025

/s/ Michael P. DeGrandis
Michael P. DeGrandis, N.H. Bar  No. 277332
Assistant Attorney General
Brandon F. Chase, N.H. Bar No. 270844
Assistant Attorney General
New Hampshire Department of Justice
1 Granite Place South
Concord, NH 03301
(603) 271-3650
michael.p.degrandis@doj.nh.gov
brandon.f.chase@doj.nh.gov

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all parties of record through the Court's e-filing system.

/s/ Michael P. DeGrandis
Michael P. DeGrandis