# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Parker Tirrell, by her parents and next friends Sara Tirrell and Zachary Tirrell, *and*

Iris Turmelle, by her parents and next friends Amy Manzelli and Chad Turmelle,

   Plaintiffs~~,~~,

   v.

Frank Edelblut, *in his official capacity as Commissioner of the New Hampshire Department of Education*;

Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, *in their official capacities as members of the New Hampshire State Board of Education*;

Pemi-Baker Regional School District; ~~*and*~~

Pembroke School District~~,~~;

Donald J. Trump, *in his official capacity as President of the United States*, 1600 Pennsylvania Ave. NW, Washington, DC 20220;

U.S. Department of Justice, 950 Pennsylvania Ave. NW, Washington, DC 20530;

Pamela Bondi, *in her official capacity as Attorney General of the United States*, 950 Pennsylvania Ave. NW, Washington, DC 20530;

U.S. Department of Education, 400 Maryland Ave. SW, Washington, DC 20202; and

Denise L. Carter, *in her official capacity as Acting Secretary of the United States Department of Education*, 400 Maryland Ave. SW, Washington, DC 20202.

Civil Action No. 1:24-cv-00251

1

~~FIRST~~ SECOND AMENDED COMPLAINT

<u>INTRODUCTION</u>

Plaintiffs Parker Tirrell and Iris Turmelle are transgender teenage girls attending New Hampshire public high schools. Each knew from an early age that she was a girl. Each has been diagnosed with gender dysphoria, a health condition characterized by distress resulting from an incongruence between one's birth sex and gender identity. As part of their prescribed medical treatment for gender dysphoria, Parker and Iris live and interact with others as girls in every aspect of their lives; they are accepted as girls by their parents, family, schools, peers, teammates, and coaches. This ability to live consistently with their female gender identities is critical to their health and well-being, and social acceptance is a key component of each girl's medical course of care. Parker and Iris are also receiving puberty-blocking medication and hormone therapy to align their bodies with their female identities and to alleviate the distress of physical characteristics that conflict with their gender identity. They will not go through testosterone-driven puberty, nor will they experience physical changes caused by testosterone, including the muscular development characteristic of males.

Parker is 1~~6~~5 years old and she is ~~entering~~ currently in tenth grade at Plymouth Regional High School. She has always played sports, including in elementary, middle, and high school as well as in town recreational leagues. Sports has been a source of joy for her and has been the primary way she makes friends and experiences a sense of belonging and connection to others. Soccer is her real passion. She play~~ed~~s on the girls' soccer team and ~~last year in ninth grade and~~ is excited to ~~rejoin her team~~continue playing throughout high school. On August 15, 2024, Parker's school informed her mother that Parker would not be allowed to participate in practice which began on August 19, 2024.

Iris is ~~14~~ 15 years old and she is ~~entering~~ currently in ninth grade at Pembroke Academy. She played intramural tennis in middle school. She wants to try out for and play on the girls' tennis and track and field teams~~,~~ during her high school years~~which are winter and spring sports~~. Iris hopes that participation in these sports will help her to make additional friends, establish a peer group, and cope with the stresses she experiences in life.

Without this Court's intervention, Parker and Iris would be denied the chance to participate in these vital educational opportunities solely because they are transgender girls, even though they have no physiological or biological advantage in sports. A New Hampshire statute enacted on July 19, 2024 (and effective August 19, 2024), HB 1205, singles out transgender girls in New Hampshire by categorically barring them from school sports. ~~HB 1205, on its face and as applied to the Plaintiffs, violates the constitutional right to Equal Protection because it discriminates against transgender girls, like the Plaintiffs, based on their sex and transgender status. HB 1205 also denies transgender girls, like the Plaintiffs, equal educational opportunities in violation of Title IX of the Education Amendments of 1972, 20 U.S.C., § 1681, *et seq*., ("Title IX") which prohibits sex discrimination in public school programs and activities.~~

Because HB 1205 facially discriminates against transgender girls in the state of New Hampshire, such as Plaintiffs, HB 1205 is both a violation of transgender girls' constitutional right to Equal Protection guaranteed by the Fourteenth Amendment, and a denial of transgender girls' equal educational opportunities in violation of Title IX of the Education Amendments of 1972, 20 U.S.C., § 1681, *et seq*., which prohibits sex discrimination in public school programs and activities.

Subsequently, Defendant President Trump issued two executive orders expressing the government's intention to exclude transgender girls and women from sports. First, on January 20, 2025, an executive order entitled *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government* (the "Gender Ideology Order") was issued declaring a broad intention to deny transgender people legal protections and to purge transgender people from society, including in medical care, education, travel, military service, and employment.

Second, on February 5, 2025, Defendant President Trump issued an executive order entitled *Keeping Men Out of Women's Sports* (the "National Sports Ban"). The National Sports Ban defines transgender women as men, and announces the intention of the federal government to ban transgender girls from playing on girls' sports teams in every school that receives federal funds, which includes the schools attended by Plaintiffs in this case.

The National Sports Ban wrongly interprets Title IX to exclude protections for transgender people, in direct contradiction to this Court's order on Plaintiffs' Motion for Preliminary Injunction. (ECF No. 70, Spet. 10, 2024). The National Sports Ban directs the Secretary of Education promptly to "prioritize" Title IX enforcement actions, and orders all executive departments and agencies to "review grants to educational programs and … rescind funding to programs that fail to comply." The sweeping National Sports Ban intentionally discriminates against transgender people, and is part of a systematic effort by Defendant President Trump and his administration to harm transgender people and prevent them from functioning in society.

The Gender Ideology Order and the National Sports Ban also facially discriminate against transgender people in violation of equal protection and their rights under Title IX.

Without the declaratory and injunctive relief sought against the federal defendants in this case, Plaintiffs, along with other transgender girls in the United States, will experience harm.

Because of the directives in the Gender Ideology Order and the National Sports Ban, the schools that Plaintiffs attend are under threat of Title IX enforcement actions and the rescission of federal funds as a direct consequence of Plaintiffs' participation on girls' sports teams. Notwithstanding this Court's preliminary relief, Plaintiffs cannot attend school and experience their educational development on the same terms as their non-transgender peers. Instead, they attend school with ongoing uncertainty and fear of an impending conflict between this Court's orders and federal enforcement action against their schools and the attendant disruption of their participation in school sports. Without adjudicating the lawfulness of the Gender Ideology Order and the National Sports Ban in this lawsuit, the federal government's policy of prohibiting transgender girls and women from playing sports will harm the Plaintiffs because they face relitigation of their right to play school sports.

Plaintiffs seek declaratory and injunctive relief. Defendants are the individuals and entities charged with adopting policies and enforcing the requirements of HB 1205: the Commissioner of Education in his official capacity; the members of the State Board of Education in their official capacities; and the applicable school districts.

## JURISDICTION AND VENUE

1.  This action arises under 42 U.S.C. § 1983 to redress the deprivation under color of state law of rights secured by the Fourteenth Amendment to the United States Constitution and under Title IX of the Education Amendments of 1972, 20 U.S.C., § 1681, *et seq*.

1.2.  This action also arises under 42 U.S.C. § 1346, as a civil action against the United States founded upon the United States Constitution, an Act of Congress, or an executive

regulation; and 28 U.S.C. § 1361, as an action to compel an officer or employee of the United States or an agency to perform a duty owed to Plaintiffs.

~~2.~~3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

~~3.~~4.    Venue is proper in the District of New Hampshire under 28 U.S.C. §§ 1391(b)(1) and (2) because each Defendant~~s~~ reside~~s~~ in this District or is an agency of the United States or an officer of the United States sued in their official capacity, and because the events or omissions giving rise to the claims occurred in the District.

~~4.~~5.    This Court is authorized to enter a declaratory judgment under 28 U.S.C. § 2201.

~~5.~~6.    An actual controversy exists between the parties involving substantial constitutional and statutory issues as Plaintiffs allege that HB 1205, the Gender Ideology Order, and the National Sports Ban violate~~s~~ the United States Constitution and federal law and infringes on Plaintiffs' rights.

## PARTIES

~~6.~~7.    Plaintiff Parker Tirrell is a ~~15~~16-year-old girl who resides in Plymouth, New Hampshire. She proceeds in this case by her next friends and parents, Sara Tirrell and Zachary Tirrell.

~~7.~~8.    Plaintiff Iris Turmelle is a ~~14~~15-year-old girl who resides in Pembroke, New Hampshire. She proceeds in this case by her next friends and parents, Amy Manzelli and Chad Turmelle.

~~8.~~9.    Defendant Frank Edelblut is sued in his official capacity as Commissioner of the New Hampshire Department of Education. He is responsible for the general supervision of secondary schools and administrators. N.H. REV. STAT. ANN. ("RSA") § 21-N:2, II(a). At the time of the events from which this Complaint arises and at all relevant times, he was a legal

resident of the State of New Hampshire, and his business address is 25 Hall Street, Concord, NH 03301.

~~9.~~10.   Defendant Andrew Cline is sued in his official capacity as Chair of the State Board of Education (the "State Board"), a state agency established pursuant to RSA § 21-N:10. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is 25 Hall Street, Concord, NH 03301.

~~10.~~11.  Defendant Kate Cassady is sued in her official capacity as a member of the State Board. At the time of the events from which this Complaint arises and at all relevant times, she was a legal resident of the State of New Hampshire, and her business address is 25 Hall Street, Concord, NH 03301.

~~11.~~12.  Defendant Ann Lane is sued in her official capacity as a member of the State Board. At the time of the events from which this Complaint arises and at all relevant times, she was a legal resident of the State of New Hampshire, and her business address is 25 Hall Street, Concord, NH 03301.

~~12.~~13.  Defendant Philip Nazzaro is sued in his official capacity as a member of the State Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is 25 Hall Street, Concord, NH 03301.

~~13.~~14.  Defendant Rajesh Nair is sued in his official capacity as a member of the State Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is 25 Hall Street, Concord, NH 03301.

14.15.  Defendant James Fricchione is sued in his official capacity as a member of the State Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is 25 Hall Street, Concord, NH 03301.

15.16.  Defendant James Laboe is sued in his official capacity as a member of the State Board. At the time of the events from which this Complaint arises and at all relevant times, he was a legal resident of the State of New Hampshire, and his business address is 25 Hall Street, Concord, NH 03301.

16.17.  Defendant Pemi-Baker Regional School District ("PBRSD") is a municipal corporation organized under RSA Chapter 194. PBRSD's office is located at SAU 48 District Office, 47 Old Ward Bridge Road, Plymouth, NH 03264. Plaintiff Parker Tirrell attends Plymouth Regional High School, which is a school in and operated by PBRSD.

18.     Defendant Pembroke School District ("PSD") is a municipal corporation organized under RSA Chapter 194. PSD's office is located at School Administrative Unit 53, 267 Pembroke Street, Pembroke, NH 03275. Plaintiff Iris Turmelle attends Pembroke Academy, which is a school in and operated by the PSD.

19.     Defendant Donald J. Trump is the President of the United States. He is responsible for the actions and decisions that Plaintiffs challenge in this action and he is sued in his official capacity.

20.     Defendant Department of Justice (the "DOJ") is a cabinet department of the federal government. DOJ is an "agency" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 551(1).

21.     Defendant Pamela Bondi is the Attorney General of the United States and heads the DOJ. She is sued in her official capacity. Attorney General Bondi is responsible for all aspects of the operation and management of the DOJ, implementing and fulfilling the DOJ's duties under the United States Constitution and statutory law. The National Sports Ban and the Gender Ideology Order require the Attorney General and the DOJ to implement and enforce the federal government's policy to exclude transgender girls and women from sports.

22.     Defendant Department of Education ("US DOE") is a cabinet department of the federal government. DOE is an "agency" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 551(1).

17.23.   Defendant Denise L. Carter is the Acting Secretary of US DOE. She is sued in her official capacity. Acting Secretary Carter is responsible for all aspects of the operation and management of DOE, implementing and fulfilling DOE's duties under the United States Constitution and statutory law. The National Sports Ban and the Gender Ideology Order require the Secretary of Education and the DOE to implement and enforce the federal government's policy to exclude transgender girls and women from sports.

## FACTS

### I.   Transgender Adolescents and Participation in School Sports.

18.24.   In medicine, "gender identity" is the term for a person's internal, innate sense of belonging to a particular sex.[1]

---

[1] The New Hampshire Civil Rights Act similarly defines "gender identity" as "a person's gender-related identity, appearance, or behavior, whether or not that gender-related identity, appearance, or behavior is different from that traditionally associated with the persons' physiology or assigned sex at birth." RSA § 354-A:2, XIV-e.

19.25.  A person's gender identity has a strong biological basis, although the precise causal mechanism is not yet known.

20.26.  A person's gender identity is innate and cannot be changed by medical or psychological intervention.

21.27.  When a child is born, a healthcare provider designates the child's sex as male or female based on the child's observable anatomy. For most people, that initial designation is consistent with the person's gender identity. For a transgender person, however, that initial designation does not reflect the person's gender identity.

22.28.  A transgender girl is one whose birth sex was male but who lives and identifies as female.

23.29.  Due to the incongruence between their assigned sex and gender identity, transgender people who cannot live consistent with their gender identity experience gender dysphoria, a serious medical condition recognized in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM-5"). Gender dysphoria is highly treatable by enabling a person to live consistent with their gender identity, often through medical management. If left untreated, however, it can result in severe anxiety, depression, substance abuse, self-harm, suicidality, and other attendant mental health issues.

24.30.  When transgender children and adolescents are provided with appropriate treatment, they will thrive and grow into healthy adults like any other child and adolescent.

25.31.  The goal of medical treatment for transgender individuals is to allow them to live consistently with their gender identity. Living consistently with one's gender identity is critical to the health of any person, including a transgender person.

26.32.  The prevailing standards of care for the treatment of gender dysphoria are developed by the World Professional Association for Transgender Health ("WPATH"), an international multidisciplinary professional association that promotes scientifically based care, and the Endocrine Society, the organization of professionals in the field of adult and pediatric endocrinology.

27.33.  Undergoing treatment to alleviate gender dysphoria is commonly referred to as transition. The transition process can include a combination of the following three components: (i) social transitioning, including adopting a name, pronouns, appearance, and clothing, all consistent with the person's gender identity; (ii) puberty-blocking medication and hormone therapy; and, for adults, (iii) surgeries to alter the appearance and functioning of primary and secondary sex characteristics. Surgery is rarely indicated for transgender minors.

28.34.  Before puberty, there are no significant differences in athletic performance between boys and girls arising from any biological or physiological bases.

29.35.  After puberty, the biological driver of average group differences between boys and girls is testosterone. Both boys and girls produce testosterone. After puberty, however, boys, on average, produce higher levels of testosterone than girls.

30.36.  At the onset of puberty, adolescents diagnosed with gender dysphoria may be prescribed puberty-blocking medication to prevent the distress of developing physical characteristics that conflict with the adolescent's gender identity. Transgender girls who receive puberty-blocking medication do not go through male puberty and will experience no progression of physical changes caused by testosterone, including male muscular development, facial and body hair, an Adam's apple, or masculinized facial features.

31.37.  Thereafter, the treating provider may prescribe hormones to induce the puberty associated with the adolescent's gender identity. This treatment is referred to as hormone therapy. The result of this treatment is that a transgender girl, for example, will have the same levels of circulating hormones as other girls.

32.38.  The fact that a girl is transgender, in itself, does not indicate that she has any sports performance advantage over other girls. Being transgender is not an accurate proxy for athletic performance or ability.

## II.  New Hampshire's Total Exclusion of Transgender Girls from Participation in Middle and High School Sports.

33.39.  Prior to the enactment of HB 1205, a transgender student's eligibility to participate in school sports was governed by policies developed by the New Hampshire Interscholastic Athletic Association (the "NHIAA").

34.40.  Founded in 1947 and incorporated in 1951, NHIAA is a voluntary association of New Hampshire's school districts. NHIAA's mission, according to its website, is to "establish the state athletic programs as an integral part of the entire school curriculum," and ensure that "athletics . . . makes a great contribution to the development of New Hampshire youth." *History of NHIAA*, N.H. INTERSCHOLASTIC ATHLETIC ASS'N, https://www.nhiaa.org/about-nhiaa/history (last visited Oct. 30, 2024, 3:48 PM).

35.41.  NHIAA acts and adopts policies through a Council, whose rotating members include school administrators, principals, athletic directors, coaches, state school board association members, and state Department of Education personnel. N.H. INTERSCHOLASTIC ATHLETIC ASS'N CONST. art. VI, § 2 (2024), https://www.nhiaa.org/ckfinder/userfiles/files/2HB%2024-25%20Constitution.pdf (last visited Oct. 30, 3:52 PM).

~~36.~~42.  NHIAA also has a number of subject matter-specific standing committees. These standing committees must be chaired by a principal, assistant principal, athletic director, or coach employed by a member school, and all voting members of these committees are employees of member schools. NHIAA BYLAWS, art. I, § 2 (2024)

https://www.nhiaa.org/ckfinder/userfiles/files/3HB%2024-25%20%20I%20Policy.pdf (last visited Oct. 30, 3:53 PM).

~~37.~~43.  NHIAA's standing committees make recommendations to the Council regarding the adoption of policies in their respective subject matter areas.

~~38.~~44.  In 2015, the Eligibility Committee recommended, and the NHIAA adopted and incorporated into its bylaws, a "Policy Statement and School Recommendation Regarding Transgender Participation." *See* NHIAA BYLAWS, art. II, § 21 (2024) (the "NHIAA Policy") (last visited July 29, 2024),[2] attached as Exhibit A.

~~39.~~45.  Consistent with its educational mission to foster the development of New Hampshire's youth, the NHIAA Policy emphasizes its commitment "to providing transgender student-athletes with equal opportunities to participate in NHIAA athletic programs." *Id.*

~~40.~~46.  The NHIAA Policy states that "it would be fundamentally unjust and contrary to applicable State and Federal Law to preclude a student from participation on a gender specific sports team that is consistent with the public gender identity of that student for all other purposes." *Id.*

---

[2] Since July 29, 2024, this quoted language has been removed from Article II on Eligibility, § 21 ("Policy Statement and School Recommendation Regarding Transgender Participation") on the NHIAA website. The statement now adds that it is "[i]n compliance with current New Hampshire anti-discrimination laws and federal Title IX guidance." NHIAA BYLAWS, art. II, § 21 (2024), https://www.nhiaa.org/ckfinder/userfiles/files/4HB%2024-25%20%20II%20Eligibility.pdf (last visited Oct. 3, 12:22 PM).

41.47.  The NHIAA Policy, therefore, charges each school district with determining "a student's eligibility to participate in a NHIAA gender specific sports team based on the gender identification of that student in current school records and daily life activities in the school and community at the time that sports eligibility is determined for a particular season."

42.48.  The NHIAA Policy also addresses "concerns that a student might claim a particular gender identity for the purpose of gaining a perceived advantage in athletic competition" by (1) not permitting students to "try out for gender specific sports teams that are different from their publicly identified gender identity"; (2) not permitting students to "try out simultaneously for NHIAA sports teams of both genders"; and (3) expecting that, "as a general matter, after the issue of gender identity has been explicitly addressed by the student and the school district, the determination shall remain consistent for the remainder of the student's high school sports eligibility."

43.49.  HB 1205 was enacted on July 19, 2024. It became effective August 19, 2024.

44.50.  HB 1205 supplants the NHIAA Policy and, instead, requires that each interscholastic sport activity or club athletic team in grades 5–12 sponsored by a public school, or a private school whose students or teams compete against a public school, be designated as a boys', girls', or coed team based on the student's "biological sex." RSA § 193:41, I–II(a).

45.51.  HB 1205 mandates that a student's "sex" shall be determined by "the student's biological sex on the student's official birth certificate . . . [i]ssued at or near the time of the student's birth . . . or certificate issued upon adoption." *Id.* § 193:41, III.

46.52.  HB 1205 mandates that each student who wishes to participate on a girls' team produce a birth certificate but imposes no requirements on students who wish to participate on a boys' team. If the birth certificate is deemed to be different from the student's original birth

14

certificate, that student must produce "other evidence" to support her eligibility to participate on the girls' team, and her family must pay the cost of producing that evidence. HB 1205 does not specify who determines whether a birth certificate is original, what criteria are used to make the determination, or what "other evidence" may be satisfactory to establish a student's eligibility. *Id.* § 193:41, IV.

47.53.  HB 1205 mandates that "[a]thletic teams or sports designated for females, women, or girls shall not be open to students of the male sex." *Id.* § 193:41, II(b).

48.54.  HB 1205 also forbids New Hampshire school districts and other entities from meeting their obligations under 20 U.S.C. § 1681 *et seq.* ("Title IX") (prohibiting sex discrimination in educational programs and activities and permitting reasonable regulations to maintain separate boys' and girls' sports teams) by providing that "[a] government entity, any licensing or accrediting organization, or an athletic association or organization shall not entertain a complaint, open an investigation, or take any other adverse action against a school for maintaining separate interscholastic sport activities or club athletic teams for students of the female sex," as defined in the statute. *Id.* § 193:41, VII.

49.55.  In addition to regulating schools and interscholastic athletic associations directly, HB 1205 further creates a private cause of action for any student to sue a school that "knowingly violat[es]" the statute if that student believes they have been "deprived of an athletic opportunity or suffers any direct or indirect harm as a result" because of a violation of HB 1205. *Id.* § 194:42, I.

56.    HB 1205 overrides the long-standing judgment and policy of New Hampshire educational and sports personnel by categorically banning any girl who is transgender from participating in girls' sports based on transgender status alone.

15

50.57.  On September 10, 2024, this Court issued a preliminary injunction that prevents the school districts and State Defendants from enforcing HB 1205, and directs that Plaintiffs may participate in girls' sports on the same terms and conditions as other girls.

## III.    The Executive Orders

### A.    The Gender Ideology Order

58.    On January 20, 2025, Inauguration Day, Defendant President Trump signed the Gender Ideology Order.

59.    The Gender Ideology Order declares the intention of the federal government to discriminate against transgender people and make it impossible for them to function in society.

60.    The Gender Ideology Order characterizes the recognition and inclusion of transgender people in society as "gender ideology," and prohibits the use of federal funds to "promote gender ideology."

61.    In response to the directives of the Gender Ideology Order, the United States Department of Education Office for Civil Rights issued a "Dear Colleague" letter on January 31, 2025 (revised February 4, 2025), signed by then-Acting Secretary of Education Craig Trainor, which stated that the Department of Education would interpret and enforce Title IX, consistent with the Gender Ideology Order, to mandate discrimination against transgender students.

### B.    The National Sports Ban

62.    On February 5, 2025, President Trump signed the National Sports Ban, which incorporates definitions from the Gender Ideology Order and orders the Defendant Secretary of Education, in coordination with the Defendant Attorney General, immediately to interpret and enforce Title IX so as to exclude transgender girls from playing on girls' sports teams.

63.    The National Sports Ban also directs the Secretary of Education "promptly" to "prioritize Title IX enforcement actions against educational institutions … that deny female

students [as defined by the Gender Ideology Order] an equal opportunity to participate in sports and athletic events by requiring them, in the women's category, to compete with or against" transgender girls or women.

64.    The National Sports Ban directs "[a]ll executive departments and agencies" to "rescind funding to programs that fail to comply with the policy established in this order," and directs the Department of Justice to "provide all necessary resources, in accordance with law, to relevant agencies to ensure expeditious enforcement of the policy established in this order."

65.    The Defendant Department of Education "promptly" took action. The very next day, on February 6, 2025, the Department of Education announced the opening of Title IX investigations into San Jose State University, the University of Pennsylvania, and the Massachusetts Interscholastic Athletic Association for maintaining policies that allow transgender girls and women to participate in sports programs. *See U.S. Department of Education to Investigate Title IX Violations in Athletics* (Feb. 6, 2025).

## ~~III.~~IV.    **Plaintiffs' Medical Treatment and Participation in Sports.**

### A.    **Parker Tirrell.**

~~51.~~66.  Parker Tirrell is a transgender girl, which means that she is a girl who was assigned male at birth.

~~52.~~67.  Parker is ~~15~~16 years old and ~~is entering her sophomore year at~~attends Plymouth Regional High School ~~in September 2024~~.

~~53.~~68.  Plymouth Regional High School is a part of the Pemi-Baker Regional School District, a district that is governed by the Pemi-Baker School Board.

~~54.~~69.  This is a recent picture of Parker:



55.70.  Parker knew from an early age that she was a girl. Beginning at age two, she dressed like a girl at home, including dresses and nightgowns, painted her nails, and chose the kinds of toys to play with that many other girls choose.

56.71.  While Parker was able to find support at home to live as a girl, she found it challenging to do so more publicly because she feared ostracism and rejection from the outside world. Over time, it because increasingly difficult for Parker to suppress who she was.

57.72.  During the summer between her seventh- and eighth-grade years (age 13), Parker's primary care physician referred her to a clinic specializing in gender issues and the diagnosis and treatment of gender dysphoria in adolescence.

58.73.  Parker has been diagnosed with gender dysphoria.

59.74.  Parker began her eighth-grade year at Plymouth Elementary School as a girl. Parker's mother spoke to the principal and other school personnel, who were supportive of her gender identity. Parker lived fully and authentically as a girl from that time on, including using female pronouns and dressing like other girls at school and elsewhere. She used school facilities and participated in gender-separated school activities as a girl.

60.75.  As part of her treatment for gender dysphoria, Parker has been receiving puberty-blocking medication since May of 2023. Parker began hormone therapy in December 2023. As a result, Parker has not and will not go through male puberty. She has not experienced the physiological changes, including muscle development, that increased testosterone levels would cause in a pubescent boy. Instead, the hormones she has received have caused her to develop physiological changes associated with puberty in females.

61.76.  Parker's parents, family, friends, teachers, teammates, and coaches at school have supported and continue to support her throughout her transition.

62.77.  Parker has always played sports, including in elementary, middle, and high school as well as in town recreational leagues. Sports has always been a source of joy—in fact, exhilaration—for Parker and has been the primary way that she makes friends and experiences a sense of belonging and connection to others.

63.78.  In eighth grade (2022–2023), Parker played on the girls' soccer and track teams at Plymouth Elementary School.

64.79.  Although Parker has participated in a variety of sports, including track and basketball, soccer is her real passion.

65.80.  In ninth grade (2023–2024) Parker played on the girls' soccer team at Plymouth Regional High School. Although the team experienced a challenging season without winning a

single game, Parker loved playing and continued to learn important lessons through her sport, including the ability to work hard to improve and to accept the difficulty of losing while developing resilience and confidence.

66.81.  ~~As Parker enters tenth grade this year, she is~~Parker was excited to rejoin her teammates on the girls' soccer team ~~for the current~~during her tenth grade season that began on August 30, 2024.

67.82.  Parker's health and well-being depend on being able to follow her prescribed treatment, which includes living as a girl in all aspects of her life.

68.83.  Playing on a boys' team is not an option for Parker. Parker is a girl. It would be painful and humiliating for Parker to be forced to play on a boys' team. It would also undermine her treatment for gender dysphoria.

69.84.  If Parker cannot play girls' sports, she won't play sports at all.

70.85.  HB 1205 thus denies Parker the opportunity to participate in school sports entirely, solely because she is transgender. It deprives her of the numerous social, educational, physical, and emotional benefits that playing on the girls' soccer team provides her.

86.    If the provisions of HB 1205 are not enjoined as to Parker, it will cause Parker to suffer immediate and irreparable psychological, emotional, developmental, and educational harm that will negatively affect her educational and social experience.

87.    The Gender Ideology Order and the National Sports Ban prohibit federal funding to any school that allows Parker to play on sports teams designated for girls.

71.88.  By prioritizing Title IX enforcement action against schools that allow transgender girls and women to play on girls' and women's sports teams, the National Sports Ban puts Parker's ability to continue playing on girls' sports teams at risk.

**B.      Iris Turmelle.**

~~72.~~89.  Iris Turmelle is a ~~14~~15-year-old transgender girl who is ~~entering~~ in her freshman year at Pembroke Academy, a public high school in New Hampshire.

~~73.~~90.  Pembroke Academy is a part of the Pembroke School District, a district that is governed by the Pembroke School Board.

~~74.~~91.  This is a recent picture of Iris:



~~75.~~92.  As a toddler and young child, Iris expressed that she is a girl. She would ask Santa Claus to make her into a girl for Christmas. When her mother jokingly referred to her as "sir" in "a playful British accent," Iris responded, "No, it's 'madam.'" Iris loved dresses and resisted wearing boy-style clothes.

~~76.~~93.  Iris has lived her life as a girl since spring of first grade. Her teachers understood Iris's identity and supported her.

~~77.~~94.  In the summer of 2017, after Iris's first-grade year, Iris's parents took her to an endocrinologist, who diagnosed her with gender dysphoria.

~~78.~~95.  Iris's parents subsequently took her to a clinic specializing in the diagnosis and treatment of gender dysphoria in children and adolescents. The gender clinic confirmed Iris's diagnosis of gender dysphoria.

~~79.~~96.  As part of her treatment for gender dysphoria, Iris has been receiving puberty-blocking medication since July 2021, following her fifth-grade year at the age of 11. She started hormone therapy in May 2023 at the end of her seventh-grade year at the age of 13 ½. As a result, Iris has not and will not go through male puberty. She has not experienced the physiological changes, including muscle development, that increased testosterone levels would cause in a pubescent boy. Instead, the hormones she has received have caused her to develop many of the physiological changes associated with puberty in females.

~~80.~~97.  Iris's parents, family, friends, teachers, teammates, and coaches at school have supported and continue to support her throughout her transition.

~~81.~~98.  Iris has tried a variety of sports in the past. She participated in community youth soccer as a young child. She also took up Tae Kwon Do for a time but dropped it after a short while. More recently, she participated in the intramural tennis club in seventh grade. She immensely enjoyed tennis, but it was not offered in her eighth-grade year. Iris also tried out for the softball team in middle school but did not make the cut.

~~82.~~99.  As Iris enters ninth grade, she is excited to play on the tennis and track and field teams at her new high school. Because Pembroke Academy takes students from several area "feeder" middle schools, Iris hopes that participation in these sports will help her to make

additional friends, establish a peer group, and cope with the stresses she experiences in life. She also wants to become more physically active for her health.

83.100.        Iris's health and well-being depend on being able to follow her prescribed treatment, which includes living as a girl in all aspects of her life.

84.101.        Playing on a boys' team is not an option for Iris. Iris is a girl. It would be painful and humiliating for Iris to be forced to play on a boys' team. It would also undermine her treatment for gender dysphoria.

85.102.        If Iris cannot play girls' sports, she won't play sports at all.

86.103.        HB 1205 thus denies Iris the opportunity to participate in school sports entirely, solely because she is transgender. It deprives her of the numerous social, educational, physical, and emotional benefits that playing on the girls' tennis and track and field teams would provide her.

104.    If the provisions of HB 1205 are not enjoined as to Iris, it will cause Iris to suffer immediate and irreparable psychological, emotional, developmental, and educational harm that will negatively affect her educational and social experience.

105.    The Gender Ideology Order and the National Sports Ban prohibit federal funding to any school that allows Iris to play on sports teams designated for girls.

106.    By prioritizing Title IX enforcement action against schools that allow transgender girls and women to play on girls' and women's sports teams, the National Sports Ban puts Iris's ability to play on girls' sports teams at risk.

87.

# CLAIMS FOR RELIEF

## COUNT I

### (FOURTEENTH AMENDMENT – EQUAL PROTECTION AGAINST STATE AND PEMI-BAKER DEFENDANTS)

(By Parker Tirrell against Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; and Pemi-Baker Regional School District)

88.107.    Plaintiff Parker Tirrell incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

89.108.    Plaintiff Parker Tirrell brings this Count against Defendants Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; the members of the New Hampshire State Board of Education in their official capacities; and Pemi-Baker Regional School District.

90.109.    The Equal Protection Clause of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

91.110.    Defendants are all governmental actors acting under color of state law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment.

92.111.    HB 1205 singles out and categorically bars Plaintiff Parker Tirrell from playing and competing on girls' teams because she is a transgender girl and thereby discriminates against her on the basis of sex and transgender status, both facially and as applied, in violation of the Equal Protection Clause of the Fourteenth Amendment.

93.112.    Under the Equal Protection Clause, classifications based on sex and transgender status are subject to heightened scrutiny and are presumptively unconstitutional

absent a showing by the government that the discrimination has an "exceedingly persuasive" rationale and is substantially related to an important state interest.

94.113.        HB 1205 fails heightened scrutiny as to Plaintiff Parker Tirrell because it is not substantially related to any important state interest. Plaintiff Parker Tirrell, who identifies and lives as a girl and has not and will not undergo male puberty, is similarly situated to other girls with respect to her participation in sports teams at school. HB 1205 as it applies to Plaintiff Parker Tirrell cannot survive rational basis review either, because it lacks any rational basis, rests on stereotypes and misconceptions, and undermines rather than advances any alleged purpose.

## COUNT II

(VIOLATION OF TITLE IX, 20 U.S.C. § 1681 *et seq.* AGAINST STATE AND PEMI-BAKER DEFENDANTS)

(By Parker Tirrell against Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; and Pemi-Baker Regional School District)

95.114.        Plaintiff Parker Tirrell incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

96.115.        Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

97.116.        Plaintiff Parker Tirrell brings this Count against Defendants Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; the members of the New Hampshire State Board of Education in their official capacities; and Pemi-Baker Regional School District.

98.117.    Under Title IX, discrimination "on the basis of sex" encompasses discrimination against individuals because they are transgender.

99.118.    Title IX forbids sex discrimination in athletic programs.

100.119.    Plymouth Regional High School and Pemi-Baker Regional School District receive federal funding and are subject to the provisions of Title IX.

101.120.    By barring Plaintiff Parker Tirrell from playing on girls' sports teams because she is transgender, Defendants exclude her from, deny her the benefits of, and subject her to discrimination in educational programs and activities "on the basis of sex," in violation of her rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

## COUNT III

### (FOURTEENTH AMENDMENT – EQUAL PROTECTION AGAINST STATE AND PEMBROKE DEFENDANTS)

(By Iris Turmelle against Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; and Pembroke School District)

102.121.    Plaintiff Iris Turmelle incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

103.122.    Plaintiff Iris Turmelle brings this Count against Defendants Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; the members of the New Hampshire State Board of Education in their official capacities; and Pembroke School District.

104.123.    The Equal Protection Clause of the Fourteenth Amendment, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

105.124.    Defendants are all governmental actors acting under color of state law for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment.

106.125.    HB 1205 singles out and categorically bars Plaintiff Iris Turmelle from playing and competing on girls' teams because she is a transgender girl and thereby discriminates against her on the basis of sex (including her transgender status), both facially and as applied, in violation of the Equal Protection Clause of the Fourteenth Amendment.

107.126.    Under the Equal Protection Clause, classifications based on sex are subject to heightened scrutiny and are presumptively unconstitutional absent a showing by the government that the discrimination has an "exceedingly persuasive" rationale and is substantially related to an important state interest.

108.127.    HB 1205 fails heightened scrutiny as to Plaintiff Iris Turmelle because it is not substantially related to any important state interest. Plaintiff Iris Turmelle, who identifies and lives as a girl and has not and will not undergo male puberty, is similarly situated to other girls with respect to her participation in sports teams at school. HB 1205 as it applies to Plaintiff Iris Turmelle cannot survive rational basis review either because it lacks any rational basis, rests on stereotypes and misconceptions, and undermines rather than advances any alleged purpose.

**COUNT IV**

(VIOLATION OF TITLE IX, 20 U.S.C. § 1681 *et seq.* AGAINST STATE AND PEMBROKE DEFENDANTS)

(By Iris Turmelle against Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; and Pembroke School District)

109.128.    Plaintiff Iris Turmelle incorporates all preceding paragraphs of the Complaint as though fully set forth herein.

110.129.     Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

111.130.     Plaintiff Iris Turmelle brings this Count against Defendants Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; the members of the New Hampshire State Board of Education in their official capacities; and Pembroke School District.

112.131.     Under Title IX, discrimination "on the basis of sex" encompasses discrimination against individuals because they are transgender.

113.132.     Title IX forbids sex discrimination in athletic programs.

114.133.     Pembroke Academy and Pembroke School District receive federal funding and are subject to the provisions of Title IX.

115.134.     By barring Plaintiff Iris Turmelle from playing on girls' sports teams because she is transgender, Defendants exclude her from, deny her the benefits of, and subject her to discrimination in educational programs and activities "on the basis of sex," in violation of her rights under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

## COUNT V

### (VIOLATION OF EQUAL PROTECTION COMPONENT OF THE FIFTH AMENDMENT AGAINST FEDERAL DEFENDANTS)

(By Parker Tirrell and Iris Turmelle against Donald Trump, in his official capacity as President of the United States, the U.S. Department of Justice, Pamela Bondi, in her official capacity as United States Attorney General, the U.S. Department of Education, and Denise L. Carter, in her official capacity as Acting Secretary of Education)

135.    Plaintiffs Parker Tirrell and Iris Turmelle incorporate all preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

136.    Plaintiffs Parker Tirrell and Iris Turmelle bring this Count against Defendants Donald Trump, in his official capacity as President of the United States, the U.S. Department of Justice, Pamela Bondi, in her official capacity as United States Attorney General, the U.S. Department of Education, and Denise L. Carter, in her official capacity as Acting Secretary of Education.

137.    The Equal Protection of the Fourteenth Amendment, which is incorporated into the Fifth Amendment, protects individuals from discrimination on the basis of sex.

138.    The National Sports Ban and the Gender Ideology Order discriminate on their face, and direct the Federal Defendants to discriminate based on sex and transgender status.

139.    The National Sports Ban and the Gender Ideology Order facially discriminate based on sex because they direct agencies to target investigations and rescind federal funding for entities whose sports programs include transgender girls on girls' sports teams.

140.    The National Sports Ban and the Gender Ideology Order were issued for the discriminatory purpose of preventing transgender student athletes from participating in school sports, which is not a legitimate governmental interest under any standard of review.

141.    The National Sports Ban and the Gender Ideology Order violate the equal protection rights of Plaintiffs and other transgender girls and women under the Fifth Amendment.

## COUNT VI

### (ULTRA VIRES – CONFLICTS WITH STATUTORY LAW – AGAINST FEDERAL DEFENDANTS)

(By Parker Tirrell and Iris Turmelle against Donald Trump, in his official capacity as President of the United States, the U.S. Department of Justice, Pamela Bondi, in her official capacity as United States Attorney General, the U.S. Department of Education, and Denise L. Carter, in her official capacity as Acting Secretary of Education)

142.    Plaintiffs Parker Tirrell and Iris Turmelle incorporate all preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

143.    Plaintiffs Parker Tirrell and Iris Turmelle bring this Count against Defendants Donald Trump, in his official capacity as President of the United States, the U.S. Department of Justice, Pamela Bondi, in her official capacity as United States Attorney General, the U.S. Department of Education, and Denise L. Carter, in her official capacity as Acting Secretary of Education.

144.    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

145.    Under Title IX, discrimination "on the basis of sex" encompasses discrimination against individuals because they are transgender.

146.    The National Sports Ban and Gender Ideology Order facially discriminate based on sex and conflict with Title IX.

147.    The National Sports Ban was issued for the discriminatory purpose of preventing transgender people from participating in federally funded sports programs.

148.    The Federal Defendants do not have the power to override Section 1681 of Title IX and require federal grantees to engage in the discrimination that Title IX prohibits.

149.    Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the National Sports Ban and the Gender Ideology Order are *ultra vires* as they impermissibly direct agencies to take actions in violation of statutory laws that prohibit discrimination on the basis of sex.

150.    Plaintiffs are further entitled to an injunction preventing the Federal Defendants from enforcing or implementing the National Sports Ban and the Gender Ideology Order.

## COUNT VII

### (ULTRA VIRES – PRESIDENTIAL ACTION IN EXCESS OF AUTHORITY; USURPING THE LEGISLATIVE FUNCTION; VIOLATION OF BICAMERALISM AND PRESENTMENT CLAUSES AGAINST FEDERAL DEFENDANTS)

(By Parker Tirrell and Iris Turmelle against Donald Trump, in his official capacity as President of the United States, the U.S. Department of Justice, Pamela Bondi, in her official capacity as United States Attorney General, the U.S. Department of Education, and Denise L. Carter, in her official capacity as Acting Secretary of Education)

151.    Plaintiffs Parker Tirrell and Iris Turmelle incorporate all preceding paragraphs of the Second Amended Complaint as though fully set forth herein.

152.    Plaintiffs Parker Tirrell and Iris Turmelle bring this Count against Donald Trump, in his official capacity as President of the United States, the U.S. Department of Justice, Pamela Bondi, in her official capacity as United States Attorney General, the U.S. Department of Education, and Denise L. Carter, in her official capacity as Acting Secretary of Education.

153.    The Federal Defendants, as part of the Executive branch of the United States government, cannot directly and unilaterally amend or cancel appropriations Congress has duly enacted, nor can the Federal Defendants order federal agencies to do so.

154.    The National Sports Ban directs all executive departments and agencies to rescind funding to programs that fail to comply with its policies—independent of Title IX and without regard to any statute authorizing those grants, any applicable regulations, or the terms governing each grant.

155.    By directing agencies to terminate or withhold congressionally appropriated grants based on the President's own policy preferences, the National Sports Ban, in conjunction

with the Gender Ideology Order, attempts to amend, repeal, rescind, or circumvent duly enacted federal appropriations.

156.    By directing agencies to terminate or withhold congressionally appropriated grants, the National Sports Ban and the Gender Ideology Order attempt to expend public funds to advance the President's policy preferences, rather than those of Congress. These actions exceed the President's Article II powers, unconstitutionally infringe upon Congress's powers, and attempt to amend federal legislation while bypassing Article I's Bicameralism and Presentment Clauses.

157.    Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to a declaration that the National Sports Ban and the Gender Ideology Order violate the separation of powers and impermissibly abrogate to the Executive power that is reserved to Congress.

158.    Plaintiffs are further entitled to an injunction preventing the Federal Defendants from enforcing or implementing the National Sports Ban and the Gender Ideology Order.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant the following relief:

I.    A declaration by this Court that:

    a.    HB 1205 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution facially and as applied to Plaintiffs;

    b.    HB 1205 violates Title IX, 20 U.S.C. § 1681 *et seq*. facially and as applied to Plaintiffs; and

    b.

    c.    Defendants may not enforce HB 1205.;

c.

II.    Entry of a preliminary and permanent injunction enjoining:

    a.    Defendant Pemi-Baker Regional School District and its employees, agents, appointees, or successors from enforcing or threatening to enforce HB 1205 as to Plaintiff Parker Tirrell, and requiring Defendant Pemi-Baker Regional School District and its employees, agents, appointees, or successors to permit Plaintiff Parker Tirrell to try out for and play on the school sports teams designated for girls on the same terms and conditions as other girls;

    b.    Defendant Pembroke School District and its employees, agents, appointees, or successors from enforcing or threatening to enforce HB 1205 as to Plaintiff Iris Turmelle, and requiring Defendant Pembroke School District and its employees, agents, appointees, or successors to permit Plaintiff Iris Turmelle to try out for and play on the school sports teams designated for girls on the same terms and conditions as other girls; and

    c.    Defendants Frank Edelblut, in his official capacity as Commissioner of the New Hampshire Department of Education; Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Laboe, in their official capacities as members of the New Hampshire State Board of Education; and their employees, agents, appointees, or successors from enforcing or threatening to enforce HB 1205 as to Plaintiffs and all transgender girls in the State of New Hampshire, and

requiring said Defendants and their employees, agents, appointees, or
successors to permit Plaintiffs and all transgender girls in the State of New
Hampshire to try out for and play on the school sports teams designated
for girls on the same terms and conditions as other girls.

III.    A declaration by this Court that the Gender Ideology Order, including Sections 2
and 3(g), and the National Sports Ban are unconstitutional and unlawful;

III.IV.  Entry of a permanent injunction enjoining Defendants President Trump, Attorney
General Bondi, the U.S. Department of Justice, Acting Secretary Carter, and the U.S.
Department of Education, and their employees, agents, appointees, or successors from enforcing
or threatening to enforce the Gender Ideology Order, including Sections 2 and 3(g), and the
National Sports Ban, or otherwise withholding federal funding from Plaintiffs' schools, or other
recipients of federal funding, based on their position that transgender girls and women are
prohibited on playing on sports teams designated for girls and women.

IIIV.    Award Plaintiffs their nominal damages, as well as their costs, expenses, and
reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

IVI.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

PARKER TIRRELL, by her parents and
next friends SARA TIRRELL and
ZACHARY TIRRELL,

and

IRIS TURMELLE, by her parents and next
friends AMY MANZELLI and CHAD
TURMELLE,

By and through their attorneys,

Kevin J. DeJong (NH Bar No. 17633)
kdejong@goodwinlaw.com

Louis L. Lobel* (MA Bar No. 693292)
llobel@goodwinlaw.com
Elaine H. Blais* (MA Bar No. 656142)
eblais@goodwinlaw.com
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210

Samira Seraji* (CA Bar No. 338979)
sseraji@goodwinlaw.com
GOODWIN PROCTER LLP
601 S. Figueroa Street
Suite 4100
Los Angeles, CA 90017

Ben See* (NY Bar No. 6019202)
bsee@goodwinlaw.com
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, NY 10018

*Admitted *pro hac vice*.

~~October 31~~February 12, ~~2024~~2025

/s/ Chris Erchull
Chris Erchull (NH Bar No. 266733)
cerchull@glad.org
Bennett H. Klein* (MA Bar No. 550702)
bklein@glad.org
Jennifer L. Levi* (MA Bar No. 562298)
jlevi@glad.org
Michael Haley (NH Bar No. 270236)
mhaley@glad.org
GLBTQ LEGAL ADVOCATES & DEFENDERS
18 Tremont Street, Suite 950
Boston, MA 02108
(617) 426-1350

Gilles Bissonnette (NH Bar No. 265393)
gilles@aclu-nh.org
Henry Klementowicz (NH Bar No. 21177)
henry@aclu-nh.org
AMERICAN CIVIL LIBERTIES UNION OF
NEW HAMPSHIRE FOUNDATION
18 Low Avenue
Concord, NH 03301
(603) 224-5591