## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**Parker Tirrell**, by her parents and next friends Sara Tirrell and Zachary Tirrell, and

**Iris Turmelle**, by her parents and next friends, Amy Manzelli and Chad Turmelle,

*Plaintiffs,*

v.

**Frank Edelblut**, *in his official capacity as Commissioner of the New Hampshire Department of Education;*

**Andrew Cline, Kate Cassady, Ann Lane, Philip Nazzaro, Rajesh Nair, James Fricchione, and James Leboe**, *in their official capacities as members of the New Hampshire State Board of Education;*

**Pemi-Baker Regional School District**;

**Pembroke School District;**

**Donald J. Trump**, *in his official capacity as President of the United States*, 1600 Pennsylvania Avenue NW, Washington, DC 20220;

**U.S. Department of Justice**, 950 Pennsylvania Avenue NW, Washington, DC 20530;

**Pamela Bondi**, *in her official capacity as Attorney General of the United States*, 950 Pennsylvania Avenue NW, Washington, DC 20530;

Civil Case No. 1:24-cv-00251-LM-TSM

**U.S. Department of Education**,
400 Maryland Avenue SW,
Washington, DC 20202; and

**Denise L. Carter**, *in her official capacity as Acting Secretary of the United States Department of Education*, 400 Maryland Avenue SW,
Washington, DC 20202.

*Defendants,*

and

**Female Athletes United**,

*Proposed Intervenor-Defendant.*

## INTERVENOR-DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

# TABLE OF CONTENTS

Table of Authorities .................................................................................................. ii

Introduction .......................................................................................................... 1

Background ........................................................................................................... 2

Argument .............................................................................................................. 4

I.     The Court should allow permissive intervention so that affected female athletes can fully be heard. .................................................................. 5

II.    The Court should grant intervention as of right because all the factors are met.................................................................................................... 7

    A.    This motion is timely.......................................................................... 7

    B.    FAU has a sufficient interest in this case. ......................................... 9

    C.    FAU's interest will be hindered if the plaintiffs get their requested relief. .................................................................................................. 11

    D.    The parties do not adequately represent FAU's interests.................... 11

Conclusion............................................................................................................ 15

Certificate of Service............................................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Cases**

*Adams ex rel. Kasper v. School Board of St. Johns County*,
  57 F.4th 791 (11th Cir. 2022) ...................................................... 10, 14

*B.P.J. v. West Virginia State Board of Education*,
  No. 2:21-CV-00316, 2021 WL 5711547 (S.D. W. Va. Dec. 1, 2021) .................. 6

*Berger v. North Carolina State Conference of the NAACP*,
  597 U.S. 179 (2022) ............................................................ 12

*Board of Education of the Highland Local School District v. U.S. Department of Education*,
  No. 2:16-CV-524, 2016 WL 4269080 (S.D. Ohio Aug. 15, 2016) ...................... 6

*Brannum v. Overton County School Board*,
  516 F.3d 489 (6th Cir. 2008) ...................................................... 10, 14

*Callahan v. Brookdale Senior Living Communities, Inc.*,
  42 F.4th 1013 (9th Cir. 2022) ...................................................... 12

*Clark ex rel. Clark v. Arizona Interscholastic Ass'n*,
  695 F.2d 1126 (9th Cir. 1982) ...................................................... 10

*Cohen v. Brown University*,
  991 F.2d 888 (1st Cir. 1993) ...................................................... 10

*Cotter v. Massachusetts Ass'n of Minority Law Enforcement Officers*,
  219 F.3d 31 (1st Cir. 2000) ...................................................... 9–15

*Daggett v. Commission on Governmental Ethics & Election Practices*,
  172 F.3d 104 (1st Cir. 1999) ...................................................... 11

*Doe No. 1 v. Bethel Local School District Board of Education*,
  No. 3:22-cv-337, 2023 WL 348272 (S.D. Ohio Jan. 20, 2023) ...................... 6

*Dorsett v. County of Nassau*,
  283 F.R.D. 85 (E.D.N.Y. 2012) ...................................................... 4

*Geiger v. Foley Hoag LLP Retirement Plan*,
  521 F.3d 60 (1st Cir. 2008) ...................................................... 8

*Halland v. Brackeen*,
  599 U.S. 255 (2023) ............................................................ 14

*Hecox v. Little*,
    479 F. Supp. 3d 930 (D. Idaho 2020) ........................................................... 6, 11

*Hernandez v. Commissioner of Internal Revenue*,
    819 F.2d 1212 (1st Cir. 1987) ......................................................................... 14

*Melone v. Coit*,
    100 F.4th 21 (1st Cir. 2024) ........................................................................... 5, 9

*Public Service Company of New Hampshire v. Patch*,
    136 F.3d 197 (1st Cir. 1998) ............................................................................... 9

*R & G Mortgage Corp. v. Federal Home Loan Mortgage Corp.*,
    584 F.3d 1 (1st Cir. 2009) ................................................................................... 7

*Securities & Exchange Commission v. LBRY, Inc.*,
    26 F.4th 96 (1st Cir. 2022) .................................................................................. 7

*Soule v. Connecticut Ass'n of Schools*,
    No. 3:20-CV-00201, 2024 WL 4680533 (D. Conn. Nov. 5, 2024) .................... 13

*Soule v. Connecticut Ass'n of Schools, Inc.*,
    No. 3:20-cv-00201, 2021 WL 1617206 (D. Conn. April 25, 2021) ...................... 6

*Soule v. Connnecticut Ass'n of Schools, Inc.*,
    90 F.4th 34 (2d Cir. 2023) ................................................................................... 7

*Students & Parents for Privacy v. U.S. Department of Education*,
    No. 16-CV-4945, 2016 WL 3269001 (N.D. Ill. June 15, 2016) ........................... 6

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
    308 F.R.D. 39 (D. Mass. 2015) ........................................................................... 8

*Tennessee v. U.S. Department of Education*,
    No. 3:21-cv-308 (E.D. Tenn. Sept. 14, 2022) .................................................... 6

*T-Mobile Northeast LLC v. Town of Barnstable*,
    969 F.3d 33 (1st Cir. 2020) ................................................................................. 6

*Travelers Indemnity Co. v. Bastianelli*,
    250 F.R.D. 82 (D. Mass. 2008) ........................................................................... 4

*Tuan Anh Nguyen v. Immigration Naturalization Service*,
    533 U.S. 53 (2001) .............................................................................................. 2

*United States v. DiPina*,
    178 F.3d 68 (1st Cir. 1999) ............................................................................... 15

*Victim Rights Law Center v. Rosenfelt*,
    988 F.3d 556 (1st Cir. 2021) ...................................................................... 12, 15

**Rules**

Federal Rule of Civil Procedure 24 ........................................................... 3–5, 7, 11, 15

**Regulations**

34 C.F.R. § 106.41 ...................................................................................... 13, 14

**Other Authorities**

Aditi Bhargava et al., *Considering Sex as a Biological Variable in Basic and*
    *Clinical Studies: An Endocrine Society Scientific Statement*,
    Endocrine Reviews Vol. 42, No. 3 (2021)........................................................... 2

Executive Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025)........................... 2, 10

Executive Order No. 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025)......................... 2, 3, 10

H.R. 1205, Reg. Sess. (N.H. 2024)............................................................ 2, 5, 8–10, 13

# INTRODUCTION

This case is not unique. Over the past few years, courts have faced case after case about who can rightfully access school locker rooms, restrooms, showers, and women's sports teams. Courts have differed on the merits. But they have all agreed on one thing: those most affected should be allowed to intervene. Courts have readily allowed those who identify as transgender to intervene to argue for the right to access private spaces and women's sports teams. And courts have allowed women to intervene to defend their right to access female-only spaces and compete in female-only sports. For good reason—it is those intervenors who are directly affected. It is their rights at stake. And excluding one side directly affected could well lead to excluding the other. So courts have readily allowed either side to intervene so that affected parties are heard and the issues fully developed.

This case is no different. Female Athletes United is an association with current female athletes across the country—including New Hampshire—devoted to protecting women's sports and private spaces. FAU's members have lost to males in school sports and have lost their privacy rights to males entering private spaces. They expect both to happen again. So they seek to intervene to defend New Hampshire's Women's Sports Act and President Trump's recent executive orders preserving women's spaces and sports for women. Whether this Court ultimately agrees with FAU on the merits, it should allow FAU to intervene. FAU pursues unrepresented interests and brings arguments and perspectives other parties don't. As those most directly affected, its members deserve to be heard here no less than the plaintiffs.

## BACKGROUND

**1.** This case began as an as-applied challenge to New Hampshire's 2024 House Bill 1205. In August 2024, two male athletes who identify as female sued New Hampshire officials, alleging that HB 1205 improperly stopped them from playing on their schools' female sports teams.[1] Compl., ECF No. 4 at 26–27. The Court granted a temporary-restraining order and a preliminary injunction against the law—giving Plaintiffs only the as-applied relief they asked for. *See* Order, ECF No. 70 at 47. Then on November 8th, Plaintiffs filed an amended complaint seeking facial relief against HB 1205. Am. Compl., ECF No. 78 at 23. And the parties agreed to a discovery plan, while some defendants moved to dismiss.

President Trump then issued two executive orders relating to gender ideology and women's sports. *See* Exec. Order No. 14168, 90 Fed. Reg. 8615 (Jan. 20, 2025); Exec. Order No. 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025). The gender-ideology executive order instructs federal agencies and employees to "protect men and women as biologically distinct sexes." 90 Fed. Reg. 8615 § 3(b). To that end, it instructs agencies "to ensure that intimate spaces … are designated by sex and not identity." *Id.* § 4(d). And the women's-sports executive order instructs that education institutions receiving federal funds cannot "deny women an equal opportunity to participate in sports." 90 Fed. Reg. 9279 § 1. That includes directing the Secretary of Education to "protect all-female athletic opportunities and all-female locker

---

[1] FAU'S arguments are rooted in the biological differences between males and females. So it uses the terms "women," "girls," and "females" to refer to biological females and the terms "men," "boys," and "males" to refer to biological males. *See Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 63–64, 68 (2001) (explaining there "is nothing irrational or improper in the recognition" of certain biological differences); Aditi Bhargava et al., *Considering Sex as a Biological Variable in Basic and Clinical Studies: An Endocrine Society Scientific Statement*, Endocrine Reviews Vol. 42, No. 3, 220–21 (2021), https://perma.cc/VMH3-WA9H (explaining sex is a biological concept distinct from gender).

rooms" and to bring enforcement actions against schools that require female students, "in the women's category, to compete with or against or to appear unclothed before males." *Id.* § 3(a)(ii)–(iii).

The executive orders prompted Plaintiffs to move to amend their complaint. Mot., ECF No. 94 at 1–2. They asked to add several federal defendants and several claims about the executive orders. And they requested facial relief from both HB 1205 and the executive orders. Second Am. Compl., ECF No. 95 at 32–34. That included a permanent injunction prohibiting the federal defendants from enforcing the executive orders or otherwise withholding funds from "recipients of federal funding" based on the position that male students who identify as female are prohibited from playing on women's teams. *Id.* at 34.

About a week ago, on February 12th, the Court granted the motion to amend. Plus, it denied the pending motion to dismiss without prejudice and directed the parties to confer about an updated scheduling order. Put simply, the amended complaints—especially the second one—changed the game. The case went from an as-applied challenge to a New Hampshire law in August, to a facial challenge to that law in November, to an added facial challenge to the executive orders applying across the country. Given that expanded scope, FAU moves to intervene under Federal Rule of Civil Procedure 24(a) and (b).

**2.** FAU is an organization that defends women's sports. Brown Decl. ¶ 3. It works to ensure that women and girls get to compete on a safe and level playing field. *Id.* And it seeks to uphold their privacy rights in locker rooms and private spaces because those rights are essential to participating in athletics. *Id.* Its members include current female athletes. *Id.* ¶ 5. Many of those athletes compete on the girls' teams at their schools receiving federal funding. *Id.* Those athletes compete on teams across the country, including in New Hampshire. *Id.* ¶¶ 34–37; B.W. Decl. ¶¶ 1–3; And some of those athletes have had to compete against male athletes who

identify as female. Brown Decl. ¶ 30; B.W. Decl. ¶¶ 18–20; K.D. Decl. ¶¶ 16–21. That even includes a female athlete who has had to compete against one of the plaintiffs.

One of FAU's members is K.D., who competed against Parker Tirrell while playing soccer for her high school girls' team. K.D. Decl. ¶¶ 4, 16–18. She also competed against Tirrell on multiple occasions in an indoor soccer league. *Id.* ¶¶ 19–22. And K.D. is not alone in having had to compete against males who identify as female. For example, another of FAU's members is B.W.—also a female athlete playing on the girls' soccer team at a New Hampshire public school. Brown Decl. ¶¶ 36–37; B.W. Decl. ¶¶ 1–4. This past fall, B.W. had to play against another team with a male goalie. B.W. Decl. ¶ 19. Similarly, another member going to public school in Washington had to compete against a male athlete who identified as female in cross country and track. A.K. Decl. ¶ 9. And another member in West Virginia had to compete against a similar athlete. A.C. Decl. ¶¶ 9–10. Not only that, she had to change clothes with that male athlete in the locker room while enduring vulgar, sexual comments. *Id.* ¶¶ 50, 74–81. In other words, FAU's members have experienced firsthand what sports and life are like without protections afforded by the executive orders and HB 1205. They deserve to be heard in this case.

## ARGUMENT

The Court should allow FAU to intervene under Rule 24(a) and (b). Because FAU meets either standard, it makes little difference which one the Court starts with—except the latter analysis is simpler. So it makes sense to start with permissive intervention. *See, e.g.*, *Dorsett v. County of Nassau*, 283 F.R.D. 85, 90 (E.D.N.Y. 2012) (not reaching intervention as of right "because permissive intervention [was] warranted under Rule 24(b)"); *Travelers Indem. Co. v. Bastianelli*, 250 F.R.D. 82, 84 & n.3 (D. Mass. 2008) (same). But either way, the Court should grant intervention.

4

## I.  The Court should allow permissive intervention so that affected female athletes can fully be heard.

Rule 24(b) governs permissive intervention. It gives a court discretion to allow intervention if a would-be intervenor has "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). That discretion is broad, allowing a court to "consider 'almost any factor rationally relevant.'" *Melone v. Coit*, 100 F.4th 21, 28 (1st Cir. 2024) (citation omitted). But one factor is whether intervention would "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Start with the threshold requirement. FAU has defenses that share common questions of law and fact with the main action. There can be no dispute about that. FAU intends to defend the validity of the executive orders and HB 1205. That includes arguing that none violate the Equal Protection Clause or Title IX. It includes arguing that its members have a substantive-due-process right to privacy in restrooms and locker rooms. And it includes arguing that Title IX and its regulations not just allow but *require* female-only sports teams. Each of these arguments responds to Plaintiffs' claims about the executive orders and HB 1205. *See* Second Am. Compl., ECF No. 95 at 23–32.

Turn to undue delay or prejudice. Allowing intervention here will cause neither. This case changed significantly when Plaintiffs filed their amended complaint about a week ago to challenge the recent executive orders. That brought in several new claims and defendants, caused the Court to deny the pending motion to dismiss without prejudice, and reset the briefing schedule. Put differently, that amendment substantially changed this litigation and reset the clock, making this case firmly in the early stages. The federal defendants have not even entered their appearances yet. Adding another set of defendants now will not delay or prejudice anything.

Finally, consider the key reason this Court should allow intervention: female athletes deserve to be heard in this case. It could affect their ability to compete on a safe and level playing field and have needed privacy in locker rooms, restrooms, and private spaces. They are the ones who will feel the real-world consequences of this case—no less than the plaintiffs. And they have a perspective to offer different from any of the other defendants that will be helpful in fully developing the record. *See T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 41 (1st Cir. 2020) ("[A] district court mulling permissive intervention is free to consider whether 'the applicants may be helpful in fully developing the case.'" (citation omitted)).

That's why time and again courts have allowed both female athletes and male athletes who identify as female, or organizations representing them, to intervene in cases like this. *See B.P.J. v. W. Va. State Bd. of Educ.*, No. 2:21-CV-00316, 2021 WL 5711547, at *3 (S.D. W. Va. Dec. 1, 2021) (allowing female athlete to intervene); Mem. Op. & Order, *Tennessee v. U.S. Dep't of Educ.*, No. 3:21-cv-308 (E.D. Tenn. Sept. 14, 2022), ECF No. 102 (same); *Hecox v. Little*, 479 F. Supp. 3d 930, 957–58 (D. Idaho 2020) (same); Order, *Soule v. Conn. Ass'n of Schs., Inc.*, No. 3:20-cv-00201, 2021 WL 1617206 (D. Conn. April 25, 2021), ECF No. 93 (allowing male athletes who identify as female to intervene). Likewise, courts have allowed male students who identify as female to intervene in cases about locker rooms and restrooms. *See Doe No. 1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*, No. 3:22-cv-337, 2023 WL 348272, at *2 (S.D. Ohio Jan. 20, 2023); *Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*, No. 2:16-CV-524, 2016 WL 4269080, at *2–4 (S.D. Ohio Aug. 15, 2016); *Students & Parents for Priv. v. U.S. Dep't of Educ.*, No. 16-CV-4945, 2016 WL 3269001, at *3 (N.D. Ill. June 15, 2016)

The Court should allow the same here. Otherwise, female athletes' voices will be shut out when they are the ones directly affected, no less than the plaintiffs. *See, e.g.*, *Hecox*, 479 F. Supp. at 952 ("Just as Plaintiffs have an interest in seeking equal

opportunity for transgender female student athletes, the Proposed Intervenors have an interest in seeking equal opportunity for cisgender female student athletes.").[2] That would unfairly silence them here when both female athletes and male athletes who identify as female have been able to be heard in case after case. And it would set an example for future cases, which could affect both sets of athletes' ability to intervene. That's good for no one. The Court should permit FAU to intervene so that its members can be heard.

## II.    The Court should grant intervention as of right because all the factors are met.

Turn to intervention as of right under Rule 24(a). For that, courts consider four factors: whether the motion is timely, whether the intervenor has sufficient interest in the case, whether there is a realistic threat that the case's resolution could hinder that interest, and whether any party adequately represents the interest. *SEC v. LBRY, Inc.*, 26 F.4th 96, 99 (1st Cir. 2022). FAU satisfies each.

### A.    This motion is timely.

First, whether intervention is timely turns on several factors. The most important one is whether the intervention motion "is filed promptly after a person obtains actual or constructive notice that a pending case threatens to jeopardize his rights." *R & G Mortg. Corp. v. Fed. Home Loan Mort. Corp.*, 584 F.3d 1, 8 (1st Cir. 2009). What is "reasonably prompt" depends on the case. *Id.* But the key is how diligently a party acts after receiving notice of the threat to its rights. *Id.* On top of that main factor, the First Circuit has also considered any prejudice to the existing parties, prejudice to the intervenor, and any special circumstances. *Id.* at 7.

---

[2] The Second Circuit applied the same logic in the sports context to justify standing for both males who identify as females and females to defend their rights under Title IX. *Soule v. Conn. Ass'n of Schs., Inc.*, 90 F.4th 34, 49 (2d Cir. 2023) (en banc) ("The legal interest that underlies Yearwood and Miller's intervention in this case—an interest in protecting *against* after-the-fact revision of the public records of their race times and placements—is materially indistinguishable from the interest Plaintiffs invoke.").

Each factor here favors timeliness. Start with the big one. FAU received notice that this case threatened its members' rights when the plaintiffs filed their second amended complaint and expanded their sought-after relief to facially enjoin enforcement of the executive orders. Second Am. Compl., ECF No. 95 at 32–34. Before that, Plaintiffs sought only relief from HB 1205—first only as applied and then also facial as of November. Am. Compl., ECF No. 78 at 23. They did not seek to enjoin enforcement of the executive orders throughout the country. That occurred a week ago—on February 12th. By any measure, FAU has acted promptly in filing this motion. As soon as it received notice of the widespread threat to its members' rights, it diligently moved to intervene. Now that the plaintiffs added new defendants and new claims, those defendants will appear in the case and reset any relevant deadlines. Adding intervenors now—with the case largely reset—will not prejudice anyone or delay this case in any way.

Besides, even considering the claims just against HB 1205, this motion is timely. This case began in August of last year. Compl., ECF No. 4 at 26–27. And it turned into a facial challenge to HB 1205 only in November. Am. Compl., ECF No. 78 at 23. The Court has not ruled on any dispositive motion. And no discovery appears to have taken place beyond perhaps initial disclosures. At the very least, minimal discovery has occurred. Courts have allowed intervention in cases like this that have "not progressed beyond the initial stages," even just considering the HB 1205 challenge. *Geiger v. Foley Hoag LLP Ret. Plan*, 521 F.3d 60, 64 (1st Cir. 2008); *see, e.g.*, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 46 (D. Mass. 2015) (intervention timely "more than five months after the Complaint was filed" and with case in "early stages of discovery").

Plus, the other three factors all support timeliness too. Because the case is in the early stages (both for the HB 1205 challenge and even more so for the executive-orders challenge) there is no prejudice to the existing parties. And FAU is more

than happy to adhere to an agreed briefing schedule and will not delay this case. Yet FAU would be prejudiced if not allowed to intervene. If Plaintiffs obtain their requested relief, then FAU's members lose their protections from the executive orders and HB 1205. FAU will be unable to defend its interests. Finally, the amended complaint significantly expands the scope of this case, a purposeful choice by Plaintiffs to reset the case. That is a special circumstance favoring intervention. However you cut it, the intervention motion is timely.

### B.    FAU has a sufficient interest in this case.

Second, an intervenor must show that it has a sufficient interest in the case. That is different from needing to show standing. *Melone*, 100 F.4th at 29 (explaining intervenor did not need to establish standing because it "simply s[ought] to defend the agency's position"). Something less is needed. But there must at least be a "significantly protectable interest" that is "direct, not contingent." *Public Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998) (citations omitted). And while there is not a "simple formula," sometimes the inquiry is "easy to answer." *Cotter v. Mass. Ass'n of Minority Law Enf't Officers*, 219 F.3d 31, 34 (1st Cir. 2000).

That is true here. FAU has a direct, significantly protectable interest in this case. It has members throughout the country who are female athletes competing on teams at institutions receiving federal funds. Brown Decl. ¶¶ 5, 34–37. The executive orders affect their ability to compete on a safe and level playing field. *E.g.*, B.W. ¶ 18–19; A.K. Decl. ¶ 9; A.C. Decl. ¶¶ 9–10. And the same goes for HB 1205. FAU has female-athlete members in New Hampshire who are protected by that law—including one who has had to compete against one of the plaintiffs. Brown Decl. ¶¶ 34–37; B.W. Decl. ¶¶ 1–4; K.D. Decl. ¶¶ 16–22. Indeed, such athletes are the intended beneficiaries of the challenged law and executive orders. Saying that they

don't have a sufficient interest in defending that law and executive orders would "defy common sense." *Cotter*, 219 F.3d at 35.

And there can be no doubt about the significance of that interest. There "is no question" that "redressing past discrimination against women in athletics and promoting equality of athletic opportunity between the sexes" is a "legitimate and important" interest. *Clark ex rel. Clark v. Ariz. Interscholastic Ass'n*, 695 F.2d 1126, 1131 (9th Cir. 1982); *see also Cohen v. Brown Univ.*, 991 F.2d 888, 897 (1st Cir. 1993) ("Equal opportunity to participate lies at the core of Title IX's purpose.").

On top of that, FAU and its members have a direct interest in ensuring privacy in locker rooms, showers, and restrooms. The executive orders speak to that too. The gender-ideology one instructs federal agencies "to ensure that intimate spaces … are designated by sex and not identity." 90 Fed. Reg. 8615 § 4(d). And the women's-sports one directs the Secretary of Education to protect "all-female locker rooms" and to bring enforcement actions against schools that require female students "to appear unclothed before males." 90 Fed. Reg. 9279 § 3(a)(ii)–(iii).

Those provisions are also at stake here given that Plaintiffs seek to facially enjoin enforcement of the executive orders. *See* Second Am. Compl., ECF No. 95 at 32–34. So FAU's members' right to privacy in private spaces is another significant interest in this case. In fact, it has members who have had to share locker rooms and restrooms with male athletes who identify as female. *See* A.C. Decl. ¶¶ 50, 74–81. And again, there can be no doubt about the significance of that interest. Courts aplenty have found that it is a constitutional right. *E.g.*, *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008) (noting "the constitutional right to privacy" includes "the right to shield one's body from exposure to viewing by the opposite sex"); *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 805 (11th Cir. 2022) (collecting cases). In short, FAU has a concrete interest in the Court not enjoining enforcement of the executive orders and HB 1205.

10

### C.    FAU's interest will be hindered if the plaintiffs get their requested relief.

Third, there is a realistic threat this case will hinder FAU's ability to further its interests. True, a "case can exist in which a party has an interest" that could be unaffected by the case's outcome. *Cotter*, 219 F.3d at 35. But often a sufficient interest makes this factor one that "is also easily answered." *Id.*; *see also Daggett v. Comm'n on Governmental Ethics & Election Prac.*, 172 F.3d 104, 110 (1st Cir. 1999).

Again, that is true here. That FAU's interest could reasonably be hindered necessarily follows given its interest in defending the executive orders and HB 1205. If Plaintiffs get their requested relief, then FAU's members will not get those protections for female sports and private spaces. Courts have had no trouble concluding as much. *E.g.*, *Hecox*, 479 F. Supp. 3d at 953 ("Should Plaintiffs prevail in this lawsuit, the Proposed Intervenors will not have the protection of the law they claim is vital to ensure their right to equality in athletics.").

That would mean, both in New Hampshire and across the country, female athletes would lose their ability to compete in a safe and level playing field and to exercise their constitutional right to privacy. In other words, "there can be no real dispute that [FAU's] interests would be adversely affected if the present suit were lost by the defendants." *Dagget*, 172 F.3d at 110. Indeed, if Plaintiffs get their requested relief, many of FAU's members who are female athletes could either be forced to compete in an unfair and unsafe playing field or stop competing altogether. Either way, they lose.

### D.    The parties do not adequately represent FAU's interests.

Fourth, none of the existing parties adequately represent FAU's interests in competing on a safe and level playing field and having privacy in locker rooms and private spaces. Rule 24(a)(2) by its terms suggests "only a minimal challenge" for an intervenor that meets the other factors. *Berger v. N.C. State Conf. of the NAACP*,

597 U.S. 179, 195 (2022). And the Supreme Court's cases do not "endorse a presumption of adequacy." *Id.* In line with that, the First Circuit generally requires just "a minimal showing that the representation afforded by existing parties likely will prove inadequate." *Victim Rts. Law Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021) (citation omitted).

But the First Circuit also ups the burden "when the movant seeks to intervene as a defendant alongside a government entity." *Id.* In that circumstance, the First Circuit applies a "rebuttable presumption" of adequacy. *Id.* (citation omitted). So a "strong affirmative showing" is needed to make clear that government defendants do not fairly represent an intervenor's interest. *Id.* (citation omitted). And in the First Circuit, merely pointing to arguments that the existing parties are unlikely to make is not enough.[3] For example, in *Victim Rights*, the First Circuit held that would-be intervenors did not show inadequate representation just because they wanted to make First Amendment and due-process arguments that the government defendants were not making. 988 F.3d at 561–62.

But in *Cotter*, the First Circuit held that a would-be intervenor did show inadequate representation by government defendants. 219 F.3d at 35–36. There, three minority police officers sought to intervene in a case alleging that non-minority officers' rights were violated by the minority officers' promotions. *Id.* at 33. One argument the intervenors wanted to make was to "defend the use of racial criteria"

---

[3] FAU recognizes that the First Circuit has applied a presumption of adequacy. But that arguably conflicts with Supreme Court precedent. Yet in *Berger*, the Supreme Court left open the question "whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance." 597 U.S. at 197. So FAU preserves the argument that no presumption of adequacy attaches here. Likewise, the First Circuit conflicts with other circuits in its view that intervenors offering different arguments than existing parties may not show inadequate representation. *E.g.*, *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022). So FAU also preserves the argument about the significance of alternative arguments to show inadequate representation.

as "a proper remedial measure" for both past discrimination by the police department "and as a counter to the alleged deficiencies in its *current* tests." *Id.* at 35. The Court explained that, while the police department might argue the first, it was unlikely to argue the second. There was "ample reason for it to resist a defense premised on a showing that its tests are currently in violation of law." *Id.* at 36. So there was "enough likelihood of conflict or divergence of interest" to rebut the presumption of adequacy. *Id.*

Apply that framework here. None of the government defendants adequately represent FAU and its members' interests. Of course, the New Hampshire defendants don't. Their interest is only in defending HB 1205, which applies only in New Hampshire and only in the sports context. But FAU also seeks to protect women's privacy in all New Hampshire school facilities—not to mention women's sports and private places throughout the country. Plus, New Hampshire has an interest in defending its law as a permissible "policy choice," not as one required by Title IX. Defs. Mem. Objecting to Prelim. Inj. Mot., ECF No. 59-1 at 2. But FAU's interest is to ensure that New Hampshire schools *must* designate sports by sex in accord with Title IX and its accompanying sports regulations. *See Soule v. Conn. Ass'n of Schs.*, No. 3:20-CV-00201, 2024 WL 4680533, at *1 (D. Conn. Nov. 5, 2024) (holding female athletes stated plausible claim that schools violated Title IX by allowing male athletes who identify as female to compete in women's sports). Those interests diverge.

The only question left is whether the federal defendants adequately represent FAU and its members' interests. They don't—for similar reasons. On the one hand, the federal defendants and FAU's interests may diverge in their interpretation of Title IX, with the federal defendants arguing that they can designate sports by sex and FAU arguing that they must. But setting that aside, their interests further diverge when it comes to Title IX's implementing regulation on athletics: 34 C.F.R. § 106.41. That regulation says that "a recipient *may* operate or sponsor separate

teams for members of each sex" in sports involving "competitive skill" or contact. 34 C.F.R. § 106.41(b) (emphasis added). One plausible reading of that is it permits but does not mandate separate male and female teams. But FAU's position is that Title IX's plain text *requires* sex separation for female teams. So FAU will argue that Title IX's plain text overrides the regulation to the extent that the regulation is read to merely allow sex-designated sports.

And here's why that matters: Plaintiffs claim that the executive orders conflict with Title IX. Of course, the federal defendants will argue otherwise. But they have an interest in tailoring their defense of the executive orders to comply with Section 106.41. Just like in *Cotter*, there is "ample reason" for the government defendants "to resist a defense" that shows a regulation is "currently in violation of law." 219 F.3d at 36. So FAU's interest and the federal defendants' interests could well diverge in defending the Title IX claim. At a minimum, there is "enough likelihood of conflict or divergence of interest" to rebut the presumption of adequacy. *Id.*

On the other hand, the federal defendants do not adequately represent FAU's interest when it comes to female athletes' privacy rights in locker rooms, showers, and restrooms. FAU's position is that female athletes have a substantive-due-process right to privacy in such spaces to be free from members of the opposite sex (and that Title IX also protects that right). *E.g.*, *Brannum*, 516 F.3d at 494; *Adams*, 57 F.4th at 805. With female-athlete members, it can assert that right in defense of the executive orders. But the same does not necessarily hold for the federal defendants. Generally, "a litigant may only assert his own constitutional rights or immunities." *Hernandez v. C.I.R.*, 819 F.2d 1212, 1224 (1st Cir. 1987). And that general rule can apply to government actors. *E.g.*, *Halland v. Brackeen*, 599 U.S. 255, 294–95 (2023) (holding a State could not "assert equal protection claims on behalf of its citizens"). Now, perhaps the rule differs somehow for the federal defendants here. Or perhaps asserting the privacy rights defensively changes the calculus. But both are far from

certain. So there is "enough likelihood" that the federal defendants will not be able even to assert the constitutional argument. *Cotter*, 219 F.3d at 36. And that means they don't adequately represent FAU's privacy interests.

That makes the situation here different from the one in *Victim Rights*. There, the defendants simply did not make a constitutional argument. *Victim Rts.*, 988 F.3d at 561–62. The federal defendants here likely will not and *cannot* make the constitutional argument. Neither *Victim Rights* nor the other First Circuit cases discussing adequacy of representation address this situation. So none forecloses the argument. *See United States v. DiPina*, 178 F.3d 68, 73 (1st Cir. 1999) (explaining that a decision is not binding if it does not consider "an issue directly" or assess the arguments). And it must be right that representation is inadequate if current defendants cannot make a constitutional argument in defense of a law that a would-be intervenor otherwise could. No party adequately represents FAU's interests.

*    *    *

Each of the intervention-as-of-right factors is met. This motion is timely. FAU has an interest in this case. That interest may well be hindered here. And no party adequately represents that interest. FAU has the right to intervene under Rule 24(a). But the Court need not even get there. It can simply grant permissive intervention. It can do what court after court has done: allow the athletes affected to be fully heard.

## CONCLUSION

The Court should grant the motion to intervene.

Respectfully submitted this 21st day of February, 2025.

_s/ Ian B. Huyett_
Ian B. Huyett
NH Bar No. 270964
**Cornerstone**
P.O. Box 4683
Manchester, NH 03108
Telephone: (603) 228-4794
IHuyett@NHCornerstone.org

Johannes Widmalm-Delphonse*
VA Bar No. 96040
**Alliance Defending Freedom**
44180 Riverside Parkway
Lansdowne, VA 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
jwidmalmdelphonse@ADFlegal.org

Jonathan A. Scruggs*
AZ Bar No. 030505
Henry W. Frampton, IV*
SC Bar No. 75314
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ 85260
Telephone: (480) 444-0020
Facsimile: (480) 444-0028
jscruggs@ADFlegal.org
hframpton@ADFlegal.org

Suzanne E. Beecher*
CA Bar No. 329586
**Alliance Defending Freedom**
440 First Street NW
Washington, D.C. 20001
Telephone: (202) 393-8690
Facsimile: (202) 347-3622
sbeecher@ADFlegal.org

_Counsel for Proposed Intervenor-_
_Defendant_
**\*_pro hac vice application pending_**