# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

---

**Parker Tirrell**, by her parents and next friends
Sara Tirrell and Zachary Tirrell, *and*

**Iris Turmelle**, by her parents and next friends
Amy Manzelli and Chad Turmelle,

    *Plaintiffs*,
v.

**Frank Edelblut**, *in his official capacity as
Commissioner of the N.H. Dep't of Education;*

**Andrew Cline, Kate Cassady, Ann Lane
Philip Nazzaro, Rajesh Nair, James Fricchione
and James Leboe**, *in their official capacities
as members of the N.H. State Board of Education;*

**Pemi-Baker Regional School District;**

**Pembroke School District**;

**Donald J. Trump**, *in his official capacity as President
of the United States*,

**U.S. Department of Justice**,

**Pamela Bondi**, *in her official capacity as Attorney
General of the United States,*

**U.S. Department of Education**; and

**Denise L. Carter**, *in her official capacity as
Acting Secretary of the U.S. Dep't of Education*,
    *Defendants,*
and

**Female Athletes United**,

    *Proposed Intervenor-Defendant*.

---

Civil Case No. 1:24-cv-00251

## PLAINTIFFS' OPPOSITION TO INTERVENOR-DEFENDANT'S
## MOTION TO INTERVENE

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1
FACTUAL BACKGROUND ........................................................................................................... 1
ARGUMENT .................................................................................................................................... 3
    I.    FAU'S Motion to Intervene As of Right Should Be Denied .................................. 3
        A.    The Rule 24(a) Legal Standards ................................................................. 3
        B.    FAU Cannot Meet Its Burden to Demonstrate Inadequacy of Representation ................................................................................................ 5
    II.    FAU'S Motion for Permissive Intervention Should be Denied ............................. 8
        A.    Rule 24(b) Legal Standards ........................................................................ 8
        B.    FAU Has Not Shown that Permissive Intervention is Warranted ............... 9
CONCLUSION ............................................................................................................................... 13

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................. 1
FACTUAL BACKGROUND ........................................................................................................... 1
ARGUMENT .................................................................................................................................... 3
    I.    FAU'S Motion to Intervene As of Right Should Be Denied .................................. 3
        A.    The Rule 24(a) Legal Standards ................................................................. 3
        B.    FAU Cannot Meet Its Burden to Demonstrate Inadequacy of Representation ................................................................................................ 5
    II.    FAU'S Motion for Permissive Intervention Should be Denied ............................. 8
        A.    Rule 24(b) Legal Standards ........................................................................ 8
        B.    FAU Has Not Shown that Permissive Intervention is Warranted ............... 9
CONCLUSION ............................................................................................................................... 13

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*B.P.J. v. W. Va. State Bd. Of Educ.*,
   2021 U.S. Dist. LEXIS 230011 (S. D. W. Va. Dec. 1, 2021) ..................................................11

*Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S.Dep't of Educ.*,
   2016 U.S. Dist. LEXIS 107614 (S.D. Ohio Aug. 15, 2016) ....................................................12

*Berger v. N.C. State Conf. of the NAACP*,
   597 U.S. 179 (2022) ...............................................................................................................4, 5

*Cotter v. Mass. Ass'n of Minority Law Enf't Officers*,
   219 F.3d 31 (1st Cir. 2000) .....................................................................................................3, 7

*Daggett v. Comm'n on Gov'tal Ethics & Election Pracs.*,
   172 F.3d 104 (1st Cir. 1999) ...................................................................................................4, 6

*Doe v. Bethel Loc. Sch. Dist. Bd. of Educ.*,
   2023 U.S. Dist. LEXIS 10733 (S.D. Ohio Jan. 20, 2023) .........................................................12

*Doe v. Horne*,
   2024 U.S. App. LEXIS 22842 (9th Cir., Sept. 9, 2024) ......................................................10, 11

*Hecox v. Little*,
   479 F. Supp. 3d 930 (D. Idaho 2020) .......................................................................................10

*Mass. Food Ass'n v. Mass. Alcoholic Bev. Control Comm'n*,
   197 F.3d 560 (1st Cir. 1999) ...................................................................................................8, 9

*Me. v. Dir., U.S. Fish &Wildlife Serv.*,
   262 F.3d 13 (1st Cir. 2001) ..........................................................................................................6

*Melone v. Coit*,
   100 F.4th 21 (1st Cir. 2024) .........................................................................................................9

*Pub. Serv. Co. of N.H. v. Patch*,
   136 F.3d 197 (1st Cir. 1998) .............................................................................................3, 4, 10

*R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*,
   584 F.3d 1 (1st Cir. 2009) ............................................................................................................3

*SEC v. LBRY, Inc.*,
   26 F.4th 96 (1st Cir. 2022) ..........................................................................................................3

*Soule v. Conn. Ass'n of Schs., Inc.*,
  2021 U.S. Dist. LEXIS 78919 (D. Conn. Apr. 25, 2021) ........................................................11

*Students & Parents for Priv. v. U.S. Dep't of Educ.*,
  2016 U.S. Dist. LEXIS 77728 (N.D. Ill. June 15, 2016) ........................................................12

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  807 F.3d 472 (1st Cir. 2015) ..............................................................................................7, 10

*T-Mobile Ne. LLC v. Town of Barnstable*,
  969 F.3d 33 (1st Cir. 2020) ............................................................................................3, 4, 6, 9

*Tenn. v. U.S. Dep't. of Educ.*,
  No. 3:21-cv-308 (E.D. Tenn. Sept. 14, 2022), ECF No. 102 (Mem. Op. &
  Order) .......................................................................................................................................11

*Victim Rights Law Ctr. v. Rosenfelt*,
  988 F.3d 556 (1st Cir. 2021) ..........................................................................................4, 7, 9, 10

**Statutes**

20 U.S.C. § 1681(a) *et seq.* ............................................................................................... *passim*

N.H. Rev. Stat. § 193:41 .................................................................................................... *passim*

N.H. Rev. Stat. § 193:42 ...............................................................................................................2

**Other Authorities**

34 C.F.R. § 106.41 ................................................................................................................6, 7

Exec. Order No. 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025) ................................................ *passim*

Fed. R. Civ. P. Rule 24 ....................................................................................................... *passim*

## INTRODUCTION

On February 21, 2025, Female Athletes United ("FAU"), which describes itself as a membership organization that seeks to "defend[] women's sports," moved to intervene in this action. Dkt. No. 105. FAU seeks to intervene as of right and permissively under Fed. R. Civ. P. Rule 24(a) and Rule 24(b), respectively. *Id.*

Plaintiffs respectfully request that this Court deny the Motion to Intervene. FAU's motion to intervene as of right should be denied because FAU has not and cannot demonstrate an absence of adequate representation by the State of New Hampshire or the federal government. FAU's motion for permissive intervention can and should be denied for the same reason alone, and for other reasons detailed herein. At the same time, Plaintiffs do not object to FAU's participation as an amicus in order to allow it to provide the court with whatever legal arguments it wishes to make in support of the State of New Hampshire and the federal government.[1]

## FACTUAL BACKGROUND[2]

Plaintiffs, Parker Tirrell and Iris Turmelle, commenced this action on August 16, 2024 (Dkt. No. 4) against various State officials,[3] seeking relief from New Hampshire statutory provisions that exclude transgender girls grades 5 through 12 from participating in school sports solely because they are transgender. N.H. Rev. Stat. § 193:41 (also known throughout this litigation as

---

[1] FAU's factual submissions are already before the Court by virtue of the various declarations FAU has filed from FAU's chairman and four pseudonymous high school athletes. Dkt. Nos. 105-2 through 105-6.

[2] For the sake of brevity and efficiency, Plaintiffs rely upon, and incorporate by reference, the more fulsome background, findings of fact and procedural posture set forth in the court's Order granting the preliminary injunction. Dkt. No. 70 at 2-12.

[3] Plaintiffs also sued their respective School Boards and Board members.

HB1205 or the "New Hampshire Sports Ban").[4] They each assert that HB1205 violates the federal Equal Protection Clause and federal Title IX, 20 U.S.C. § 1681(a) *et seq*. Dkt. No. 4.[5]

This Court granted a Temporary Restraining Order ("TRO") on August 19, 2024 (Dkt. No. 35); extended that TRO on August 22, 2024 (Dkt. No. 50); and ultimately issued a preliminary injunction as to all Defendants named in the case at that time on September 10, 2024 (Dkt No. 70).

On February 5, 2025, the Trump Administration issued Executive Order 14201. Exec. Order No. 14201, 90 Fed. Reg. 9279 (Feb. 5, 2025) (the "National Sports Ban"). The National Sports Ban asserts that it "is demeaning, unfair, and dangerous" for transgender girls to participate in girls' sports teams, and states a policy to exclude transgender girls from girls' sports. *Id.* at § 1. The National Sports Ban directs the Secretary of Education to "promptly" take action to exclude transgender girls from girls' sports teams and locker rooms (*id.* at § 3(ii)), and to prioritize enforcement against schools that allow transgender girls in girls' sports (*id.* at § 3(iii)).[6]

On February 12, 2025, Plaintiffs filed a motion for leave to file a Second Amended Complaint ("SAC"), which was granted the same day. Dkt. No. 94 and Endorsed Order of 2/12/25. The SAC asserts three causes of action against the Federal Defendants[7]: (1) violation of the Equal Protection component of the Fifth Amendment (Count V); (2) ultra vires actions in conflict with

---

[4]   N.H. Rev. Stat. § 193:42 provides various causes of action for violations of § 193:41.

[5]   Plaintiffs filed a First Amended Complaint on November 8, 2024. Dkt. No. 78. The amendment's sole change was to seek broader relief that HB1205 is facially unconstitutional.

[6]   For definitions of "girls, "women," "boys," "men," "female," "male," and "gender identity," the National Sports Ban incorporates the definitions of Executive Order 14168 of January 20, 2025. National Sports Ban, § 2 ("Definitions").

[7]   The Federal Defendants are President Trump, the Department of Justice, the Attorney General, the Department of Education and the Secretary of Education, who was confirmed by the Senate after the filing of the SAC.

federal law, i.e., Title IX (Count VI); and (3) ultra vires actions in violation of Articles I and II of the Constitution (Count VII). Dkt. No. 95. Plaintiffs seek a declaration of unconstitutionality and injunctive relief against the enforcement of the National Sports Ban and other executive action impacting the rights of transgender students to play school sports. *Id.*

FAU moved to intervene on February 21, 2025, filing a motion, a memorandum of law in support, five declarations and a proposed Answer to the SAC. Dkt. Nos. 105 through 105-7. In its proposed Answer, FAU denies that Plaintiffs are entitled to any relief and "prays that the Complaint be dismissed with prejudice." Dkt. No. 105-7.

## ARGUMENT

**I.     FAU'S Motion to Intervene As of Right Should Be Denied**

    A.     The Rule 24(a) Legal Standards

To succeed with a motion to intervene as of right, the proposed intervenor must show: "(1) the timeliness of [its] motion; (2) a concrete interest in the pending action; (3) 'a realistic threat' that resolution of the pending action will hinder [its] ability to effectuate that interest; and (4) the absence of adequate representation by an existing party." *SEC v. LBRY, Inc.*, 26 F.4th 96, 99 (1st Cir. 2022) (quoting *T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 39 (1st Cir. 2020) (alterations in original).[8] A proposed intervenor "must fulfill each of these preconditions. 'The failure to satisfy any one of these dooms intervention.'" *R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 584 F.3d 1, 7 (1st Cir. 2009) (quoting *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998)); *T-Mobile Ne. LLC*, 969 F.3d at 39 ("It is black letter law that a failure to

---

[8]     Rule 24(a)(2)'s "explicit standards 'considerably restrict[] the [district] court's discretion.'" *Cotter v. Mass. Ass'n of Minority Law Enf't Officers*, 219 F.3d 31, 34 (1st Cir. 2000) (alterations in original).

3

satisfy any one of these four requirements sounds the death knell for a motion to intervene as of right.").

For present purposes, Plaintiffs assume, without conceding, that FAU can satisfy the first three requirements for intervention under Rule 24(a). However, FAU has not – and, indeed, cannot – satisfy the fourth requirement of demonstrating inadequacy of representation by the existing State parties and the forthcoming federal parties. As a baseline, to show inadequate representation, a proposed intervenor must have more than "empty conjecture" and "must produce some tangible basis to support a claim of purported inadequacy." *T-Mobile Ne. LLC*, 969 F.3d at 39 (citing and quoting *Patch*, 136 F.3d at 207). This burden has "additional bite when a would-be intervenor's objective aligns seamlessly with that of an existing party. In such a situation, a rebuttable presumption of adequate representation attaches." *Id.* (citing cases).

Similarly, a rebuttable presumption also arises when the "would-be intervenor seeks to appear alongside a governmental body in defense of the validity of some official action …." *Id.* (citing cases); *see also Daggett v. Comm'n on Gov'tal Ethics & Election Pracs.*, 172 F.3d 104, 111 (1st Cir. 1999) (speaking of "two converging presumptions").

Where these presumptions come into play, the proposed intervenor must make a "strong affirmative showing" of inadequacy. *See, e.g.*, *Victim Rights Law Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021) (burden is "ratcheted upward" when seeking to intervene alongside a government entity; a successful rebuttal requires "a strong affirmative showing" that the government "is not fairly representing the applicants' interests") (citing cases).

Applying these standards dooms FAU's effort to intervene.[9]

---

9   FAU seeks to preserve the argument that no presumptions of adequacy apply in this case based seemingly upon the Supreme Court's comment that it "need not decide the question" in *Berger v.*

B. <u>FAU Cannot Meet Its Burden to Demonstrate Inadequacy of Representation</u>

FAU seeks to intervene alongside both the State of New Hampshire and the federal government, triggering one presumption of adequate representation. FAU's interests also align seamlessly with those of both sets of Defendants, triggering a second presumption of adequate representation. As noted above, FAU seeks a denial of all relief to Plaintiffs and a dismissal of their SAC with prejudice. Dkt. No. 105-7. All Defendants seek the same. Therefore, FAU needs a strong affirmative showing that the Defendants are not fairly representing FAU's interests in order to rebut the presumptions. FAU has failed to do this.

In seeking to carry its burden, FAU first argues that the New Hampshire Defendants' defense is inadequate because New Hampshire's interest is only in defending HB1205 and does not reach women's privacy interests and interests beyond New Hampshire that FAU seeks to present. Dkt. No. 105-1, at 13. But privacy and non-New Hampshire interests are not at all at stake in Plaintiffs' action with respect to HB1205, which only speaks to the membership of sports teams in New Hampshire. And New Hampshire officials are fully defending those claims. FAU's privacy and non-New Hampshire interests cannot possibly be impaired by any relief Plaintiffs may receive in their action concerning HB1205 since they are not in issue in the case. FAU would remain totally free to litigate its interests in the future in its own litigation.

Second, FAU asserts that New Hampshire's interest is only in defending its law as a permissible policy choice while FAU wants to ensure that New Hampshire's law is ruled to be mandatory and required by Title IX. Dkt. No. 105-1, at 13. FAU says "[t]hose interests diverge." *Id.* But FAU's argument that there is a divergence of interests is not credible here when both

---

*N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022). Dkt. No. 105-1, at 12 n.3. Suffice it to say that, nonetheless, FAU acknowledges the longstanding law of the First Circuit. *Id.*

5

parties seek to have HB1205 upheld. "Policy choice" or a Title IX requirement is a distinction without a difference in this context. And if it were even possible to call this a difference in litigation tactics, that is not enough to demonstrate inadequate representation. *See, e.g.*, *Me. v. Dir., U.S. Fish &Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001) ("And our cases have said that a difference in tactics as to presenting a legal argument does not necessarily an inadequacy make.") (citing *Daggett*, 172 F.3d at 112).

Third, and turning to the National Sports Ban and the Federal Defendants, FAU simply repeats its argument that interests "may diverge" – again between a "may" and "must" interpretation of Title IX. Dkt. No. 105-1, at 13. Of course, speculation as to a divergence of interests does not even survive the test of Rule 24(a) without any presumption. *See, e.g.*, *T-Mobile Ne LLC,* 969 F.3d at 39. Moreover, as noted above, the straightforward language of the National Sports Ban cannot be read to create any space between FAU's position and that of the Trump Administration. And, in any event, both the Federal Defendants and FAU have the same ultimate goal – the legality of the National Sports Ban such that a difference in litigation tactics does not demonstrate inadequacy of representation.

Fourth, FAU posits that its interests diverge as to Title IX's implementing regulations on athletics, 34 C.F.R. § 106.41, arguing, again, that, therefore, the Federal Defendants might argue for a "may" interpretation of Title IX while FAU would argue that Title IX "*requires* sex separation for female teams" (emphasis in text). Dkt. No. 105-1, at 13-14. Here again, there is, at best, a difference in litigation tactics that fails to satisfy Rule 24(a). But, more importantly, the argument is factually off-base. There is no space between FAU and the Federal Defendants as to federal

6

regulations.  Again, as quoted above, the National Sports Ban expressly directs the Secretary of Education to "bring regulations and policy guidance into line …." National Sports Ban, § 3(ii).[10]

Lastly, FAU asserts that "the federal [D]efendants do not adequately represent FAU's interest when it comes to female athletes' privacy rights in locker rooms, showers, and restrooms." Dkt. No. 105-1, at 14.  This is curious since, by FAU's own admission, the Trump Administration executive orders speak directly to those interests.  *Id.* at 10.  The operative presumption would indicate that the Federal Defendants will be adequately defending those interests in this litigation.

FAU's primary concern appears to be how it would like to see its asserted privacy interests litigated.  FAU wants to assert a substantive due process argument that it worries the Federal Defendants will not or cannot make.  *Id.* at 14-15.  However, as FAU acknowledges, in the First Circuit, "merely pointing to arguments that the existing parties are unlikely to make is not enough," citing, as an example, *Victim Rights*, 988 F.3d at 561-562.  *Id.* at 12 n.3.  That should be enough to end the discussion, but FAU pushes on.

FAU conjures out of thin air the possibility that the Federal Defendants cannot argue athletes' privacy in seeking to defend the National Sports Ban.  *Id.* at 14-15.  But FAU cannot

---

[10]  FAU attempts mightily to bring its argument about 34 C.F.R. §106.41 within the purview of the *Cotter* decision, suggesting that the Federal Defendants "have an interest in tailoring their defense of the executive orders to comply with Section 106.41 and 'to resist a defense' that would show a regulation is 'currently in violation of law,'" citing and quoting *Cotter*. Dkt. No. 105-1, at 14.  However, this effort falls apart in multiple ways.  First, as noted above, the National Sports Ban orders all regulations to be in compliance with the policy directive.  Second, the Federal Defendants would not have to argue that § 106.41 is in violation of law.  As FAU acknowledges, its view of that regulation is just "[o]ne plausible reading" of the regulation.  *Id.*  Third, as the First Circuit has noted, *Cotter* was "virtually *sui generis*." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 807 F.3d 472, 477 (1st Cir. 2015).  The *Cotter* plaintiffs' claims "actually put at risk the existing jobs of the proposed intervenors," and they "proposed to argue that the defendant was 'in violation of law.'"  *Id.*  FAU asserts no such risk and does not assert that the federal defendants are in violation of law.  In short, this case is not "[j]ust like *Cotter*."  Dkt. No. 105-1, at 14.

articulate what actually would prevent the Federal Defendants from making that argument in defense of the National Sports Ban that would not equally prevent FAU from making the argument in defense. All FAU cites in support of this specious argument are two inapposite opinions that speak to any plaintiff's *standing to sue*, including the government's. *Id.* at 14. It bears repeating that pure speculation of a limitation on the Federal Defendants is not enough to find inadequacy under any Rule 24(a) test.

Yet, even assuming for the sake of argument alone that the Federal Defendants cannot make a substantive due process privacy argument, FAU's only argument is that settled First Circuit law – that seeking to make different arguments that the existing party will not make does not show inadequate representation – has not addressed this exact circumstance. *Id.* at 15. But FAU cannot show why the result should be any different when the existing party cannot make an argument as opposed to when it will not make the argument. The effect in the litigation is exactly the same, and so the result is no different. FAU cites no case even suggesting the contrary.

Plaintiffs do not object to FAU's participation as an amicus to the extent that the Court deems appropriate. *See Mass. Food Ass'n v. Mass. Alcoholic Bev. Control Comm'n*, 197 F.3d 560, 567 (1st Cir. 1999) (Intervenor wanted to offer other legal arguments "easily presented in amicus briefs"). But for all of the foregoing reasons, FAU's motion to intervene as of right should be denied.

## II.    FAU'S Motion for Permissive Intervention Should be Denied

### A.    Rule 24(b) Legal Standards

Upon a timely motion, a district court "may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. Rule 24(b)(1).

> A district court's determination of whether to grant a motion for permissive intervention is "highly discretionary," … and it may consider "almost any factor rationally relevant" in making that determination.

*Melone v. Coit*, 100 F.4th 21, 28 (1st Cir. 2024) (internal citations omitted).

In exercising its discretion, the Court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. Rule 24(b)(3).

The First Circuit has consistently held that adequate representation by a government party and the opportunity to file as an amicus is sufficient to sustain a district court's discretion to deny permissive intervention. *See, e.g.*, *Victim Rights*, 988 F.3d at 564; *T-Mobile Ne. LLC*, 969 F.3d at 41 (on permissive intervention, courts "should ordinarily give weight to whether the original parties to the action adequately represent the interests of the putative intervenors"); *Mass. Food Ass'n*, 197 F.3d at 568 (denial of permissive intervention upheld where the district court "reasonably concluded" that the State was adequately defending and "that any variation of legal argument could adequately be presented in amicus briefs"); *see also* 6 James Wm. Moore et al., Moore's Fed. Prac. ¶24.10[2][d] (2000) ("Courts are understandably reluctant to grant permissive intervention to an applicant where interests are already fully represented by one of the existing parties"); *id.* at §24.03[4][a][iv][A] (3d ed. 2011) ("the business of the government could hardly be conducted if, in matters of litigation, individual citizens could usually or always intervene and assert individual points of view").

      B.    <u>FAU Has Not Shown that Permissive Intervention is Warranted</u>

As demonstrated in Section I, above, there is no basis to find inadequate representation in this case. This would be enough to deny FAU's motion. Looking beyond adequate representation to the extent necessary, FAU's arguments fail to show permissive intervention is warranted.

9

FAU cites a string of seven "cases like this" in which cisgender and transgender girls have been permitted to intervene.[11]  As an initial matter, FAU omitted the denial of intervention in *Doe v. Horne*, 2024 U.S. App. LEXIS 22842 (9th Cir., Sept. 9, 2024) (Mem. Op.), a similar challenge to a sports ban.  Further, in considering each of the cases FAU did cite, it is important to remember the admonition from the First Circuit: "Because small differences in fact patterns can significantly affect the outcome, the very nature of a Rule 24(a)(2) inquiry limits the utility of comparisons between and among published opinions."  *Patch*, 136 F.3d at 204; *Students for Fair Admissions*, 807 F.3d at 477 (quoting *Patch*); *cf. Victim Rights*, 988 F.3d at 560 n.2 (court upheld denial of intervention under both Rule 24(a) and Rule 24(b) where the movants had sought intervention in three other actions on the same subject with mixed results).  In any event, each of these cases is distinguishable from the case before the Court.

Turning to the cases cited by FAU, four of them are related to sports and all of them related to transgender students.

*Hecox v. Little*[12] and *Doe v. Horne* are the most analogous to this case.  Both are challenges to state laws (Idaho and Arizona) banning transgender athletes in sports.  Both involve motions to intervene by cisgender girls.  In *Hecox*, the motion to intervene was allowed because the movants' interests were not adequately represented by existing parties, but for reasons inapplicable to the present case (unlike here, the government in *Hecox* had proffered a limiting construction of the legislation at issue).  In *Doe v. Horne*, the court found no abuse of discretion in the denial of

---

[11]  FAU claims these cases support its "key reason" that cisgender female athletes should be heard: (1) because the case "could affect their ability to compete on a safe and level playing field" and to have "needed privacy"; (2) because they will feel the "real-world consequences of this case"; and (3) because they have a "perspective to offer different from any other defendants …."  Dkt. No. 105-1, at 6.

[12]  479 F. Supp. 3d 930 (D. Idaho 2020).

permissive intervention to three individuals and an organization based upon the nature of the claims made, the ability to be an amicus and the vigorous representation of existing parties. 2024 U.S. App. LEXIS 22842, at *2.

In another similar case, *B.P.J. v. W. Va. State Bd. Of Educ.*,[13] a transgender girl challenged her exclusion from sports participation, and a cisgender girl was denied intervention as of right, but allowed permissive intervention. In that case, the court reasoned that it could only consider two factors: common questions and undue delay or prejudice.

Looking to the other cited cases does not help FAU's position. In *Soule v. Conn. Ass'n of Schs., Inc.*,[14] cisgender girls brought a claim that their rights were violated because transgender girls had competed and won awards in girls' sports. The court allowed those transgender girls to intervene in part because their interest were not adequately represented and they had a direct, personal interest in the outcome of the case: their awards could be taken away.

*Tenn. v. U.S. Dep't. of Educ.*[15] was a suit by 20 state Attorneys General broadly challenging Department of Education and EEOC documents issued in light of a Biden Administration Executive Order regarding sexual orientation and gender identity. The three individual proposed intervenors were Arkansas students who believe that transgender girls should not be allowed to compete in girls' sports. They were allowed permissive intervention where again the court discussed only common questions and undue delay.

---

[13]   2021 U.S. Dist. LEXIS 230011 (S. D. W. Va. Dec. 1, 2021).

[14]   2021 U.S. Dist. LEXIS 78919 (D. Conn. Apr. 25, 2021).

[15]   No. 3:21-cv-308 (E.D. Tenn. Sept. 14, 2022), ECF No. 102 (Mem. Op. & Order).

11

In the three remaining cases, unrelated to sports, there are no guiding principles that can assist the Court in this case. In *Doe v. Bethel Loc. Sch. Dist. Bd. of Educ.*[16] and the *Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S.Dep't of Educ.*,[17] the intervenors were students directly involved and impacted with interests beyond those of the parties. In *Doe v. Bethel*, the intervenor transgender girl was defending her bathroom use that was being challenged and where her interests went beyond those of the school. In *Highland v. Dep't of Educ.*, the intervenor was the actual subject of the OCR complaint that was being challenged by the intervenor's school.

Finally, in *Students & Parents for Priv. v. U.S. Dep't of Educ.*,[18] an association and five students in an Illinois school district sued the district and Federal Defendants as a result of a Title IX enforcement agreement with the Department of Education that allowed transgender Student A to use the girls' locker room.[19] Student A, two other transgender students and a Safe Schools Alliance sought to intervene; and the court allowed permissive intervention simply on a finding of common questions of law and fact.

None of these cases illuminates the question before this Court. Plaintiffs acknowledge that FAU's members have a broad, general interest in the subject matter of this litigation. At the same time, as demonstrated in the declarations of four of FAU's members, none has a concrete, direct

---

[16]  2023 U.S. Dist. LEXIS 10733 (S.D. Ohio Jan. 20, 2023).

[17]  2016 U.S. Dist. LEXIS 107614 (S.D. Ohio Aug. 15, 2016).

[18]  2016 U.S. Dist. LEXIS 77728 (N.D. Ill. June 15, 2016).

[19]  These plaintiffs were represented by FAU's counsel, the Alliance Defending Freedom ("ADF"). There, ADF argued that permissive intervention was not appropriate because the government would adequately represent its interests, even though one of the proposed intervenor students was the direct subject of the DOE Agreement that preceded the litigation. 2016 U.S. Dist. LEXIS 77728, at *6-9. That argument comports with First Circuit precedent, but was rejected based on Seventh Circuit precedent. *Id.*

interest in the resolution of the case. Nor can any FAU member demonstrate that she would not remain free to litigate the privacy issue, which is its main intervention concern, regardless of how this litigation ends. HB1205 nowhere addresses locker rooms, bathrooms or other private spaces. And if the National Sports Ban falls, the law remains as it was prior to February 5, 2025; and no one would suggest that FAU's privacy claims are precluded anywhere unless previously decided by the courts in prior litigation unrelated to this case.[20]

Finally, FAU focuses solely on the asserted timeliness of their motion to argue that there is no undue delay or prejudice. *Id.* at 5. And yet timeliness is a requirement distinct from delay and prejudice in the text of Rule 24(b). *Compare* Rule 24(b)(1) *with* Rule 24(b)(3). FAU's involvement would, at a minimum, expand the scope of the discovery in the case as evidenced by the declarations that have been submitted in support of the motion for intervention.

Bottom line, FAU wishes to be heard; and Plaintiffs do not object to its being heard via the declarations already submitted by its members and by amicus participation if the Court so approves. Otherwise, FAU's motion for permissive intervention should be denied.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the motion to intervene be denied.

---

[20] Moreover, FAU's arguments as to intervention as of right appears to contradict its argument for permissive intervention on the element of "common questions." In arguing inadequacy of representation, FAU focuses on a legal argument it worries that only it can – and would – make vis-à-vis privacy as a matter of substantive due process. This assertion casts doubt on whether their involvement would raise only "common questions" of law and fact.

13

Respectfully submitted,

PARKER TIRRELL, by her parents and next friends SARA TIRRELL and ZACHARY TIRRELL,

and

IRIS TURMELLE, by her parents and next friends AMY MANZELLI and CHAD TURMELLE,

By and through their attorneys,

| | |
|---|---|
| */s/ Kevin J. DeJong*<br>Kevin J. DeJong (NH Bar No. 17633)<br>kdejong@goodwinlaw.com<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA 02210<br>(617) 570-1156<br><br>Louis L. Lobel* (MA Bar No. 693292)<br>llobel@goodwinlaw.com<br>Elaine H. Blais* (MA Bar No. 656142)<br>eblais@goodwinlaw.com<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA 02210<br><br>Samira Seraji* (CA Bar No. 338979)<br>sseraji@goodwinlaw.com<br>GOODWIN PROCTER LLP<br>601 S. Figueroa Street<br>Suite 4100<br>Los Angeles, CA 90017<br><br>Ben See* (NY Bar No. 6019202)<br>bsee@goodwinlaw.com<br>GOODWIN PROCTER LLP<br>620 Eighth Avenue<br>New York, NY 10018 | Chris Erchull (NH Bar No. 266733)<br>cerchull@glad.org<br>Bennett H. Klein* (MA Bar No. 550702)<br>bklein@glad.org<br>GLBTQ LEGAL ADVOCATES & DEFENDERS<br>18 Tremont Street, Suite 950<br>Boston, MA 02108<br>(617) 426-1350<br><br>Gilles Bissonnette (NH Bar No. 265393)<br>gilles@aclu-nh.org<br>Henry Klementowicz (NH Bar No. 21177)<br>henry@aclu-nh.org<br>AMERICAN CIVIL LIBERTIES UNION OF NEW HAMPSHIRE FOUNDATION<br>18 Low Avenue<br>Concord, NH 03301<br>(603) 224-5591 |

*Admitted *pro hac vice*.

March 27, 2025

14

CERTIFICATE OF SERVICE

I hereby certify that, on this date, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all those registered with the ECF system.

Dated: March 27, 2025                                   */s/ Kevin J. DeJong*
                                                        Kevin J. DeJong