UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Parker Tirrell, et al.</u>

    v.                                                    Case No. 24-cv-251-LM-TSM
                                                        Opinion No. 2025 DNH 080 P

<u>Frank Edelblut, et al.</u>

## **O R D E R**

Two transgender girls, by and through their parents and next friends, bring this action contesting the legality of a New Hampshire law and certain executive orders that restrict transgender girls and women from participating in women's sports and from using women's bathrooms, locker rooms, and similar facilities. Presently before the court is a motion to intervene filed by an organization called "Female Athletes United" ("FAU"). Doc. no. 105. FAU describes itself as an organization that works to keep women's sports and private spaces reserved exclusively for persons who were born biologically female. They seek to intervene as defendants in this action to defend the state law and executive orders that plaintiffs seek to invalidate. Plaintiffs object.[1] Doc. no. 120. For the following reasons, FAU's motion (doc. no. 105) is granted.

---

[1] The various other defendants take no position on FAU's motion.

## BACKGROUND[2]

Plaintiffs brought this action in August 2024 against various state officials, school districts, and school board members, seeking relief from the application of a recently enacted New Hampshire law, House Bill 1205 ("HB 1205"). HB 1205 restricts who may play on girls' interscholastic sports teams "based on . . . biological sex at birth." RSA 193:41, II(a). In their original complaint, plaintiffs brought as-applied claims that HB 1205 violates their rights under the Equal Protection Clause and Title IX. See doc. no. 4 at 21-27. They did not seek facial relief.

Plaintiffs moved for a temporary restraining order ("TRO") and a preliminary injunction immediately after commencing this action. The court issued a TRO as to plaintiff Parker Tirrell[3] on August 19, 2024, and later issued a preliminary injunction as to both plaintiffs in September. See Tirrell v. Edelblut, 748 F. Supp. 3d 19, 47-48 (D.N.H. 2024). The court did not otherwise enjoin application of the law. See id. at 47.

In November 2024, plaintiffs filed an amended complaint as-of-right bringing both facial and as-applied challenges to HB 1205. Doc. no. 78 at 23-24. The parties proceeded to discovery, and some of the defendants moved to dismiss.

On January 20, 2025, defendant President Trump issued an Executive Order entitled "Defending Women From Gender Ideology Extremism and Restoring

---

[2] The factual background underlying this case is more fully set forth in the Tirrell v. Edelblut, 748 F. Supp. 3d 19 (D.N.H. 2024).

[3] Plaintiff Iris Turmelle did not seek a TRO.

Biological Truth to the Federal Government." Exec. Order No. 14,168, 90 Fed. Reg. 8615 (Jan. 20, 2025) [hereinafter "Gender Ideology Order"]. The Gender Ideology Order declares that "permit[ting] men to self-identify as women . . . fundamentally attack[s] women by depriving them of their dignity, safety, and well-being," which "has a corrosive impact not just on women but on the validity of the entire American system." Id. at 8615. It announces that "[i]t is the policy of the United States to recognize two sexes, male and female," which "are not changeable," and that "the Executive Branch will enforce all sex-protective laws to promote this reality." Id. The Order directs federal agencies to take "appropriate action to ensure that intimate spaces designated for women, girls or females . . . are designated by sex and not [gender] identity," and to prioritize enforcement actions against federally funded entities which fail to recognize "the binary nature of sex and the right to single-sex spaces." Id. at 8617.

Subsequently, on February 5, 2025, President Trump issued an Executive Order entitled "Keeping Men Out of Women's Sports." Exec. Order No. 14,201, 90 Fed. Reg. 9279 (Feb. 5, 2025) [hereinafter "Sports Order"]. The Sports Order asserts that it is "demeaning, unfair, and dangerous to women and girls," as well as violative of Title IX, to allow transgender girls or women to play women's sports. Id. at 9279. It directs the Department of Education to "take all appropriate action to affirmatively protect all-female athletic opportunities and all-female locker rooms" and to prioritize Title IX enforcement actions against educational institutions that allow transgender girls or women to play women's sports. Id.

One week later, plaintiffs moved for leave to file a second amended complaint, which the court granted. In addition to seeking as-applied and facial relief with respect to HB 1205, the second amended complaint brings as-applied and facial claims against various federal officers and agencies that the aforementioned executive orders violate the Equal Protection component of the Fifth Amendment, Title IX, and exceed the President's constitutional authority. Doc. no. 95 at 28-34.

In the same order granting plaintiffs leave to file their second amended complaint, the court denied the then-pending motion to dismiss as moot and directed the parties to meet and confer regarding an updated scheduling order. See Endorsed Order of Feb. 12, 2025. On February 21, the parties who had appeared[4] filed a joint motion to "stay all deadlines in this case until such time as the Federal Defendants file a responsive pleading and the parties confer regarding an updated scheduling order." Doc. no. 99 at 2. The court granted that motion. See Endorsed Order of Feb. 24, 2025. The parties have not yet submitted an updated proposed scheduling order; thus, discovery is currently stayed.

FAU filed the instant motion to intervene on February 21, just over a week after plaintiffs filed the second amended complaint. Because the parties sought several extensions of the deadline to respond to FAU's motion, the motion to intervene did not ripen until June 6.

---

[4] Counsel for the federal defendants had not entered appearances as of February 21.

## DISCUSSION

Federal Rule of Civil Procedure 24 allows for intervention as of right and for permissive intervention. FAU argues that it meets both standards. Because the court finds that permissive intervention is warranted, it does not reach whether FAU is also entitled to intervene as of right. See Travelers Indem. Co. v. Bastianelli, 250 F.R.D. 82, 84 n.3 (D. Mass. 2008) (declining to reach intervention as of right where permissive intervention was justified).

Rule 24(b) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). This is a "low threshold." Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n, 197 F.3d 560, 568 (1st Cir. 1999). If this threshold requirement is satisfied, "it is discretionary with the court whether to allow intervention." 7C Mary Kay Kane & Allan Stein, Federal Practice & Procedure § 1911 (3d ed.); accord Mass. Food Ass'n, 197 F.3d at 568. In exercising its "very broad" discretion to grant or deny permissive intervention, "the district court can consider almost any factor." Daggett v. Comm'n on Gov't Ethics & Election Pracs., 172 F.3d 104, 113 (1st Cir. 1999). One factor the court "must consider," however, is "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, FAU clears the "low threshold" of Rule 24(b)(1). Mass. Food Ass'n, 197 F.3d at 568. Its motion is timely: it was "filed promptly after [FAU] obtain[ed] actual or constructive notice that a pending case threaten[ed] to jeopardize [its members'] rights." R & G Mortg. Corp v. Fed. Home Loan Mortg. Corp., 584 F.3d 1,

5

8 (1st Cir. 2009). FAU, which represents cisgender athletes across the country, sought to intervene approximately one week after plaintiffs filed the second amended complaint seeking to invalidate executive orders having nationwide application. Before plaintiffs filed the second amended complaint, this action implicated only the validity of a New Hampshire law, and had little impact on FAU's members in the other forty-nine states. Because FAU filed its motion to intervene approximately a week after this action expanded to challenge the Gender Ideology and Sports Orders, the motion is timely. See id.

Moreover, FAU's defenses share common questions of law or fact with the main action. Plaintiffs seek to enjoin the operation of HB 1205 and the aforementioned executive orders because they assertedly violate Title IX as well as the equal protection guarantees of the Fourteenth and Fifth Amendments. FAU, by contrast, intends to defend the challenged laws on the grounds that banning transgender girls from girls' sports teams, bathrooms, and locker rooms comports with Title IX as well as the Fourteenth and Fifth Amendments. Thus, it is clear that FAU's defenses share common questions of law or fact with the plaintiffs' claims.[5]

Because Rule 24(b)(1) is satisfied, it is discretionary with the court whether to allow intervention. Kane & Stein, supra § 1911. One factor the court may

---

[5] Plaintiffs assert that this element is not satisfied because some of FAU's intended arguments differ from those of the existing defendants. But Rule 24(b)(1) requires that "there is at least one common question of law or fact"; it does not require that the proposed intervenors' arguments entirely overlap with the existing parties' positions. League of Women Voters of Mich. v. Johnson, 902 F.3d 572, 577 (6th Cir. 2018) (quoting Mich. State AFL-CIO v. Miller, 103 F.3d 1240, 1248 (6th Cir. 1997)).

consider in exercising its discretion is whether the proposed intervenor "may be helpful in fully developing the case." T-Mobile Ne. LLC v. Town of Barnstable, 969 F.3d 33, 41 (1st Cir. 2020) (quoting Daggett, 172 F.3d at 113); accord, e.g., Bastianelli, 250 F.R.D. at 85 (explaining that the court may consider "whether the intervenors will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented" (quoting In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution, 712 F. Supp. 1019, 1023 (D. Mass. 1989))). This factor counsels in favor of intervention.

    FAU is a membership-based organization that represents cisgender athletes and seeks to keep women's sports, bathrooms, locker rooms, and similar facilities reserved exclusively for cisgender girls and women. Resolution of this case will impact FAU's members' abilities to play on sports teams and access private spaces reserved for cisgender girls and women. Because cisgender girls, along with transgender girls, are the ones who are directly affected by the challenged laws, the perspectives of FAU and its members may be of assistance in fully developing the record and in reaching a just resolution. Indeed, courts have frequently permitted cisgender and transgender athletes to intervene in similar cases on this basis. See Hecox v. Little, 479 F. Supp. 3d 930, 957-58 (D. Idaho 2020) (permitting cisgender athletes to intervene in defense of law barring transgender athletes from women's sports because the intervenors were the law's "intended beneficiaries"), aff'd in part, vacated in part, and remanded on other grounds, 104 F.4th 1061 (9th Cir. 2024), cert. granted, --- S. Ct. ----, No. 24-38, 2025 WL 1829165 (July 3, 2025); B.P.J. v. W.

Va. State Bd. Of Educ., Civ. No. 2:21-cv-00316, 2021 WL 5711547, at *3 (S.D. W. Va. Dec. 1, 2021) (granting permissive intervention to cisgender athlete seeking to defend law banning transgender girls from girls' sports because she "plan[ned] to defend [the law] as a member of the class of people for whom the law was written" and therefore "add[ed] a perspective not represented by any of the current defendants"); Soule v. Conn. Ass'n of Schs., Inc., No. 3:20-cv-00201-RNC (D. Conn. Apr. 22, 2020) (endorsed order) (granting permissive intervention to transgender athletes seeking to defend policy that permitted transgender girls to play girls' sports because the intervenors had "a strong personal interest in the subject matter of the case and they [were] in a position to make a valuable contribution to the Court's understanding of the case"). But see Doe ex rel. Doe v. Horne, No. 23-3188, 2024 WL 4119371, at *2 (9th Cir. Sept. 9, 2024) (affirming denial of permissive intervention as within district court's broad discretion where cisgender athletes sought to intervene in defense of state law banning transgender girls from girls' sports and only "as-applied claims [were] at issue," which had no more than an "attenuated connection" to the proposed intervenors).

In addition, permitting FAU to intervene will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Despite having been initiated in August 2024, this case remains in early stages. The state and federal defendants filed their motions to dismiss the second amended complaint only a month ago, plaintiffs have not yet filed their objections, and discovery is currently stayed by agreement of the parties. Given this procedural posture, allowing FAU to intervene as defendants will not unduly delay resolution of the

8

case or prejudice the other parties' rights. Cf. Daggett, 172 F.3d at 113 (affirming denial of permissive intervention where the district court found "that the addition of still more parties would complicate a case that badly needed to be expedited," which was "plainly a permissible consideration"). While plaintiffs assert that FAU's participation as a defendant will expand the scope of discovery, "[a]dditional parties always take additional time," and Rule 24(b) "requires the court to consider whether intervention will 'unduly delay' the adjudication." Kane & Stein, supra § 1913 (emphasis added) (quoting Fed. R. Civ. P. 23(b)(3)). Here, any delay stemming from FAU's intervention would not be undue or prejudicial given the nascent stage of this litigation and the current stay on discovery.

      Plaintiffs contend that permissive intervention should be denied because the existing defendants will adequately represent FAU's interest in defending HB 1205 and the challenged executive orders. However, inadequate representation of the proposed intervenor's interests by the existing parties is a precondition to obtaining intervention of right, not permissive intervention. See Victims Rts. L. Ctr. v. Rosenfelt, 988 F.3d 556, 560-61 (1st Cir. 2021). True, when exercising its discretion to grant or deny permissive intervention, the court "should ordinarily" consider whether the original parties adequately represent the proposed intervenors' interests. T-Mobile, 969 F.3d at 41. But inadequacy of representation is not required for permissive intervention. To the contrary, "while existing adequate representation may militate against allowing permissive intervention, such intervention may still be appropriate if the addition of the intervenors will 'assist in the just and equitable adjudication of any of the issues between the parties.'" Allco

9

Fin. Ltd. v. Etsy, 300 F.R.D. 83, 88 (D. Conn. 2014) (quoting H.L. Hayden Co. v. Siemens Med. Sys., Inc., 797 F.2d 85, 89 (2d Cir. 1986)); see also South Dakota ex rel. Barnett v. U.S. Dep't of Interior, 317 F.3d 783, 787 (8th Cir. 2003) (characterizing adequacy of representation as "a minor variable in the Rule 24(b) decision calculus").

Here, even assuming that the existing defendants adequately represent FAU's interests, the perspectives of FAU and its members may contribute to a full understanding of the impact of the challenged laws and to a just and equitable resolution of the case. Moreover, their participation as defendants will not cause undue delay or prejudice the existing parties' rights. In these circumstances, the court exercises its discretion to allow permissive intervention.

## CONCLUSION

FAU's motion to intervene (doc. no. 105) is granted.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 15, 2025

cc:   Counsel of Record

10